# IN THE UNITED STATES DISTRICT COURT FOR THE
# NORTHERN DISTRICT OF NEW YORK

|  |  |
|---|---|
| UNITED STATES OF AMERICA,<br><br>        *Plaintiff*,<br><br>  *v.*<br><br>BOARD OF ELECTIONS OF THE<br>STATE OF NEW YORK, et al.,<br><br>        *Defendants*. | Case No. 1:25-cv-01338-MAD-PJE |

## MEMORANDUM OF LAW IN SUPPORT OF THE NATIONAL ASSOCIATION FOR THE ADVANCEMENT OF COLORED PEOPLE AND THE NAACP NEW YORK STATE CONFERENCE'S MOTION TO INTERVENE AS DEFENDANTS

## TABLE OF CONTENTS

TABLE OF AUTHORITIES ..................................................................................................... ii

INTRODUCTION ............................................................................................................... 1

BACKGROUND ................................................................................................................. 2

    I.     Federal law has long made voter list maintenance a state responsibility, consistent with the constitutional separation of powers. ...................................2

    II.    The Department of Justice has embarked on an unprecedented nationwide campaign to collect personal voter registration data held by the states...........................4

    III.   The Department of Justice sues New York to obtain its complete registration list. ........................................................................................................5

    IV.   Proposed Intervenors' sensitive personal information is placed in jeopardy by DOJ's demands. ........................................................................................6

LEGAL STANDARD......................................................................................................... 10

ARGUMENT .................................................................................................................... 11

    I.     Proposed Intervenors are entitled to intervene as of right. ............................................11

          A.   The motion to intervene is timely and will not prejudice the parties. ....................11

          B.   Proposed Intervenors have significantly protectable interests in protecting their sensitive personal information from improper disclosure to DOJ. .................13

          C.   Proposed Intervenors' interests are not adequately represented by existing parties. ................................................................................................15

    II.    Proposed Intervenors should alternatively be granted permissive intervention. ............18

CONCLUSION................................................................................................................... 21

# TABLE OF AUTHORITIES

**Page(s)**

**Cases**

*1789 Found. Inc. v. Fontes*,
   2025 No. CV-24-0298, 2025 WL 834919 (2025) ................................................................. 20

*Alabama ex rel. Gallion v. Rogers*,
   187 F. Supp. 848 (M.D. Ala. 1960) ..................................................................................... 5

*Allco Fin. Ltd. v. Etsy*,
   300 F.R.D. 83 (D. Conn. 2014) ........................................................................................... 12

*Am. Fed'n of Gov't Emps. v. U.S. Off. of Pers. Mgmt.*,
   777 F. Supp. 3d 253 (S.D.N.Y. 2025) ................................................................................. 15

*Arizona v. Inter Tribal Council of Ariz., Inc.*,
   570 U.S. 1 (2013) ............................................................................................................. 2, 3

*Ass'n of Conn. Lobbyists LLC v. Garfield*,
   241 F.R.D. 100 (D. Conn. 2007) ......................................................................................... 20

*Bellitto v. Snipes*,
   No. 16-cv-61474, 2016 WL 5118568 (S.D. Fla. Sep. 21, 2016) ........................................ 17

*Bellitto v. Snipes*,
   935 F.3d 1192 (11th Cir. 2019) ..................................................................................... 18, 20

*Berger v. N.C. State Conf. of the NAACP*,
   597 U.S. 179 (2022) ........................................................................................................ 2, 17

*Brennan v. N.Y.C. Bd. of Educ.*,
   260 F.3d 123 (2d Cir. 2001) ................................................................................................ 18

*Bridgeport Guardians, Inc. v. Delmonte*,
   602 F.3d 469 (2d Cir. 2010) ................................................................................................ 13

*Brooklyn Branch of NAACP v. Kosinski*,
   735 F. Supp. 3d 421 (S.D.N.Y. 2024) ................................................................................. 14

*Brooks v. Sussex Cnty. State Bank*,
   167 F.R.D. 347 (N.D.N.Y. 1996) .................................................................................. 12, 13

*Butler, Fitzgerald & Potter v. Sequa Corp.*,
   250 F.3d 171 (2d Cir. 2001) ................................................................................................ 15

*Christa McAuliffe Intermediate Sch. PTO, Inc. v. de Blasio*,
  No. 18 CIV. 11657 (ER), 2020 WL 1432213 (S.D.N.Y. Mar. 24, 2020)............................ 20

*Citizens Against Casino Gambling in Erie Cnty. v. Hogen*,
  417 F. App'x 49 (2d Cir. 2011) ........................................................................... 19

*Citizens for Balanced Use v. Mont. Wilderness Ass'n*,
  647 F.3d 893 (9th Cir. 2011) ............................................................................. 16

*Colony Ins. Co. v. Oz Sols.*,
  No. 24 CIV. 1935 (PAE), 2025 WL 2355734 (S.D.N.Y. Aug. 14, 2025).......................... 12

*Commack Self-Serv. Kosher Meats, Inc. v. Rubin*,
  170 F.R.D. 93 (E.D.N.Y. 1996) .......................................................................... 20

*Conservation L. Found. of New Eng., Inc. v. Mosbacher*,
  966 F.2d 39 (1st Cir. 1992) ............................................................................... 16

*D'Amato v. Deutsche Bank*,
  236 F.3d 78 (2d Cir. 2001)................................................................................ 11

*Dinkens v. Att'y Gen. of U.S.*,
  285 F.2d 430 (5th Cir. 1961) .............................................................................. 5

*Doe #1 v. Deposit Guarantee Fund*,
  No. 23-1158-CV, 2025 WL 706502 (2d Cir. Mar. 5, 2025)...................................... 15

*Does 1 Through 7 v. Taliban*,
  No. 6:22-CV-990, 2023 WL 4532763 (N.D.N.Y. July 12, 2023) ............................. 15, 18

*Foster v. Love*,
  522 U.S. 67 (1997)........................................................................................... 2

*Fund for Animals, Inc. v. Norton*,
  322 F.3d 728 (D.C. Cir. 2003) ........................................................................... 16

*Green v. Biden*,
  No. 24-CV-1975 (MKB), 2024 WL 4932751 (E.D.N.Y. Dec. 2, 2024) ...................... 19

*H.L. Hayden Co. of N.Y. v. Siemens Med. Sys., Inc.*,
  797 F.2d 85 (2d Cir. 1986)............................................................................. 19, 20

*Hoblock v. Albany Cnty. Bd. of Elections*,
  233 F.R.D. 95 (N.D.N.Y. 2005).......................................................................... 11, 15

*Hulinsky v. County of Westchester*,
    No. 22-CV-06950 (PMH), 2023 WL 3162428 (S.D.N.Y. Apr. 28, 2023) ........................ 12

*Hum. Servs. Council of New York v. City of New York*,
    No. 21 CIV. 11149 (PGG), 2022 WL 4585815 (S.D.N.Y. Sep. 29, 2022) ........................ 19

*Husted v. A. Philip Randolph Inst.*,
    584 U.S. 756 (2018) ............................................................................................... 3, 4

*In re Ionosphere Clubs, Inc.*,
    101 B.R. 844 (Bankr. S.D.N.Y. 1989) ............................................................................ 11

*In re N.Y.C. Policing During Summer 2020 Demonstrations*,
    27 F.4th 792 (2d Cir. 2022) ............................................................... 10, 11, 13, 16

*In re Sealed Case*,
    237 F.3d 657 (D.C. Cir. 2001) ...................................................................................... 13

*Issa v. Newsom*,
    No. 2:20-CV-0104-MCE-CKD, 2020 WL 3074351 (E.D. Cal. June 10, 2020) ................ 14

*Kalbers v. U.S. Dep't of Just.*,
    22 F.4th 816 (9th Cir. 2021) ......................................................................................... 13

*Kennedy v. Lynd*,
    306 F.2d 222 (5th Cir. 1962) .......................................................................................... 5

*Kleissler v. U.S. Forest Serv.*,
    157 F.3d 964 (3d Cir. 1998) .......................................................................................... 16

*La Unión del Pueblo Entero v. Abbott*,
    29 F.4th 299 (5th Cir. 2022) ......................................................................................... 14

*Lichtman v. Blom*,
    No. 89 CIV. 5643 (JFK), 1990 WL 186856 (S.D.N.Y. Nov. 19, 1990) ....................... 11, 20

*Louis Berger Grp., Inc. v. State Bank of India*,
    802 F. Supp. 2d 482 (S.D.N.Y. 2011) ............................................................................ 19

*Mich. Welfare Rts. Org. v. Trump*,
    No. 20-cv-03388-TSC (D.D.C.) ....................................................................................... 9

*NAACP v. Alabama ex rel. Patterson*,
    357 U.S. 449 (1958) ......................................................................................................... 2

*New York v. Nat'l Sci. Found.*,
No. 25 CIV. 4452 (JPC),
2025 WL 1793858 (S.D.N.Y. June 30, 2025) ....................................................... 19

*Paher v. Cegavske*,
No. 3:20-cv-0024-MMD-CKD, 2020 WL 2042365 (D. Nev. Apr. 28, 2020) ................... 14

*Pub. Int. Legal Found., Inc. v. Bellows*,
92 F.4th 36 (1st Cir. 2024) ................................................................................. 6

*Pub. Int. Legal Found., Inc. v. Winfrey*,
463 F. Supp. 3d 795 (E.D. Mich. 2020) ................................................................. 20

*"R" Best Produce, Inc. v. Shulman-Rabin Mktg. Corp.*,
467 F.3d 238 (2d Cir. 2006) ............................................................................... 10

*Republican Nat'l Comm. v. N.C. State Bd. of Elections*,
120 F.4th 390 (4th Cir. 2024) .............................................................................. 3

*Schwartz v. Town of Huntington Zoning Bd. of Appeals*,
191 F.R.D. 357 (E.D.N.Y. 2000) ......................................................................... 15

*Sec. Inv. Prot. Corp. v. Bernard L. Madoff Inv. Sec. LLC*,
550 B.R. 241 (Bankr. S.D.N.Y. 2016) ................................................................... 10

*Tachiona ex rel. Tachiona v. Mugabe*,
186 F. Supp. 2d 383 (S.D.N.Y. 2002) ................................................................... 11

*Talarico Bros. Bldg. Corp. v. Union Carbide Corp.*,
No. 17-CV-1041S, 2021 WL 732692 (W.D.N.Y. Feb. 25, 2021) .................................. 11

*Trbovich v. United Mine Workers*,
404 U.S. 528 (1972) ............................................................................... 2, 15, 17

*U.S. Dep't of Just. v. Reps. Comm. for Freedom of Press*,
489 U.S. 749 (1989) ........................................................................................ 19

*U.S. Equal Emp. Opportunity Comm'n v. Birchez Assocs., LLC*,
No. 119-cv-810 (LEK/DJS), 2021 WL 1115513 (N.D.N.Y. Mar. 24, 2021) ..................... 11

*United States v. Hooker Chems. & Plastics Corp.*,
749 F.2d 968 (2d Cir. 1984) ........................................................................ 10, 13

*WildEarth Guardians v. U.S. Forest Serv.*,
573 F.3d 992 (10th Cir. 2009) ............................................................................ 16

*Williams v. Salerno*,
    792 F.2d 323 (2d Cir. 1986) ............................................................. 15

*Yniguez v. Arizona*,
    939 F.2d 727 (9th Cir. 1991) ............................................................ 15

**Constitution, Statutes, and Rules**

U.S. Const. art. I, § 4, cl. 1 ................................................................... 2

52 U.S.C. § 20501(b) ............................................................................. 3

52 U.S.C. § 20507 .............................................................................. 3, 6

52 U.S.C. § 21083 .................................................................................. 3

52 U.S.C. § 21111 .................................................................................. 6

N.Y. Elec. Law § 3-220 .................................................................. 1, 6, 13

Fed. R. Civ. P. 24 ........................................................................... *passim*

**Other Authorities**

Ashley Nguyen, Kayla Ruble & Tim Craig, *Anger Builds in Black community over Trump's
    claims of voter fraud in big cities*, Wash. Post (Nov. 20, 2020),
    https://www.washingtonpost.com/national/2020/11/20/f0d11954-2b71-11eb-9b14-
    ad872157ebc ................................................................................. 8

Devlin Barrett & Nick Corasaniti, *Trump Administration Quietly Seeks to Build National
    Voter Roll*, N.Y. Times (Sep. 9, 2025), https://perma.cc/8VP4-WRXD ............................. 4

Jonathan Shorman, *Some Republican states resist DOJ demand for private voter data*,
    Stateline (Sep. 18, 2025), https://stateline.org/2025/09/18/some-republican-states-resist-
    doj-demand-for-private-voter-data/ ...................................................... 4

Juana Summers, *Trump Push to Invalidate Votes in Heavily Black Cities Alarms Civil Rights
    Groups*, NPR (Nov. 24, 2020, 6:26 AM),
    https://www.npr.org/2020/11/24/938187233/trump-push-to-invalidate-votes-in-heavily-
    black-cities-alarms-civil-rights-group ................................................... 8

Nicholas Nehamas, *DOGE Put Critical Social Security Data at Risk, Whistle- Blower Says*,
    N.Y. Times (Aug. 26, 2025), https://www.nytimes.com/2025/08/26/us/politics/doge-
    social-security-data.html ................................................................... 7

Caroline Vakil, *Sherrill campaign slams release of military records to opponent's ally*, The
   Hill (Sep. 25, 2025, 5:23 PM), https://thehill.com/homenews/campaign/5522531-trump-
   admin-leaks-sherrill-records/ ................................................................................................ 7

## INTRODUCTION

The U.S. Department of Justice ("DOJ") recently embarked on an unprecedented nationwide campaign to compile sensitive personal information on voters in a centralized federal database. As part of this effort, DOJ sued New York last week, seeking to compel the State to turn over its complete and unredacted voter registration list, which contains sensitive and private information about every voter in New York. This legal assault intrudes not only upon New York's constitutional prerogative to maintain and protect its own voter registration list—it directly intrudes upon the privacy rights of individual New Yorkers who have good reason to fear their personal information being handed over to the federal government.

Accordingly, the National Association for the Advancement of Colored People ("NAACP") and the NAACP New York State Conference ("NAACP NYS") (together, "Proposed Intervenors") move to intervene in this suit to defend against the federal government's overreach. The NAACP, which has approximately 200,000 members nationwide, is the oldest and largest civil rights organization in the nation. Its mission is to ensure a society in which all individuals have equal rights without discrimination based on race. NAACP NYS is the New York affiliate of the NAACP, representing over 50 branches and chapters across the state of New York and in excess of 12,000 members. New York law guarantees voters that their information—such as driver's license numbers and social security numbers—"shall not be released for public inspection." N.Y. Elec. Law § 3-220. DOJ's requested relief would run roughshod over these privacy protections, which Proposed Intervenors seek to preserve.

Proposed Intervenors are entitled to intervention as of right because they have significant interests that are at severe risk of impairment by this action, and the existing parties do not adequately represent those interests. *See* Fed. R. Civ. P. 24(a). Most significantly, they unquestionably have an interest in ensuring that the personal information of their members is not

improperly disclosed to DOJ, particularly since New York law explicitly protects such information. Indeed, the NAACP has a long history of vigorously guarding against the compelled disclosure of its members' personal information. *E.g.*, *NAACP v. Alabama ex rel. Patterson*, 357 U.S. 449, 458 (1958). While New York's election officials have thus far resisted disclosure, they do not adequately represent Proposed Intervenors; as governmental defendants, they must consider the "broader public-policy implications" of the issues presented in this suit, unlike Proposed Intervenors, who are solely concerned with protecting their members and constituents' privacy, "full stop." *Berger v. N.C. State Conf. of the NAACP*, 597 U.S. 179, 196 (2022) (citing *Trbovich v. United Mine Workers*, 404 U.S. 528, 538–39 (1972)). Further still, those defendants have indicated that they may be amenable to a partial production of voter registration data if the DOJ satisfies certain criteria—a compromise position the Proposed Intervenors are unlikely to share. That prospect further confirms that the Proposed Intervenors cannot blindly rely upon the existing Defendants to defend Proposed Intervenors' interests at stake in this case.

Alternatively, Proposed Intervenors should be granted permissive intervention under Rule 24(b), the requirements of which are readily satisfied. Doing so will ensure that New York voters have a voice in this litigation concerning the disclosure of their sensitive and personal information.

## BACKGROUND

**I.    Federal law has long made voter list maintenance a state responsibility, consistent with the constitutional separation of powers.**

The U.S. Constitution "invests the States with responsibility for the mechanics" of federal elections, subject to any decision by Congress to "preempt state legislative choices." *Foster v. Love*, 522 U.S. 67, 69 (1997); *see also* U.S. Const. art. I, § 4, cl. 1. Accordingly, as a default matter, the Constitution assigns states the responsibility of determining voter eligibility and maintaining lists of eligible voters. *See Arizona v. Inter Tribal Council of Ariz., Inc.*, 570 U.S. 1, 17 (2013).

While Congress has enacted certain laws governing voter registration, these laws augment existing "state voter-registration systems," *id.* at 5, and confirm that states are the custodians of voter registration data. In 1993, Congress enacted the National Voter Registration Act ("the NVRA") to serve "two main objectives: increasing voter registration and removing ineligible persons from the States' voter registration rolls." *Husted v. A. Philip Randolph Inst.*, 584 U.S. 756, 761 (2018); *see also* 52 U.S.C. § 20501(b). The law charges *states*—not the federal government—with the "administration of voter registration for elections for Federal office," 52 U.S.C. § 20507(a), including as to maintaining voter lists (subject to strict procedural safeguards), *id.* § 20507(c)–(g). It similarly makes *states* the custodians of voter lists. *See Husted*, 584 U.S. at 761.

In the wake of the 2000 elections, Congress enacted the Help America Vote Act ("HAVA") "to improve voting systems and voter access." *Republican Nat'l Comm. v. N.C. State Bd. of Elections*, 120 F.4th 390, 394 (4th Cir. 2024). Like the NVRA, HAVA regulates how *states* maintain voter registration lists, requiring them to create a "computerized statewide voter registration list." 52 U.S.C. § 21083(a)(1). It also requires states to "perform list maintenance" consistent with the NVRA. *Id.* § 21083(a)(2). HAVA is abundantly clear that this list is to be "defined, maintained, and administered at the *State* level." *Id.* § 21083(a)(1)(A) (emphasis added). Indeed, HAVA's legislative history stressed the importance of maintaining our decentralized electoral system to preserving liberty:

> Historically, elections in this country have been administered at the state and local level. This system has many benefits that must be preserved. The dispersal of responsibility for election administration has made it impossible for a single centrally controlled authority to dictate how elections will be run, and thereby be able to control the outcome. This leaves the power and responsibility for running elections where it should be, in the hands of the citizens of this country.

*See* H.R. Rep. No. 107-329, pt. 1, at 31–32 (2001).

Consistent with that principle, neither the NVRA nor HAVA tasks the *federal government* with compiling a federal national voter registration list or micromanaging the states in their maintenance of such lists. Congress has traditionally "left it up to the States to maintain accurate lists of those eligible to vote in federal elections," *Husted*, 584 U.S. at 761, subject only to the *specific* requirements of the NVRA and HAVA, which purposefully operate through the states themselves—not DOJ and the federal government.

## II.    The Department of Justice has embarked on an unprecedented nationwide campaign to collect personal voter registration data held by the states.

This spring, DOJ launched a campaign to demand broad and unprecedented access to state voter files, including personal information about each registered voter. To date, DOJ has sent demands to over thirty-five states, with plans to make similar demands on all fifty states.[1] It seeks to use the data to create a national voter database that will, in turn, be used to substantiate President Trump's unfounded accusations that millions of non-citizens have voted illegally in recent elections. *See* Barrett & Corasaniti, *supra* note 1. The vast majority of states that have received such demands—including those led by Republican officeholders—have refused to comply, declining to turn over sensitive personal information that is typically protected by state law.[2]

DOJ sent New York a letter on June 30, 2025, demanding, among other things, New York's "[s]tatewide voter registration list." Dkt. 1 ¶¶ 42–43. DOJ reiterated its requests on August 14, *id.* ¶ 45, demanding that New York produce its entire computerized statewide voter registration list,

---

[1] *See* Devlin Barrett & Nick Corasaniti, *Trump Administration Quietly Seeks to Build National Voter Roll*, N.Y. Times (Sep. 9, 2025), https://perma.cc/8VP4-WRXD.

[2] *See* Jonathan Shorman, *Some Republican states resist DOJ demand for private voter data*, Stateline (Sep. 18, 2025), https://stateline.org/2025/09/18/some-republican-states-resist-doj-demand-for-private-voter-data/ (reporting only one state—Indiana—has so far given DOJ everything it sought).

"with all fields, including each registrant's full name, date of birth, residential address, their state driver's license number, and the last four digits of their Social Security number," *id.* ¶ 46.

New York responded on August 29, sharing only the public version of its statewide voter registration list. *Id.* ¶ 48. The Complaint, which does not attach the relevant correspondence, indicates a partisan split between the State Board of Election's Democratic and Republican members, with the latter urging production of the complete, unredacted list. *Id.*

## III.    The Department of Justice sues New York to obtain its complete registration list.

DOJ filed this suit on September 25, seeking to compel New York to provide its full statewide voter registration list. *Id.* ¶ 7. It names the State of New York, the bipartisan State Board of Elections, and each of the State Board's members—Democratic and Republican alike—as Defendants. *See id.* ¶¶ 11–18. DOJ cited three federal statutes to justify its claims: the Civil Rights Act of 1960, the NVRA, and HAVA. *Id.* ¶ 1. None supports DOJ's sweeping demand.

*First*, DOJ invokes Section 303 of the Civil Rights Act of 1960 (the "CRA"), a long dormant Civil Rights-era law that permits DOJ to review certain voting records to investigate "question[s] concerning infringement or denial of . . . constitutional voting rights." *Kennedy v. Lynd*, 306 F.2d 222, 228 (5th Cir. 1962). Congress enacted the law to preserve "the right of all qualified citizens to vote without discrimination on account of race," and specifically to facilitate "investigation[s]" authorized under the Civil Rights Act of 1957, which recalcitrant local officials had frustrated through the destruction of records. H.R. Rep. No. 86-956, at 1944 (1959). This history "leaves no doubt but that [Section 303] is designed to secure a more effective protection of the right to vote." *Alabama ex rel. Gallion v. Rogers*, 187 F. Supp. 848, 853 (M.D. Ala. 1960), *aff'd sub nom. Dinkens v. Att'y Gen. of U.S.*, 285 F.2d 430 (5th Cir. 1961). But DOJ admits that is not its purpose here; rather it claims to be evaluating New York's list maintenance efforts under

the NVRA and HAVA—statutes with their own separate disclosure rules (under the NVRA specifically) and enforcement mechanisms. Thus, the Civil Rights Act is inapplicable here.[3]

*Second*, though the NVRA requires states to permit public inspection of certain records, 52 U.S.C. § 20507(i)(1), courts have consistently held that "nothing in the text of the NVRA prohibits the appropriate redaction of uniquely or highly sensitive personal information in" those records, such as driver's license numbers, partial social security numbers, and dates of birth. *Pub. Int. Legal Found., Inc. v. Bellows*, 92 F.4th 36, 56 (1st Cir. 2024) (collecting cases).

*Third*, unlike the NVRA, HAVA has no disclosure provisions at all, and DOJ's complaint and letters cite no case law or other authority for the radical proposition that the mere existence of DOJ's authority to enforce HAVA's "uniform and nondiscriminatory" requirements entitles it to unfettered access to state voter registration lists upon demand. 52 U.S.C. § 21111.

## IV.    Proposed Intervenors' sensitive personal information is placed in jeopardy by DOJ's demands.

New York law guarantees voters that their information—such as driver's license numbers and social security numbers—"shall not be released for public inspection." N.Y. Elec. Law § 3-220. In addition to defending their privacy interests, Proposed Intervenors have well-founded concerns about DOJ's intended use of their sensitive and personal voter information, particularly given that many of their members hold political views and engage in civic activities disfavored by

---

[3] Even if Section 303 did apply, it does not prohibit states from redacting confidential and sensitive voter information that has nothing to do with investigating the denial of the right to vote, just as they may under the NVRA. *See Pub. Int. Legal Found.*, 92 F.4th at 56.

the current presidential administration, which has repeatedly disregarded privacy protections over sensitive personal data.[4]

**The National Association for the Advancement of Colored People.** The NAACP is the nation's oldest organization dedicated to the advancement of civil rights in the United States. *See* Ex. A, Declaration of Anthony P. Ashton ("Ashton Decl.") ¶ 4. Founded in 1909 by pioneers of racial justice, the NAACP's core mission has long been to ensure the political, educational, social, and economic equality of all people. *Id.* The NAACP is a formal membership organization, with more than 200,000 members nationwide and in excess of 12,000 in New York alone. *Id.* ¶ 5. In furtherance of its mission, the NAACP works to address the concerns of the national organization, its state chapters, and individual members, including in areas such as voting rights, civil rights, and privacy concerns. *Id.* ¶ 6. The NAACP accomplishes this goal by engaging in several different programming efforts, including mobilizing voters through robust non-partisan civic engagement and election-related outreach efforts, as well as voter protection campaigns aimed at ensuring the right to vote is respected and protected. *Id.* ¶ 8.

Today, many of the NAACP's members reasonably fear retaliation by the current federal administration—and they are accordingly concerned about the DOJ's efforts to obtain sensitive personal information about them and nearly every other American. *Id.* ¶¶ 10–12. This is regrettably not a novel concern for this organization—many of the NAACP's leaders and politically vocal

---

[4] For example, public reports have indicated that the Department of Government Efficiency (DOGE) placed the security of millions of Social Security numbers at risk through improper maintenance. *See* Nicholas Nehamas, *DOGE Put Critical Social Security Data at Risk, Whistle-Blower Says*, N.Y. Times (Aug. 26, 2025), https://www.nytimes.com/2025/08/26/us/politics/doge-social-security-data.html. And just last week, the National Archives allegedly released the military records of a New Jersey gubernatorial candidate in violation of the Privacy Act, with the apparent aim of seeking to help her opponent. *See* Caroline Vakil, *Sherrill campaign slams release of military records to opponent's ally*, The Hill (Sep. 25, 2025, 5:23 PM), https://thehill.com/homenews/campaign/5522531-trump-admin-leaks-sherrill-records/.

members have been targeted by unjust espionage and investigation—and in some instances physical violence—because of their advocacy efforts. *Id.* ¶ 12. In view of this long history of retaliation against the organization's work to enfranchise Black Americans, the NAACP takes very seriously its obligation to protect the privacy of its members from government overreach. *Id.* ¶¶ 7, 12. The DOJ's efforts to compel the disclosure of massive amounts of sensitive voter data— including data of the NAACP's tens of thousands of members in New York—is therefore deeply distressing to the NAACP and its members, who deeply value their privacy, particularly when it comes to voting. *Id.* ¶¶ 11–14. Consequently, if the DOJ succeeds in obtaining the sensitive data it seeks in this lawsuit, the NAACP will be forced to contend with not only a growing distrust of the government, but an increasing hesitancy among members and constituents about actively participating in the franchise. *Id.* ¶ 13. The threatened disclosure therefore endangers NAACP's mission and voter registration and engagement efforts, as it fears that the possibility of disclosure to DOJ will discourage prospective voters from registering and turning out to vote. *Id.* ¶¶ 14–15. Given that the information sought by the DOJ includes extremely sensitive personal identifying information and increases the risk of identity theft and other forms of exploitation, the NAACP has a direct interest in protecting the fundamental privacy rights of its individual members. *Id.* ¶ 14.

These concerns are exacerbated by the fact that President Trump's false claims of voter fraud have disproportionately targeted and sought to disenfranchise Black communities and voters.[5] The NAACP previously filed litigation during the President's efforts, in the wake of the

---

[5] *See, e.g.*, Ashley Nguyen, Kayla Ruble & Tim Craig, *Anger Builds in Black community over Trump's claims of voter fraud in big cities*, Wash. Post (Nov. 20, 2020), https://www.washingtonpost.com/national/2020/11/20/f0d11954-2b71-11eb-9b14-ad872157ebc 9_story.html; Juana Summers, *Trump Push to Invalidate Votes in Heavily Black Cities Alarms*

2020 elections, to disenfranchise thousands of voters, which disproportionately targeted Black voters and communities. *See Mich. Welfare Rts. Org. v. Trump*, No. 20-cv-03388-TSC (D.D.C.). In view of these past actions, many Black voters in New York and across the country fear that the DOJ's most recent efforts are a prelude to similar disenfranchisement efforts.

*NAACP New York State Conference.* With over 12,000 members across over 50 branches, college chapters, and youth councils across New York, NAACP NYS works to ensure political, educational, and economic justice for people of African descent. Ex. B, Declaration of L. Joy Williams ("Williams Decl.") ¶¶ 3–4. Like the NAACP, NAACP NYS has a long history of fighting for and protecting the civil rights and voting rights of its members and constituents more broadly, including by engaging in voter outreach, education, and activism. *Id.* ¶¶ 5–6. These efforts frequently include registering young voters for the first time and registering previously incarcerated citizens whose civil rights have been restored. *Id.* ¶ 7. The DOJ's effort to obtain New York's complete voter registration data with all sensitive fields threatens the interests of NAACP NYS. Just in the last decade, NAACP NYS's constituents have endured voter purges and governmental targeting for purported voter fraud. *Id.* ¶ 8. The federal government has also recently made clear that it will not hesitate to use any and all means at its disposal to target Americans that it disagrees with or whose voices it thinks should be silenced. *Id.* ¶ 11. Consequently, if DOJ obtains the sensitive data it seeks in this lawsuit, NAACP NYS and its members will face deepening distrust of the system and increased deterrence from participating in elections, because of the risk of such data being weaponized against Americans who are disfavored by the current administration. *Id.* ¶¶ 12–14. This disclosure could also greatly damage public trust in our

---

*Civil Rights Groups*, NPR (Nov. 24, 2020, 6:26 AM), https://www.npr.org/2020/11/24/938187233/trump-push-to-invalidate-votes-in-heavily-black-cities-alarms-civil-rights-group.

organization. *Id.* ¶ 10. Like the NAACP, NAACP NYS is forced to contend with a growing distrust of the government and hesitance among members and constituents to actively participate and has a direct interest in protecting the fundamental privacy rights of its individual members. *Id.* ¶ 14. These threats all work to undermine NAACP NYS's ultimate mission of supporting civic engagement for our members and our community. *Id.*

## LEGAL STANDARD

The Federal Rules of Civil Procedure require courts to grant intervention to any movant who "claims an interest relating to the property or transaction that is the subject of the action, and is so situated that disposing of the action may as a practical matter impair or impede the movant's ability to protect its interest, unless existing parties adequately represent that interest." Fed. R. Civ. P. 24(a)(2). Consequently, "[t]o prevail on a motion for intervention as of right, a movant must '(1) timely file an application, (2) show an interest in the action, (3) demonstrate that the interest may be impaired by the disposition of the action, and (4) show that the interest is not protected adequately by the parties to the action." *In re N.Y.C. Policing During Summer 2020 Demonstrations*, 27 F.4th 792, 799 (2d Cir. 2022) (quoting *"R" Best Produce, Inc. v. Shulman-Rabin Mktg. Corp.*, 467 F.3d 238, 240 (2d Cir. 2006)). "The inquiry under Rule 24(a)(2) is a flexible one and the factors should 'be read not discretely, but together.'" *Sec. Inv. Prot. Corp. v. Bernard L. Madoff Inv. Sec. LLC*, 550 B.R. 241, 248 (Bankr. S.D.N.Y. 2016) (citation omitted) (quoting *United States v. Hooker Chems. & Plastics Corp.*, 749 F.2d 968, 983 (2d Cir. 1984)). "A showing that a very strong interest exists may warrant intervention upon a lesser showing of impairment or inadequacy of representation. Similarly, where representation is clearly inadequate, a lesser interest may suffice as a basis for granting intervention." *Id.* (quoting *Hooker Chems.*, 749 F.2d at 983); *see also Hooker Chems.*, 749 F.2d at 983 (discussing flexibility of Rule 24(a) inquiry and recognizing that most recent substantive changes to Rule 24 "focused on abandoning

10

formalistic restrictions in favor of 'practical considerations' to allow courts to reach pragmatic solutions to intervention problems" (citing 1966 Advisory Committee Note)); *Tachiona ex rel. Tachiona v. Mugabe*, 186 F. Supp. 2d 383, 394 (S.D.N.Y. 2002) (similar); *Talarico Bros. Bldg. Corp. v. Union Carbide Corp.*, No. 17-CV-1041S, 2021 WL 732692, at *2 (W.D.N.Y. Feb. 25, 2021) (noting "Rule 24 is to be given a liberal construction").

Additionally, courts retain discretion to grant "[p]ermissive intervention . . . when a proposed intervenor 'has a claim or defense that shares with the main action a common question of law or fact.'" *In re N.Y.C. Policing*, 27 F.4th at 804 (quoting Fed. R. Civ. P. 24(b)(1)(B)). This is a "liberal standard[]" that favors grants of intervention. *Lichtman v. Blom*, No. 89 CIV. 5643 (JFK), 1990 WL 186856, at *1 (S.D.N.Y. Nov. 19, 1990); *see also In re Ionosphere Clubs, Inc.*, 101 B.R. 844, 853 (Bankr. S.D.N.Y. 1989) ("Under Federal Rule 24(b), permissive intervention is also given a liberal construction.").

## ARGUMENT

**I.     Proposed Intervenors are entitled to intervene as of right.**

### A.      The motion to intervene is timely and will not prejudice the parties.

In determining whether a motion for intervention as of right is timely, courts consider the totality of the circumstances facing the movant, with a focus on four factors: "(1) how long the applicant had notice of the interest before [he] made the motion to intervene; (2) prejudice to existing parties resulting from any delay; (3) prejudice to the applicant if the motion is denied; and (4) any unusual circumstances militating for or against a finding of timeliness." *Hoblock v. Albany Cnty. Bd. of Elections*, 233 F.R.D. 95, 98 (N.D.N.Y. 2005) (alteration in original) (quoting *D'Amato v. Deutsche Bank*, 236 F.3d 78, 84 (2d Cir. 2001)). These factors present a "flexible" inquiry. *U.S. Equal Emp. Opportunity Comm'n v. Birchez Assocs., LLC*, No. 119-CV-810 (LEK/DJS), 2021 WL 1115513, at *1 (N.D.N.Y. Mar. 24, 2021) (citation omitted).

Proposed Intervenors' motion is indisputably timely. DOJ filed suit on September 25, which was the first day on which Proposed Intervenors had notice of this case and the risk it posed to their interests. This motion comes just six days later—before any case schedule has been set, before any Defendants have answered, and while this case remains at its earliest stage. That plainly satisfies the first factor. *See, e.g.*, *Colony Ins. Co. v. Oz Sols.*, No. 24 CIV. 1935 (PAE), 2025 WL 2355734, at *1 (S.D.N.Y. Aug. 14, 2025) (concluding motion to intervene was timely when filed before the close of fact discovery and within two months of receiving notice of the action); *Brooks v. Sussex Cnty. State Bank*, 167 F.R.D. 347, 350 (N.D.N.Y. 1996) (concluding motion was timely when filed "slightly more than two months after the complaint was filed," which reflected "only a short period of time between commencement of the action" and intervention).

Allowing intervention would also not require altering any deadlines because there are no existing deadlines and the case is currently stayed in accordance with General Order No. 48 entered today by the Chief Judge of this District. *See* N.D.N.Y. Gen. Order #48 (Oct. 1, 2025). Proposed Intervenors also agree to abide by any future deadlines set by the Court or agreed to by the existing parties. Accordingly, there is no conceivable prejudice to the existing parties. *Hulinsky v. County of Westchester*, No. 22-CV-06950 (PMH), 2023 WL 3162428, at *3 (S.D.N.Y. Apr. 28, 2023) (concluding there was no prejudice where intervenors did not seek to interfere with any existing schedules in the case); *Allco Fin. Ltd. v. Etsy*, 300 F.R.D. 83, 87 (D. Conn. 2014) (concluding there would be no prejudice to the parties where the intervenors represented they would "abide by the scheduling order already in place"). In contrast, the prejudice to Proposed Intervenors if their motion is denied is significant, given the interests at risk of impairment in this case. *See infra* Section I.B. Additionally, there are no other unusual circumstances militating against a finding of

timeliness. Proposed Intervenors therefore satisfy the timeliness factor for intervention as of right. *See Brooks*, 167 F.R.D. at 351.

> **B.    Proposed Intervenors have significantly protectable interests in protecting their sensitive personal information from improper disclosure to DOJ.**

Proposed Intervenors have a significantly protectable interest in protecting their sensitive and personal information. "For an interest to be cognizable by Rule 24(a)(2), it must be 'direct, substantial, and legally protectable.'" *Bridgeport Guardians, Inc. v. Delmonte*, 602 F.3d 469, 473 (2d Cir. 2010) (citation omitted). But, consistent with the liberal standards of Rule 24, the Second Circuit has "cautioned against requiring that a proposed intervenor identify a narrow interest amounting to a legal entitlement." *In re N.Y.C. Policing*, 27 F.4th at 801; *see also Hooker Chems.*, 749 F.2d at 983 (recognizing "components of the Rule are not bright lines, but ranges").

Proposed Intervenors satisfy that standard. First, they risk having their members' sensitive information disclosed to DOJ. *See* Ashton Decl. ¶ 5; Williams Decl. ¶ 4. Courts regularly find that precisely these types of concerns support intervention. *See, e.g.*, *Kalbers v. U.S. Dep't of Just.*, 22 F.4th 816, 827 (9th Cir. 2021) (recognizing "straightforward" significantly protectable interest in confidentiality of non-public documents); *In re Sealed Case*, 237 F.3d 657, 663–64 (D.C. Cir. 2001) (holding intervenors had "legally cognizable interest in maintaining the confidentiality" of records). Moreover, the personal voter registration data of their members and constituents is protected from disclosure under New York law. *See* N.Y. Elec. Law § 3-220(1) (prohibiting the voter's driver's license or non-driver photo ID number and social security number from being released for public inspection). Disclosure would further damage our public standing as an organization that regularly encourages individuals to participate in the political process who would otherwise avoid it. *Id.* ¶ 10.

Proposed Intervenors' voter registration and voter engagement efforts will also be harmed by the disclosure of their members' information to DOJ. In particular, Proposed Intervenors' members and constituents belong to communities that are particularly fearful of retaliation and harassment from the federal government. *See* Ashton Decl. ¶¶ 11–13; Williams Decl. ¶¶ 10–12. In view of the current administration's harsh treatment of Black communities—as well as the administration's past and present rhetoric about voter fraud and election corruption disproportionately targeted at largely Black cities—many of Proposed Intervenors' members—even those plainly qualified to vote—may be hesitant to engage in the political process where it means risking scrutiny and retaliation. *See* Ashton Decl. ¶¶ 12–13; Williams Decl. ¶ 11. The distrust sown by the DOJ's aggressive demands for personal information will therefore directly frustrate Proposed Intervenors' core mission of driving civic engagement in New York and across the country, especially where it threatens to tarnish Proposed Intervenors' trusted position as a facilitator of civic engagement and voting participation. *See* Ashton Decl. ¶ 15; Williams Decl. ¶¶ 10, 14. Courts have long recognized that organizations have a significant protectable interest in preserving and pursuing their own mission-critical organizational activities, particularly when it comes to ensuring their constituents' ability to vote. *See, e.g.*, *Issa v. Newsom*, No. 2:20-CV-01044-MCE-CKD, 2020 WL 3074351, at *3 (E.D. Cal. June 10, 2020); *Paher v. Cegavske*, No. 3:20-cv-00243-MMD-WGC, 2020 WL 2042365, at *2 (D. Nev. Apr. 28, 2020); *cf. La Unión del Pueblo Entero v. Abbott*, 29 F.4th 299, 306 (5th Cir. 2022) (recognizing that a political party had a "legally protectable interest" because they "expend significant resources in the recruiting and training of volunteers and poll watchers who participate in the election process").

Indeed, such interests are so stark that they frequently satisfy the even greater requirements for showing an Article III injury or irreparable harm. *See Brooklyn Branch of NAACP v. Kosinski*,

735 F. Supp. 3d 421, 436 (S.D.N.Y. 2024) (concluding Brooklyn NAACP had organizational standing considering its "long history of engagement efforts to support all voters in gaining access to the franchise"); *see also Williams v. Salerno*, 792 F.2d 323, 326 (2d Cir. 1986) (recognizing that denying right to vote to registration applicants constitutes irreparable harm); *Am. Fed'n of Gov't Emps. v. U.S. Off. of Pers. Mgmt.*, 777 F. Supp. 3d 253, 269 (S.D.N.Y. 2025) ("Several courts have . . . found standing to exist when an unauthorized third party was granted access to a plaintiff's legally protected data, due to the resulting harm's resemblance to intrusion upon seclusion."). Even though Proposed Intervenors need not establish Article III standing here, *see Hoblock*, 233 F.R.D. at 97, that they can likely satisfy even the "more stringent" requirement of Article III standing "compels the conclusion that they have an adequate interest" for purposes of Rule 24, *Yniguez v. Arizona*, 939 F.2d 727, 735 (9th Cir. 1991).

### C. Proposed Intervenors' interests are not adequately represented by existing parties.

Proposed Intervenors cannot be assured adequate representation in this matter if they are denied intervention. The "burden to show inadequacy of representation . . . is a minimal one, and not onerous." *Hoblock*, 233 F.R.D. at 99; *accord Trbovich*, 404 U.S. at 538 n.10 (explaining this requirement "should be treated as minimal"). While the Second Circuit demands a greater "showing of inadequacy in cases where the putative intervenor and a named party have the same ultimate objective," *Butler, Fitzgerald & Potter v. Sequa Corp.*, 250 F.3d 171, 179 (2d Cir. 2001), it is enough to show that a proposed intervenor "has a legal argument that 'could not be equally asserted' by the existing parties." *Does 1 Through 7 v. Taliban*, No. 6:22-CV-990, 2023 WL 4532763, at *5 (N.D.N.Y. July 12, 2023) (quoting *Schwartz v. Town of Huntington Zoning Bd. of Appeals*, 191 F.R.D. 357, 359 (E.D.N.Y. 2000)), *aff'd sub nom. on other grounds Doe #1 v. Deposit Guarantee Fund*, No. 23-1158-CV, 2025 WL 706502 (2d Cir. Mar. 5, 2025). Ultimately,

a proposed intervenor need only show that they "might not be adequately represented" by existing parties. *In re N.Y.C. Policing*, 27 F.4th at 803. Courts are thus "liberal in finding" this requirement satisfied because "there is good reason in most cases to suppose that the applicant is the best judge of the representation of the applicant's own interests." 7C Charles Alan Wright & Arthur R. Miller, Federal Practice & Procedure § 1909 (3d ed. 2024). Here, Proposed Intervenors have distinct interests from the existing parties, all of which are governmental actors bound by federal and state laws governing their voter list maintenance activities. No existing parting adequately represents those distinct interests.

To start, DOJ naturally does not represent Proposed Intervenors' interests, as they seek to forcibly compel production of New York's unredacted state voter registration list. While the existing Defendants have, to date, resisted that demand, they too do not adequately represent Proposed Intervenors' specific interests. Federal courts have "often concluded that governmental entities do not adequately represent the interests of aspiring intervenors." *Fund for Animals, Inc. v. Norton*, 322 F.3d 728, 736 (D.C. Cir. 2003). This is because a government-official defendant's interests are "necessarily colored by [their] view of the public welfare rather than the more parochial views of a proposed intervenor whose interest is personal to it." *Kleissler v. U.S. Forest Serv.*, 157 F.3d 964, 972 (3d Cir. 1998) (explaining that the burden in these circumstances is "comparatively light"). Simply put, "the government's representation of the public interest may not be 'identical to the individual parochial interest' of a particular group just because 'both entities occupy the same posture in the litigation.'" *Citizens for Balanced Use v. Mont. Wilderness Ass'n*, 647 F.3d 893, 899 (9th Cir. 2011) (quoting *WildEarth Guardians v. U.S. Forest Serv.*, 573 F.3d 992, 996 (10th Cir. 2009); *see also Conservation L. Found. of New Eng., Inc. v. Mosbacher*, 966 F.2d 39, 44 (1st Cir. 1992) (explaining that "a governmental entity charged by law with

representing the public interest of its citizens" will not necessarily "advance the narrower interest of a private entity").

The Supreme Court recently emphasized this point, explaining that public officials must "bear in mind broader public-policy implications," whereas private litigants—like Proposed Intervenors—seek to vindicate their own rights "full stop." *Berger*, 597 U.S. at 195–96 (citing *Trbovich*, 404 U.S. at 538–39). Thus, the Supreme Court cautioned that courts should not conduct the adequacy of representation analysis at too "high [a] level of abstraction," and reaffirmed that, even where the parties' interests "seem[] closely aligned," the burden to demonstrate inadequate representation remains "minimal" unless those interests are "identical." *Id.* at 196 (citation omitted). In other words, even if New York continues to also oppose the relief that DOJ seeks at a high level of abstraction, it does not follow that they share "identical" interests to civic membership organizations committed to voter engagement and turnout. *See id.*[6]

Here, the existing Defendants and Proposed Intervenors do not share "identical" interests. For one, the existing Defendants are obliged to enforce the requirements of the NVRA and HAVA, in addition to various state laws governing maintenance of the voter registration list. Thus, by definition, they have an obligation to weigh and carry out public duties that Proposed Intervenors do not share. *See, e.g.*, *Bellitto v. Snipes*, No. 16-cv-61474, 2016 WL 5118568, at *2 (S.D. Fla. Sep. 21, 2016) (concluding adequate representation was not guaranteed where existing defendant was "an elected official" whose interpretation of the NVRA might not be aligned with intervenors' interests). Indeed, the NVRA specifically requires them to "balance competing objectives"— maintaining accurate and current voter rolls while promoting access to the ballot box—that do not

---

[6] It bears noting as DOJ alleges that in its August 29 letter, only the Democratic counsel for the state of New York opposed the relief that DOJ seeks here; "[t]he Republican counsel maintained that the entire list should be shared with the United States." Dkt. 1 ¶ 48.

pertain to the Proposed Intervenors or their interests. *Bellitto v. Snipes*, 935 F.3d 1192, 1201 (11th Cir. 2019). On top of that, the State Board of Elections is a bipartisan body, meaning it must balance the competing views of its various members. Both it and the State are also heavily reliant on federal dollars to administer elections, meaning they have a strong "interest in bringing [this] litigation to an end by settlement[]" with DOJ. *Brennan v. N.Y.C. Bd. of Educ.*, 260 F.3d 123, 133 (2d Cir. 2001). In view of those circumstances, adequate representation of Proposed Intervenors' interests is hardly "assured." *Id.* (explaining this factor is met where parties' interests are not "so similar" as to assure adequacy of representation). Simply put, Proposed Intervenors are not burdened with the existing Defendants' public duties and obligations to enforce the NVRA and HAVA—they are focused entirely on maintaining the privacy of their sensitive personal information and safeguarding the public's trust in Proposed Intervenors as facilitators of civic engagement in New York. *See* Ashton Decl. ¶¶ 10–11, 13; Williams Decl. ¶¶ 10–11, 13. As a result, they are well-positioned to press legal arguments that cannot be "equally asserted" by the existing parties given their public duties. *Does 1 Through 7*, 2023 WL 4532763, at *5.

At bottom, the government entities and public officials on both sides of the case do not stand in the same shoes as Proposed Intervenors and thus do not sufficiently represent their interests, which are directly impacted by the disposition of this matter.

## II. Proposed Intervenors should alternatively be granted permissive intervention.

This Court should alternatively exercise its discretion to grant permissive intervention. Rule 24(b) is readily satisfied: Proposed Intervenors assert a "defense that shares with the main action a common question of law or fact," and granting intervention would not "unduly delay or prejudice the adjudication" of the matter. Fed. R. Civ. P. 24(b). Proposed Intervenors have moved promptly, *see supra* Section I.A, and agree to abide by any schedule set by the Court or agreed to by the original parties, meaning there will be no delay or prejudice. And Proposed Intervenors'

defense requires resolution of the same factual and legal issues raised in the underlying lawsuit. *See* Ex. C (Proposed Answer).

The Second Circuit has also identified additional factors the Court can consider in weighing permissive intervention requests. *See Citizens Against Casino Gambling in Erie Cnty. v. Hogen*, 417 F. App'x 49, 50 (2d Cir. 2011) (citing *H.L. Hayden Co. of N.Y. v. Siemens Med. Sys., Inc.*, 797 F.2d 85, 89 (2d Cir. 1986)). Those considerations include the nature of the proposed intervenors' interests, the degree to which those interests are adequately represented by other parties, and whether the proposed intervenors are likely to contribute to the full development of the factual and legal issues in the case. *See id.* Each of those factors buttress the case for intervention here.[7]

First, Proposed Intervenors seek to defend important personal privacy interests, as well as interests unique to civic organizations. *See supra* Section I.B; *cf. U.S. Dep't of Just. v. Reps. Comm. for Freedom of Press*, 489 U.S. 749, 769 (1989) (recognizing the strong personal interest in maintaining privacy of personal information). Second, these parochial interests are not identical to the interests of the existing governmental defendants and may not be fully advanced absent their intervention. *See supra* Section I.C. Finally, the harms vulnerable voters face and the arguments that they advance will certainly contribute to the "full development of the underlying factual issues

---

[7] While these additional factors overlap with certain considerations under Rule 24(a)(2), it does not follow that permissive intervention must be denied if Rule 24(a)(2) is not satisfied. To the contrary, "district courts routinely grant permissive intervention to applicants even in cases where the court has found that the existing party adequately represents the proposed intervenor's interest." *New York v. Nat'l Sci. Found.*, No. 25 CIV.4452 (JPC), 2025 WL 1793858, at *5 (S.D.N.Y. June 30, 2025); *see also Hum. Servs. Council of New York v. City of New York*, No. 21 CIV. 11149 (PGG), 2022 WL 4585815, at *4 (S.D.N.Y. Sep. 29, 2022) (same and collecting cases); *Green v. Biden*, No. 24-CV-1975 (MKB), 2024 WL 4932751, at *7 (E.D.N.Y. Dec. 2, 2024) (similar and granting permissive intervention); *Louis Berger Grp., Inc. v. State Bank of India*, 802 F. Supp. 2d 482, 488–89 (S.D.N.Y. 2011) (granting permissive intervention despite finding that movant "cannot satisfy the impairment element of Rule 24(a)(2)").

in the suit and to the just and equitable adjudication of the legal questions presented." *H.L. Hayden*, 797 F.2d at 89 (citation omitted). Whereas the existing Defendants will have to present arguments in a manner consistent with their duties under the NVRA and HAVA, *see Bellitto*, 935 F.3d at 1201, Proposed Intervenors can present arguments guided solely by the interests of New Yorkers and civic organizations that will be harmed by DOJ's requested relief. *See supra* Section I.C. Proposed Intervenors therefore stand ready to "offer a unique, personal and highly relevant factual perspective to the law, its development, and its impact." *Ass'n of Conn. Lobbyists LLC v. Garfield*, 241 F.R.D. 100, 103 (D. Conn. 2007); *see also Christa McAuliffe Intermediate Sch. PTO, Inc. v. de Blasio*, No. 18 CIV. 11657 (ER), 2020 WL 1432213, at *8 n.9 (S.D.N.Y. Mar. 24, 2020) (explaining the "unique perspective" of people "directly impacted" by challenged action and organizations serving such people would "greatly contribute to the Court's understanding of the case" (citation omitted)); *Commack Self-Serv. Kosher Meats, Inc. v. Rubin*, 170 F.R.D. 93, 106 (E.D.N.Y. 1996) (similar).

It is for these reasons that courts routinely grant permissive intervention to civic organizations to ensure their voices and the voices of their members are heard when litigation implicates the rights and privacy of all voters, notwithstanding the presence of governmental defendants ostensibly charged with upholding broader conceptions of the public interest. *See, e.g.*, *1789 Found. Inc. v. Fontes*, No. CV-24-02987-PHX-SPL, 2025 WL 834919, at *4 (D. Ariz. Mar. 17, 2025) (permitting advocacy organizations to intervene as defendants); *Pub. Int. Legal Found., Inc. v. Winfrey*, 463 F. Supp. 3d 795, 802 (E.D. Mich. 2020) (permitting voting rights organizations to intervene as defendants).

Thus, in keeping with the "liberal standard[]" in favor of permissive intervention, *Lichtman*, 1990 WL 186856, at *1, and because Proposed Intervenors' participation will assist

rather than prejudice the efficient development and resolution of this matter, the Court should grant

permissive intervention if it does not find that Proposed Intervenors may intervene as of right.

## CONCLUSION

The Court should grant Proposed Intervenors' motion to intervene.


*Respectfully submitted,*
*/s/ Andrew G. Celli, Jr.*

Andrew G. Celli, Jr. (Bar No. 105255)
Katherine Rosenfeld (Bar No. 511795)
Daniel M. Eisenberg (Bar No. 706811)
**EMERY CELLI BRINCKERHOFF ABADY
WARD & MAAZEL LLP**
One Rockefeller Plaza, 8th Floor
New York, NY 10020
T: (212) 763-5000
F: (212) 763-5001
acelli@ecbawm.com
krosenfeld@ecbawm.com
deisenberg@ecbawm.com

Dated: October 1, 2025


Aria C. Branch*
Christopher D. Dodge*
Tina Meng Morrison*
Omeed Alerasool*
**ELIAS LAW GROUP LLP**
250 Massachusetts Ave. NW, Suite 400
Washington, DC 20001
T: (202) 968-4490
F: (202) 968-4498
abranch@elias.law
cdodge@elias.law
tmengmorrison@elias.law
oalerasool@elias.law

* Application *pro hac vice* and Motion for
Limited Admission forthcoming

*Counsel for Proposed Intervenors*

21