**IN THE UNITED STATES DISTRICT COURT FOR THE
NORTHERN DISTRICT OF NEW YORK**

UNITED STATES OF AMERICA,

     *Plaintiff*,

     v.

BOARD OF ELECTIONS OF THE STATE OF
NEW YORK, et al.,

     *Defendants*.

Case No. 1:25-cv-01338-MAD-PJE

**<u>PROPOSED INTERVENOR-DEFENDANT LEAGUE OF WOMEN VOTERS OF NEW
YORK STATE'S MEMORANDUM IN SUPPORT OF PROPOSED MOTION TO
DISMISS</u>**

## TABLE OF CONTENTS

INTRODUCTION ...........................................................................................................................1

BACKGROUND AND PROCEDURAL HISTORY .....................................................................4

    I.      Procedural History ..........................................................................................................4

           A.  June 2025: USDOJ invokes HAVA to get data ....................................................4

           B.  August 14, 2025: USDOJ cites new laws for its demand ......................................4

           C.  August 29, 2025: New York provides its public voter list, answers USDOJ's questions ...............................................................................................................5

           D.  Proceedings in this Court .....................................................................................7

    II.     Statutory Background .....................................................................................................8

           A.  CRA ......................................................................................................................8

           B.  NVRA ...................................................................................................................8

           C.  HAVA ................................................................................................................10

LEGAL STANDARD ...................................................................................................................11

ARGUMENT ................................................................................................................................11

    I.      Count I should be dismissed because the request for New York's unredacted voter registration list exceeds the Attorney General's authority under the Civil Rights Act.......................................................................................................12

    II.     Count II should be dismissed because the request for New York's unredacted voter list exceeds the Attorney General's authority under the NVRA ........................16

           A.  Defendants have already satisfied their duty under the NVRA ...........................16

              1.   Defendants complied with the NVRA's public-disclosure provision .............16

              2.   New York law prohibits Defendants from disclosing the requested records ...18

              3.   The NVRA's enforcement provision does not include power to demand records...........................................................................................................20

           B.  New York's unredacted statewide voter registration list is not necessary to determine New York's compliance with the NVRA's list-maintenance requirements.......................................................................................................22

III.    Count III should be dismissed because the request for New York's full voter list exceeds the Attorney General's authority to investigate under HAVA .......................23

CONCLUSION........................................................................................................................25

# TABLE OF AUTHORITIES

**Cases**                                                                                        **Pages**

*Allen v. Milligan,* 599 U.S. 1 (2023) ...............................................................................8

*Atlas Data Privacy Corp. v. We Inform, LLC*, No. 24-cv-4037, 2025 WL 2444153 (D.N.J. Aug. 25, 2025) ..................................................................................................................20

*Becker v. United States*, 451 U.S. 1306 (1981)...............................................................12

*Bell Atlantic Corp. v. Twombly*, 550 U.S. 544 (2007)....................................................11

*Bellitto v. Snipes*, 935 F.3d 1192 (11th Cir. 2019)..................................................10, 25

*Center for Taxpayer Rights v. Internal Revenue Service*, No. 1:25-cv-00457-CKK, 2025 WL 3251044 (D.D.C. Nov. 21, 2025)...........................................................3

*Common Cause/New York v. Brehm*, 432 F. Supp. 3d 285 (S.D.N.Y. 2020)................................22

*Consumer Financial Protection Bureau v. Accrediting Council for Independent Colleges and Schools*, 854 F.3d 683 (D.C. Cir. 2017) ................................................21

*Disabled in Action of Metropolitan New York v. Hammons*, 202 F.3d 110 (2d Cir. 2000) ...........20

*Fernandez v. State*, 43 Misc.3d 1221(A), 992 N.Y.S.2d 158 (Ct. Cl. 2014)..................................19

*Gonzalez v. Arizona*, 677 F.3d 383 (9th Cir. 2012)........................................................20

*Husted v. A. Philip Randolph Institute*, 584 U.S. 756 (2018) .......................................22

*In re Gordon*, 218 F. Supp. 826 (S.D. Miss. 1963) ................................................13, 15

*In re Tax Liabilities of John Does*, 688 F.2d 144 (2d Cir. 1982)...................................13

*Kennedy v. Lynd*, 306 F.2d 222 (5th Cir. 1962)..............................................12, 13, 14

*Matson v. Board of Education*, 631 F.3d 57 (2d Cir. 2011) .........................................11

*Matter of Seelig v. Sielaff*, 201 A.D.2d 298, 607 N.Y.S.2d 300 (1st Dept. 1994).........................19

*National Labor Relations Board v. American Medical Response, Inc.*, 438 F.3d 188 (2d Cir. 2006) ..............................................................................13

*Pennsylvania State Conference of NAACP Branches v. Secretary Commonwealth of Pennsylvania*, 97 F.4th 120 (3d Cir. 2024) ...........................................................8

*Project Vote, Inc. v. Kemp*, 208 F. Supp. 3d 1320 (N.D. Ga. 2016)...............................................17

*Project Vote/Voting for America, Inc. v. Long*, 682 F.3d 331 (4th Cir. 2012) ...................16, 17, 19

*Public Interest Legal Foundation, Inc. v. Bellows*, 92 F.4th 36 (1st Cir. 2024)............................18

*Public Interest Legal Foundation v. Benson*, 136 F.4th 613 (6th Cir. 2025) ................................22

*Public Interest Legal Foundation, Inc. v. North Carolina State Board of Elections*, 996 F.3d 257 (4th Cir. 2021) ................................................................16, 17, 19

*Roe v. St. John's University*, 91 F.4th 643 (2d Cir. 2024) ........................................11, 12

*Roth v. Jennings*, 489 F.3d 499 (2d Cir. 2007)................................................................11

*Samuels v. Air Transport Local 504*, 992 F.2d 12 (2d Cir. 1993) ........................................4

*State of Alabama ex rel. Gallion v. Rogers*, 187 F. Supp. 848 (M.D. Ala. 1960) ........................13

*True the Vote v. Hosemann*, 43 F. Supp. 3d 693 (S.D. Miss. 2014) ................................17

*United States v. Clarke*, 573 U.S. 248 (2014) ................................................................13

*United States v. Construction Productions Research, Inc.*, 73 F.3d 464 (2d Cir. 1996)...............21

*United States v. Gurley*, 235 F. Supp. 2d 797 (W.D. Tenn. 2002)................................21

*United States v. Missouri*, 535 F.3d 844 (8th Cir. 2008)................................22

*United States v. Powell*, 379 U.S. 48 (1964)................................................................12

*United States v. State of New York*, 3 F. Supp. 2d 298 (E.D.N.Y. 1998)................................20

*United States v. Will*, 671 F.2d 963 (6th Cir. 1982)................................................................12

*United States v. Xcel Energy, Inc.*, 759 F. Supp. 2d 1106 (D. Minn. 2010) ................................21

## Statutes, Codes, and Rules

5 U.S.C. § 552a ................................................................2

5 U.S.C. § 552a(b) ................................................................9

26 U.S.C. § 7604 ................................................................21

26 U.S.C. § 7609 ................................................................ 21

44 U.S.C. § 3506(c) ................................................................2

44 U.S.C. § 3507(a) ................................................................2

52 U.S.C. § 20501(b) ................................................................9

52 U.S.C. § 20503 ................................................................9

52 U.S.C. § 20507(a)(4)................................................................22, 24

52 U.S.C. § 20507(b) ........................................................................................................9

52 U.S.C. § 20507(d) ........................................................................................................2

52 U.S.C. § 20507(i) .........................................................................................................9

52 U.S.C. § 20507(i)(1) ..................................................................................................9, 16

52 U.S.C. § 20510(a) ...............................................................................................9, 20, 21

52 U.S.C. § 20510(b) ...................................................................................................9, 20

52 U.S.C. § 20701 .........................................................................................................8, 24

52 U.S.C. § 20703 ...................................................................................................8, 12, 24

52 U.S.C. § 21083(a)(1)(A) ..............................................................................................10

52 U.S.C. § 21083(a)(1)(A)(i) ......................................................................................10, 24

52 U.S.C. § 21083(a)(2)(A)(i) ...........................................................................................10

52 U.S.C. § 21083(a)(2)(A)(ii) ..........................................................................................10

52 U.S.C. § 21083(a)(2)(B)(iii) .........................................................................................10

52 U.S.C. § 21083(a)(5)(A) ...............................................................................................10

52 U.S.C. § 21111 ..............................................................................................................23

Fed. R. Civ. P. 12(b)(6) .....................................................................................................11

N.Y. Elec. Law § 3-220(1) ...........................................................................................17, 19

N.Y. Elec. Law § 5-210(5)(k)(v) .......................................................................................25

N.Y. Elec. Law § 5-508 ......................................................................................................19

N.Y. Pub. Off. Law § 96-a(2) ......................................................................................17, 19

Pub. L. No. 93-579, 88 Stat. 1896 (1974) ..........................................................................10

Pub. L. No. 103-322, 108 Stat 1796 (1994) ..........................................................................5

Pub. L. No. 107-252, 116 Stat. 1666 (2002) .......................................................................10

**Other Authorities**

*Basis*, Black's Law Dictionary (8th ed. 2004) ..................................................................13

Brief for the United States as Amicus Curiae, *Public Interest Legal Foundation, Inc. v. Bellows*, No. 23-1361, 2023 WL 4882397 (1st Cir. July 25, 2023) ..................................................18, 19

Daniel M. Berman, *A Bill Becomes a Law: Congress Enacts Civil Rights Legislation* (2d ed. 1966) ................................................................................................................................8

Emily Bazelon & Rachel Poser, *The Unraveling of the Justice Department*, New York Times Magazine (Nov. 16, 2025), https://www.nytimes.com/interactive/2025/11/16/magazine/trump-justice-department-staff-attorneys.html..............................................................................................................................2

Hamed Aleaziz, *Immigration Agents Are Using Air Passenger Data for Deportation Effort*, New York Times (Dec. 12, 2025), https://www.nytimes.com/2025/12/12/us/politics/immigration-tsa-passenger-data.html...............................................................................................................3

Jonathan Shorman, *DOJ is sharing state voter roll lists with Homeland Security*, Colorado Newsline (Sep. 15, 2025), https://coloradonewsline.com/2025/09/15/repub/doj-voter-roll-homeland-security/.................................................................................................................3

Jonathan Shorman, *Trumps's DOJ Offers States Confidential Deal to Remove Voters Flagged by Feds*, Stateline (Dec. 18, 2025), https://stateline.org/2025/12/18/trumps-doj-offers-states-confidential-deal-to-wipe-voters-flagged-by-feds-as-ineligible/.................................................1

Jude Joffe-Block, *Trump's SAVE tool is looking for noncitizen voters. But it's flagging U.S. citizens too*, NPR (Dec. 10, 2025), https://perma.cc/7DDE-T9ZV ...........................................3

Kaylie Martinez-Ochoa et al., *Tracker of Justice Department Requests for Voter Information*, Brennan Ctr. (updated Dec. 19, 2025), https://www.brennancenter.org/our-work/research-reports/tracker-justice-department-requests-voter-information ...............................................15

Letter from Harmeet K. Dhillon to the Honorable Chuck Gray (Aug. 14, 2025), https://www.brennancenter.org/media/14549/download/wyoming_08.14.2025_doj-letter_0.pdf?inline=1 .........................................................................................................15

Press Release, Office of Public Affairs, U.S. Department of Justice, Justice Department Sues Four Additional States and One Locality for Failure to Comply with Federal Elections Laws (Dec. 12, 2025), https://perma.cc/2N9T-YASF........................................................................2

Press Release, Office of Public Affairs, U.S. Department of Justice, Justice Department Sues Six Additional States for Failure to Provide Voter Registration Rolls (Dec. 2, 2025), https://perma.cc/QEU3-G4FF......................................................................................................7

Proposed "Confidential Memorandum of Understanding" (MOU) sent to Colorado, https://www.documentcloud.org/documents/26330926-vrldata-sharing-agreement-doj-co/ 1, 2

*Purpose*, Black's Law Dictionary (8th ed. 2004) ........................................................................13

Report of U.S. Commission on Civil Rights 1963 (1963)...............................................8

*The National Voter Registration Act of 1993 (NVRA)*, U.S. Department of Justice, (updated Nov. 1, 2024), https://perma.cc/JZP2-CLRA ....................................................................15

## INTRODUCTION

Plaintiff the United States is engaged in an unprecedented effort to collect voters' sensitive data from almost every state in the country. New York is one of 21 states, plus the District of Columbia, that Plaintiff has sued over their refusals to produce unredacted voter rolls, including driver's license numbers and social security numbers. In this case, Plaintiff cites three statutes in support of its demand—the National Voter Registration Act (NVRA), the Help America Vote Act (HAVA), and Title III of the Civil Rights Act of 1960 (CRA)—but none authorizes Plaintiff to compel New York to produce its unredacted voter file. The Attorney General did not satisfy the requirement to provide both the basis and the purpose of her request for this data under the CRA, instead relying entirely on a purported desire to ensure New York's compliance with the NVRA and HAVA. But a single snapshot of the unredacted voter file, in addition to the information New York has already provided, cannot be used to determine the state's compliance with those statutes, demonstrating that the Attorney General's purported basis and purpose are insufficient.

Plaintiff's plans for this sensitive data appear nowhere in the Complaint, but have emerged from other sources, including a proposed Memorandum of Understanding (MOU) the Justice Department asked Colorado, and reportedly other states, to sign. *See* Proposed "Confidential Memorandum of Understanding" (MOU) sent to Colorado at 5, https://www.documentcloud.org/documents/26330926-vrldata-sharing-agreement-doj-co/; *see also* Jonathan Shorman, *Trump's DOJ Offers States Confidential Deal to Remove Voters Flagged by Feds*, Stateline (Dec. 18, 2025), https://stateline.org/2025/12/18/trumps-doj-offers-states-confidential-deal-to-wipe-voters-flagged-by-feds-as-ineligible/. The MOU describes USDOJ's attempted takeover of states' exclusive authority to maintain their voter rolls and determine who should be removed from the rolls due to ineligibility. It provides that USDOJ will conduct an

"analysis and assessment" of the state's voter rolls and instruct the state to remove voters USDOJ identifies.[2] MOU at 5. In announcing lawsuits against four more states earlier this month, USDOJ confirmed its goal was not to review list maintenance procedures, but to expand federal control over elections and target voters for removal, stating: "At this Department of Justice, we will not permit states to jeopardize the integrity and effectiveness of elections by refusing to abide by our federal elections laws. If states will not fulfill their duty to protect the integrity of the ballot, we will."[3] This federal takeover of list maintenance would run contrary to the Constitutional and the statutory frameworks for elections, which provide that Congress and the states make the law, and state and local governments run elections, including registering voters and maintaining voter rolls.[4]

Other purposes for the vast data-collection exercise Plaintiff is undertaking apparently have nothing to do with the statutes relied upon in the Complaint. According to one USDOJ lawyer, Civil Rights Division leadership demanded that USDOJ obtain "states' voter rolls, by suing them if necessary" to "go through all the data and compare it to the Department of Homeland Security data and Social Security data" and search for "immigrants that have registered to vote" even though "[t]here was no pre-existing evidence" that unlawful immigrant voting is a problem.[5] Emily Bazelon & Rachel Poser, *The Unraveling of the Justice Department*, N.Y. Times Mag. (Nov. 16,

---

[2] The MOU provides that removals must take place within 45 days of notification from USDOJ, which—for any voters flagged for removal based on having moved—would violate Section 8(d) of the NVRA. 52 U.S.C. § 20507(d).

[3] Press Release, Off. of Pub. Affs., U.S. Dep't of Just., Justice Department Sues Four Additional States and One Locality for Failure to Comply with Federal Elections Laws (Dec. 12, 2025), https://perma.cc/2N9T-YASF.

[4] Further, the proposed MOU does not limit USDOJ's ability to use states' data and expressly permits USDOJ to provide the data to contractors. MOU at 6-7.

[5] To the extent that USDOJ is not engaging in an investigation, as it purports to be doing to ensure compliance with the NVRA and HAVA, and is instead engaging in data collection for any other purpose, USDOJ must comply with the Paperwork Reduction Act, *see* 44 U.S.C. §§ 3506(c), 3507(a), and the Privacy Act, *see* 5 U.S.C. § 552a.

2025), https://www.nytimes.com/interactive/2025/11/16/magazine/trump-justice-department-staff-attorneys.html. Moreover, Plaintiff's demands for private voter data persist despite reports that efforts to use the data for voter verification have resulted in erroneous removals of eligible U.S. citizens from state voter rolls. Jude Joffe-Block, *Trump's SAVE tool is looking for noncitizen voters. But it's flagging U.S. citizens too*, NPR (Dec. 10, 2025), https://perma.cc/7DDE-T9ZV. The Department of Homeland Security confirmed that it is receiving information from USDOJ, and the information exchange is being done "to scrub aliens from voter rolls."[6] And Plaintiff's efforts in this case, and the 21 similar cases against other states and Washington, D.C., are part of a larger program of the federal government to gather and use vast swaths of data, notwithstanding laws to the contrary. *See Ctr. for Taxpayer Rts. v. Internal Revenue Serv.*, No. 1:25-cv-00457-CKK, 2025 WL 3251044, at *2 (D.D.C. Nov. 21, 2025); *see also* Hamed Aleaziz, *Immigration Agents Are Using Air Passenger Data for Deportation Effort*, N.Y. Times (Dec. 12, 2025), https://www.nytimes.com/2025/12/12/us/politics/immigration-tsa-passenger-data.html.

The NVRA, HAVA, and the CRA do not entitle the Attorney General to an unredacted version of New York's voter registration list. And regardless of her actual goals, the Attorney General's only stated purpose for seeking the unredacted list is to ensure compliance with the NVRA and HAVA, for which the driver's license numbers, other DMV identifiers, and partial social security numbers of every New York voter are not necessary. As such, Plaintiff has failed to state a claim under the CRA, NVRA, or HAVA, and the Court must dismiss the Complaint.

---

[6] Jonathan Shorman, *DOJ is sharing state voter roll lists with Homeland Security*, Colorado Newsline (Sep. 15, 2025), https://coloradonewsline.com/2025/09/15/repub/doj-voter-roll-homeland-security/.

## BACKGROUND AND PROCEDURAL HISTORY

**I.    Procedural History**

During the summer of 2025, USDOJ sent two letters to Defendants Kristen Zebrowski Stavisky and Raymond Riley, III, Co-Executive Directors of the New York State Board of Elections (NYSBOE or Board), demanding various types of data about New York voters and elections. New York responded to USDOJ, ultimately providing a copy of the entire state voter file, redacting only a few fields of sensitive information, and answering USDOJ's questions. Plaintiff nonetheless filed suit on September 25, 2025.

**A.    June 2025: USDOJ invokes HAVA to get data.**

On June 30, 2025, USDOJ sent a letter to Defendants Zebrowski Stavisky and Riley requesting information related to New York's compliance with HAVA, including specific questions. *See* Ex. A, June 30, 2025 Letter; Compl. ¶¶ 42-43.[7] Toward the end of the letter, USDOJ requested "New York's current statewide voter registration list. Please include both active and inactive voters." Ex. A, June 30, 2025 Letter at 2. USDOJ's request for the statewide voter registration list referenced no legal authority, nor did the June 30 letter describe any potential deficiencies in New York's HAVA compliance. *Id.* And nothing in the June 30 letter referenced the CRA. On July 24, 2025, New York responded, noting that it anticipated responding to USDOJ's request by the end of August. *See* Compl. ¶ 44.

**B.    August 14, 2025: USDOJ cites new laws for its demand.**

On August 14, USDOJ sent another letter to Zebrowski Stavisky and Riley demanding

---

[7] The Court may consider these letters in evaluating the Proposed Motion to Dismiss because USDOJ references the letters in its Complaint. In considering a motion to dismiss, the Court may consider "the facts alleged in the pleadings, documents attached as exhibits or incorporated by reference in the pleadings and matters of which judicial notice may be taken." *Samuels v. Air Transport Local 504*, 992 F.2d 12, 15 (2d Cir. 1993).

access to "an electronic copy of [New York's computerized statewide] voter registration list" with all fields, including each "[each registrant's] state driver's license number, and the last four digits of [their] social security number." *See* Ex. B, August 14, 2025 Letter at 1. As in the June letter, USDOJ said that it requested the voter registration list to assess compliance with HAVA. But for the first time, the August 14 letter referred to the NVRA and CRA, stating that "Section 301 of the CRA requires state and local officials to retain and preserve records . . ." and that Section 303 provides that any paper retained "shall, upon demand in writing by the Attorney General or his representative . . . be made available for inspection, reproduction, and copying[.]" USDOJ stated "[t]he purpose of the [CRA] request is to ascertain New York's compliance with the list maintenance requirements of the NVRA and HAVA." Ex. B, Aug. 14, 2025 Letter at 2.

USDOJ further explained that it believed that disclosure of the last four digits of social security numbers would not violate the Privacy Act and that disclosure of driver's license numbers would not violate the "Driver's License Protection Act."[8] Ex. B, Aug. 14, 2025 Letter at 2-3. USDOJ's August 14 letter was a facsimile of other letters it sent to other states on the same day. *Compare* Ex. B, Aug. 14, 2025 Letter *with* USDOJ Aug. 14, 2025 Letter to Mich. Sec'y of State, *United States v. Benson*, No. 1:25-cv-01148 (W.D. Mich. filed Nov. 26, 2025), ECF No. 39-4.

### C. August 29, 2025: New York provides its public voter list, answers USDOJ's questions.

On August 29, 2025, the NYSBOE responded. Ex. C, Aug. 29, 2025 Letter. The letter sent on behalf of the Board as a whole answers USDOJ's 14 HAVA inquiries, including the ways in which New York complies with Section 303 of HAVA, the process by which each voter is assigned a unique identifier, and how New York, through local boards of elections, removes duplicate

---

[8] While there is no federal statute called the Driver's License Protection Act, USDOJ likely intended to refer to the Driver's Privacy Protection Act of 1994. *See* Pub. L. No. 103-322, § 300001, 108 Stat 1796 (1994).

registrations and other ineligible voters. Ex. C, Aug. 29, 2025 Letter at 1-4.

The NYSBOE as a whole did not respond to USDOJ's demand for New York's current statewide voter registration list. Ex. C, Aug. 29, 2025 Letter at 4. Rather, counsel for the Democratic commissioners and Republican commissioners, respectively, wrote separately to outline their positions. The Democratic commissioners stated that, under New York law, they were unable to disclose portions of social security numbers or identification numbers from the DMV. Ex. D, Dec. Comm. Aug. 29, 2025 Letter at 1. They explained how USDOJ could order a copy of New York's public statewide voter registration list and noted that the authority USDOJ cited in its letters did not require production of the unredacted voter file. Ex. D, Dem. Comm. Aug. 29, 2025 Letter at 1-2. Furthermore, the Democratic commissioners pointed out that federal law may also limit such disclosure, and that USDOJ "has never before amalgamated unredacted voter files across multiple states." Ex. C, Dem. Comm. Aug. 29, 2025 Letter at 2.

The Republican commissioners, in their response, indicated "that the information requested relating to the statewide voter registration list can and should be provided in its entirety, with an understanding that all personal identifying information contained within any version of this list be protected from public disclosure under all relevant provisions of both New York State and federal law." Ex. E, Rep. Comm. Aug. 29, 2025 Letter at 1. The Republican commissioners did not cite the CRA in support of their position, but said instead stated that USDOJ had, in their view, "inherent authority" to demand the unredacted list as part of its enforcement authority under HAVA and the NVRA. Ex. E, Rep. Comm. Aug. 29, 2025 Letter at 1. While the Republican commissioners acknowledged that New York law prohibits disclosure of social security numbers or DMV identifiers, they suggested without citation that the relevant provision of state law did not apply to either partial social security numbers or requests by USDOJ. The Republican

commissioners also directed USDOJ to where they might obtain the public voter file. Ex. E, Rep. Comm. Aug. 29, 2025 Letter at 1-2.

### D.  Proceedings in this Court

Despite NYSBOE's fulsome responses to USDOJ's inquiries, Plaintiff filed suit on September 25, 2025, alleging violations of the CRA, NVRA, and HAVA. ECF No. 1. This was one of six near-identical suits Plaintiff filed on September 25.[9] The Complaint demands a voter registration list that includes "all fields, including each registrant's full name, date of birth, residential address, their state driver's license number, and the last four digits of their Social Security number." Compl. at 17-18. As New York has already directed USDOJ to where it may obtain a voter registration list that includes full names, residential addresses, and birth years, the only data that the Attorney General seeks through this litigation are New York voters' driver's license numbers, months and days of birth, and partial social security numbers.

Proposed Intervenor-Defendants the National Association for the Advancement of Colored People and the NAACP New York State Conference (collectively, the NAACP Intervenors) moved to intervene in this litigation on October 1. ECF No. 7. On October 7, the Court stayed proceedings in the case due to a lapse of appropriations. ECF No. 11. On October 24, Proposed Intervenor-Defendant the League of Women Voters of New York State (LWVNYS) moved to intervene. ECF No. 20. On December 10, Plaintiff informed the Court that Plaintiff and Defendants had concurred on a briefing schedule, which the Court subsequently adopted. ECF Nos. 66, 68. In the same filing, Plaintiff informed the Court it no longer opposed the pending motions to intervene. ECF No. 66.

---

[9] Press Release, Off. of Pub. Affs., U.S. Dep't of Just., *Justice Department Sues Six Additional States for Failure to Provide Voter Registration Rolls* (Dec. 2, 2025), https://perma.cc/QEU3-G4FF.

## II.    Statutory Background

### A.  CRA

The Civil Rights Act of 1960 was "designed to protect access to the ballot in jurisdictions with patterns or practices of denying [voting] access based on race." *Allen v. Milligan*, 599 U.S. 1, 47 (2023). Prior to the CRA, some states engaged in a variety of techniques to prevent eligible Black voters from voting. "One of the many techniques used to keep Black voters from the polls was to reject would-be registrants for insignificant, hyper-technical errors in filling out application forms." *Pa. State Conf. of NAACP Branches v. Sec'y Commonwealth of Pa.*, 97 F.4th 120, 126 (3d Cir. 2024). These efforts included rejecting "applicants for failing to calculate [their] age to the day" and "underlining Mr. when it should have been circled." *Id.* (citation modified). During this time "some southern officials, in order to hamper investigations by the Department of Justice and the Civil Rights Commission, had been destroying or impounding voting and registration records." Daniel M. Berman, *A Bill Becomes a Law: Congress Enacts Civil Rights Legislation* 9 (2d ed. 1966); *see also* Report of U.S. Comm'n on Civil Rights 1963, at 16 (1963).

In response to these types of widespread voter suppression methods, Congress enacted the CRA. Section 301 of the CRA requires state and local officials to retain and preserve records related to voter registration and other acts requisite to voting for any federal office for a period of twenty-two months after any federal general, special, or primary election. 52 U.S.C. § 20701. Section 303 requires that a state must make any of these retained records available for inspection by the Attorney General "upon [a] demand in writing by the Attorney General" that contains "a statement of the basis and the purpose therefor." 52 U.S.C. § 20703.

### B.  NVRA

Congress passed the NVRA in 1993 to establish "procedures that will increase the number

of eligible citizens who register to vote in elections for Federal office," making "it possible for Federal, State, and local governments to implement this [Act] in a manner that enhances the participation of eligible citizens as voters in elections for Federal office," protecting "the integrity of the electoral process," and ensuring "that accurate and current voter registration rolls are maintained." 52 U.S.C. § 20501(b).

Each section of the NVRA works to balance these objectives. For instance, the NVRA requires states to allow eligible voters to register to vote through at least three methods: when applying for or renewing a driver's license, by mail, or in person at designated locations. 52 U.S.C. § 20503. The NVRA also empowers the United States Attorney General to bring civil actions to enforce the Act, 52 U.S.C. § 20510(a), and empowers individuals aggrieved by violations of the Act to sue, subject to certain procedural requirements, *id.* § 20510(b).

Section 8 of the NVRA regulates the way that states update and maintain their voter registration lists and provides a disclosure mechanism by which any party may seek information regarding those lists. 52 U.S.C. § 20507(b). Section 8 requires States to "conduct a general program that makes a reasonable effort to remove the names of ineligible voters from the official lists of eligible voters by reason of . . . a change in the residence of the registrant." 52 U.S.C. § 20507(a)(4). Section 8 also requires "[p]ublic disclosure of voter registration activities." 52 U.S.C. § 20507(i). Specifically, each state must maintain "all records concerning the implementation of programs and activities conducted for the purpose of ensuring the accuracy and currency of official lists of eligible voters" for at least two years. *Id.* § 20507(i)(1).

Congress enacted the NVRA's public-disclosure provision after the Privacy Act of 1974, which prevents intra-governmental data sharing, with a limited number of exceptions. 5 U.S.C. § 552a(b) ("No agency shall disclose any record which is contained in a system of records by any

9

means of communication to any person, or to another agency, except pursuant to a written request by, or with the prior written consent of, the individual to whom the record pertains," unless a limited number of exceptions apply). Congress implemented this limitation on data sharing in recognition that "the right to privacy is a personal and fundamental right protected by the Constitution of the United States" and "the privacy of an individual is directly affected by the collection, maintenance, use, and dissemination of personal information by Federal agencies." Pub. L. No. 93-579, § 2, 88 Stat. 1896 (1974).

### C. HAVA

Against the backdrop of the NVRA and the Privacy Act, and following the 2000 general election, Congress enacted HAVA in 2002. Pub. L. No. 107-252, 116 Stat. 1666 (2002) (52 U.S.C. § 20901-21145). HAVA requires that each state maintains "a single, uniform, official, centralized, interactive computerized statewide voter registration list," which "shall serve as the single system for storing and managing the official list of registered voters throughout the State." 52 U.S.C. § 21083(a)(1)(A), (a)(1)(A)(i). HAVA charges states with "conducting a general program of list maintenance that makes a reasonable effort to remove voters who become ineligible because of a change of address [or death]." *Bellitto v. Snipes*, 935 F.3d 1192, 1203 (11th Cir. 2019); *see also* 52 U.S.C. § 21083(a)(2)(A)(ii). HAVA also requires states to ensure that "duplicate names are eliminated from the computerized list" and requires states to collect certain information from registrants such as a driver's license number or the last four digits of a social security number. 52 U.S.C. § 21083(a)(2)(B)(iii) and (a)(5)(A). While the statute repeatedly refers to other provisions of the NVRA, *see, e.g.*, 52 U.S.C. § 21083(a)(2)(A)(i), it neither contains nor incorporates a disclosure provision of any kind.

10

**LEGAL STANDARD**

A court may dismiss a claim for "failure to state a claim upon which relief can be granted" under Rule 12(b)(6) of the Federal Rules of the Civil Procedure. Fed. R. Civ. P. 12(b)(6). To survive a motion to dismiss under Rule 12(b)(6), the complaint must present "enough facts to state a claim to relief that is plausible on its face." *Bell Atl. Corp. v. Twombly*, 550 U.S. 544, 547, 570 (2007). "A claim is plausible 'when the plaintiff pleads factual content that allows the court to draw the reasonable inference that the defendant is liable for the misconduct alleged.'" *Matson v. Bd. of Educ.*, 631 F.3d 57, 63 (2d Cir. 2011) (quoting *Ashcroft v. Iqbal*, 556 U.S. 662, 678 (2009)). While "factual allegations contained in the complaint are assumed to be true, this rule does not extend 'to legal conclusions. Threadbare recitals of the elements of a cause of action, supported by mere conclusory statements, do not suffice.'" *Roe v. St. John's Univ.*, 91 F.4th 643, 651 (2d Cir. 2024) (quoting *Iqbal*, 556 U.S. at 678). Although the court can consider only facts alleged in the complaint in considering a motion to dismiss, "[i]n certain circumstances, the court may permissibly consider documents other than the complaint in ruling on a motion under Rule 12(b)(6)," without converting the motion to dismiss to one for summary judgment. *Roth v. Jennings*, 489 F.3d 499, 509 (2d Cir. 2007). "Documents that are attached to the complaint or incorporated in it by reference are deemed part of the pleading and may be considered." *Id.*

**ARGUMENT**

Plaintiff's Complaint fails to state any claim for relief because it does not include the requisite law or facts to establish that Plaintiff is entitled to the sole form of relief it seeks: production of New York voters' private data, including data about LWVNYS's members. In Count I, Plaintiff fails to allege the requisite basis and purpose to invoke the CRA, because the allegations do not explain how New York's unredacted voter file containing driver's license numbers, other

11

DMV identifiers, and partial social security numbers are needed to evaluate compliance with the list-maintenance provisions of the NVRA or HAVA. Counts II and III fail to state a claim because the plain language of the NVRA and HAVA do not entitle USDOJ to New Yorkers' protected voter registration data.[10] Moreover, New York State privacy statutes prevent such disclosure.

## I.    Count I should be dismissed because the request for New York's unredacted voter registration list exceeds the Attorney General's authority under the Civil Rights Act.

This Court should dismiss Count I of the Complaint because Plaintiff fails to state a claim for records under the CRA. The Complaint is devoid of factual allegations that explain how driver's license numbers, months and days of birth, and social security numbers will help serve the Attorney General's purported goal: to determine New York's compliance with the list-maintenance processes outlined in the NVRA and HAVA. *See St. John's Univ.*, 91 F.4th at 651; *see also infra* Argument II(B), III.

Section 303 of the CRA requires the Attorney General to provide "a statement of the basis and the purpose" for records she demands. 52 U.S.C. § 20703. While the statute does not provide a definition of basis, the plain language suggests that "basis" is the statement describing the Attorney General's belief that federal civil rights law has been violated, and the statement of "purpose" must explain how the requested record would help determine if a violation occurred.[11]

---

[10] The 14 cases that Plaintiff has filed against states since December 1, 2025 are based on similar facts but invoke only the CRA, demonstrating the weakness of Plaintiff's NVRA and HAVA claims in this case.

[11] Although *Kennedy v. Lynd*, 306 F.2d 222 (5th Cir. 1962) properly recognizes that a statement of the basis and the purpose is required by the language of the CRA, the case's discussion of the proper procedure to enforce such a demand is not binding on this Court. Moreover, *Lynd* is the product of a different era, shortly after the enactment of the CRA. *See* Background II(C). In the intervening 60 years, the Supreme Court has clarified that normal procedure attaches when a federal agency seeks to use the Courts to compel the production of records. *See Becker v. United States*, 451 U.S. 1306, 1308 (1981); *United States v. Powell*, 379 U.S. 48, 57-58 (1964); *see also, e.g.*, *United States v. Will*, 671 F.2d 963, 966 (6th Cir. 1982) (summons recipient permitted to rebut government's prima facie case).

*See Basis*, Black's Law Dictionary 161 (8th ed. 2004) ("an underlying condition"); *Purpose*, Black's Law Dictionary 161 (8th ed. 2004) ("An objective, goal, or end").

The basis and purpose requirements of the CRA are safeguards, so that the statute cannot be used as a tool to obtain records for unrelated reasons, or for no reason at all. For example, the United States could not use the CRA to obtain voting records because it wanted to verify taxpayer addresses. *Cf. State of Ala. ex rel. Gallion v. Rogers*, 187 F. Supp. 848, 853 (M.D. Ala. 1960) ("Title III provides—if properly applied and enforced—an effective means whereby preliminary investigations of registration practices can be made in order to determine whether or not such practices conform to constitutional principles."), *aff'd sub nom. Dinkens v. Att'y Gen. of U.S.*, 285 F.2d 430 (5th Cir. 1961); *see also In re Gordon*, 218 F. Supp. 826, 827 (S.D. Miss. 1963) ("[T]his Act merely provides for a limited exploration and discovery as to the validity of the election processes employed and pursued in such Federal elections after May 6, 1960."). Even *Lynd* recognized that under the CRA, a court "exercises judicial judgment. It does not confer or withhold a favor.'" *Lynd*, 306 F.2d at 225 (quoting *Tutun v. United States*, 270 U.S. 568, 578 (1926)).

These safeguards also accord with those applied in analogous situations. In the related context of administrative subpoenas, courts have found that the test of judicial enforcement of an administrative subpoena includes an evaluation of whether the investigation is "conducted pursuant to a legitimate purpose." *Nat'l Lab. Rels. Bd. v. Am. Med. Response, Inc.*, 438 F.3d 188, 192 (2d Cir. 2006). And in the IRS summons context, the Second Circuit has laid out criteria the Government must establish to obtain judicial enforcement, including "legitimate purpose," "relevan[ce] to that purpose," and that the Government followed the requisite process. *In re Tax Liabilities of John Does*, 688 F.2d 144, 147-48 (2d Cir. 1982) (citations and footnotes omitted); *see also United States v. Clarke*, 573 U.S. 248, 254 (2014) (taxpayer entitled to examine IRS agent

13

upon showing of an inference of bad faith.)

Here, Plaintiff's Complaint fails to plausibly establish that the Attorney General has provided the necessary statement of the basis and the purpose for her demand. The Complaint merely states that the USDOJ's "August 14 Letter informed the NYS Board of Elections that the Attorney General was making a demand for election records pursuant to the CRA, as authorized." Compl. ¶ 54. The Complaint, like USDOJ's letters to the NYSBOE, therefore fails to provide any "basis" for why the Attorney General believes that New York has not complied with the list-maintenance requirements of the NVRA and HAVA. Providing that basis is especially important here, where most voter registration data is already publicly available to the Attorney General.

Further, nowhere in the Complaint does the Attorney General explain the "purpose" of seeking the unredacted information here—*i.e.*, why driver's license numbers, months and days of birth, and partial social security numbers are necessary for the Attorney General to determine compliance with the NVRA and HAVA's list-maintenance requirements. In fact, as explained, *see infra* Background II(C) & Argument II(B) and III, driver's license numbers, months and days of birth, and partial social security numbers are *not* necessary for that analysis. Plaintiff's allegation thus falls short of the standard set in *Lynd*. *See* 306 F.2d at 228.

Plaintiff's failure to provide the required basis and purpose is unsurprising, because its purpose is plainly not to evaluate compliance with the list-maintenance provisions of the NVRA or HAVA, but to sweep up sensitive data of tens of millions of voters that can be used for any number of undisclosed and opaque purposes. In stark contrast to previous, targeted demands under the CRA, USDOJ has made the same request for sensitive voter data to at least 40 states and Washington, D.C., and thus far sued 21 other states, Washington, D.C., and two counties that have

14

failed to immediately comply with its full demands.[12] It has even demanded Wyoming's unredacted file under the NVRA, even though Wyoming is exempt from the NVRA.[13] Nor has USDOJ attempted to show that it believes all 40 states and Washington, D.C. are violating the NVRA's and HAVA's list-maintenance provisions, demonstrating that USDOJ improperly seeks to use the CRA as an unlimited tool to compile and consolidate voter data, rather than to protect the right to vote. *See In re Gordon*, 218 F. Supp. at 827 ("[T]his Act merely provides for a limited exploration and discovery as to the validity of the election processes employed and pursued in such Federal elections after May 6, 1960.").

---

[12] Kaylie Martinez-Ochoa et al., *Tracker of Justice Department Requests for Voter Information*, Brennan Ctr. (updated Dec. 19, 2025), https://www.brennancenter.org/our-work/research-reports/tracker-justice-department-requests-voter-information; *United States v. Oregon*, No. 6:25-cv-01666 (D. Or. filed Sep. 16, 2025); *United States v. Benson*, No. 1:25-cv-01148 (W.D. Mich. filed Sep. 25, 2025); *United States v. Weber*, No. 2:25-cv-09149 (C.D. Cal. filed Sep. 25, 2025); *United States v. Simon*, No. 0:25-cv-03761 (D. Minn. filed Sep. 25, 2025); *United States v. Scanlan*, No. 1:25-cv-00371 (D.N.H. filed Sep. 25, 2025); *United States v. Pennsylvania*, No. 2:25-cv-01481 (W.D. Pa. filed Sep. 25, 2025); *United States v. Page*, No. 8:25-cv-01370 (C.D. Cal. filed June 25, 2025); *United States v. Bd. of Elections of the State of New York*, No. 1:25-cv-01338 (N.D.N.Y. filed Sep. 25, 2025); *United States v. Demarinis*, No. 1:25-cv-03934 (D. Md. filed Dec. 1, 2025); *United States v. Copeland Hanzas*, No. 2:25-cv-00903 (D. Vt. filed Dec. 1, 2025); *United States v. Albence*, No. 1:25-cv-01453 (D. Del. filed Dec. 2, 2025); *United States v. Toulouse Oliver*, No. 1:25-cv-01193 (D.N.M. filed Dec. 2, 2025); *United States v. Amore*, No. 1:25-cv-639 (D.R.I. filed Dec. 2, 2025); *United States v. Hobbs*, No. 3:25-cv-06078 (W.D. Wash. filed Dec. 2, 2025); *United States v. Nago*, 1:25-cv-00522 (D. Haw. filed Dec. 11, 2025); *United States v. Griswold*, 1:25-cv-03967 (D. Colo. filed Dec. 11, 2025); *United States v. Alexander*, No. 1:25-cv-07084 (N.D. Ga. filed Dec. 11, 2025); *United States v. Galvin*, No. 1:25-cv-13816 (D. Mass. filed Dec. 11, 2025); *United States v. Aguilar*, No. 3:25-cv-00728 (D. Nev. filed Dec. 11, 2025); *United States v. Raffensperger*, No. 5:25-cv-00548 (M.D. Ga. filed Dec. 18, 2025); *United States v. Matthews*, No. 3:25-cv-03398 (C.D. Ill. filed Dec. 18, 2025); *United States v. Wisconsin Election Commission*, No. 3:25-cv-01036 (W.D. Wis. filed Dec. 18, 2025); *United States v. Evans*, No. 1:25-cv-04403 (D.D.C. filed Dec. 18, 2025).

[13] Letter from Harmeet K. Dhillon to the Hon. Chuck Gray (Aug. 14, 2025), https://www.brennancenter.org/media/14549/download/wyoming_08.14.2025_doj-letter_0.pdf?inline=1 ("We have requested Wyoming's VRL to assess your state's compliance with the statewide VRL maintenance provisions of the National Voter Registration Act ('NVRA'), 52 U.S.C. § 20501, *et seq*."); *but see The National Voter Registration Act of 1993 (NVRA)*, U.S. Dep't of Just. (updated Nov. 1, 2024), https://perma.cc/JZP2-CLRA .

## II.    Count II should be dismissed because the request for New York's unredacted voter list exceeds the Attorney General's authority under the NVRA.

The Complaint fails to state a claim under the NVRA because Defendants have already satisfied their statutory obligations under the NVRA's public disclosure provision and because the requested information is not necessary to enforce the NVRA's list-maintenance provision. As such, Count II should be dismissed.

### A.    Defendants have already satisfied their duty under the NVRA.

By providing the public voter registration list, Defendants[14] have already fulfilled their obligation under the NVRA's public-disclosure provision, the basis of Plaintiff's Count II. Compl. ¶ 61. The NVRA does not require the disclosure of driver's license numbers, months and days of birth, and social security numbers. Moreover, New York's voter protection laws prevent disclosure of the personally identifying information at issue, and the NVRA does not preempt those laws.

#### 1.    Defendants complied with the NVRA's public-disclosure provision.

Plaintiff has failed to assert a cognizable claim for relief under the NVRA's public-disclosure provision. The NVRA requires states to allow public inspection of "all records concerning the implementation of programs and activities conducted for the purpose of ensuring the accuracy and currency of official lists of eligible voters[.]" 52 U.S.C. § 20507(i)(1). Courts have interpreted the public-disclosure provision to include voter registration lists and underlying materials about how lists are created, updated, and maintained. *See Project Vote/Voting for Am., Inc. v. Long*, 682 F.3d 331, 335 (4th Cir. 2012) (ordering disclosure of voter registration applications with voters' social security numbers redacted); *Pub. Int. Legal Found., Inc. v. N.C.*

---

[14] Both the Republican and Democratic commissioners directed USDOJ to where it could obtain the publicly available voter registration file, a website hosted by NYSBOE. *See* Background I(C). So regardless of the partisan divide on the unredacted file, all commissioners (and the Board) have made available the publicly available file. *See also* Compl. ¶ 48.

*State Bd. of Elections*, 996 F.3d 257, 266 (4th Cir. 2021) (finding that efforts to identify noncitizen registrants qualified as a program subject to disclosure).

Defendants complied with the public-disclosure provision when they provided access to New York's statewide voter registration list that excluded voters' driver's license numbers, other DMV identifiers, and social security numbers, consistent with New York law. The state, by law, makes the voter registration list publicly available, with only certain information exempted. *See* N.Y. Elec. Law § 3-220(1); *see also* N.Y. Pub. Off. Law § 96-a(2) (prohibiting the state or its political subdivisions from making available social security numbers, including "the nine digit account number issued by the federal social security administration and any number derived therefrom.").

Courts have consistently recognized that the NVRA's public-disclosure provision is satisfied when responsive records are disclosed with sensitive identifiers redacted, including driver's license numbers, birth dates, or social security numbers. *See, e.g.*, *Project Vote*, 682 F.3d at 339-40 (finding disclosure of voter registration applications with social security numbers and driver's license numbers redacted was permissible because redaction prevented the "danger that . . . uniquely sensitive information will be compromised by Section 8(i)(1)'s public disclosure requirement"); *True the Vote v. Hosemann*, 43 F. Supp. 3d 693, 736 (S.D. Miss. 2014) (finding that the public-disclosure provision "does not, as a general proposition, prohibit a State from protecting voter registrants' SSNs and birthdates as highly personal and sensitive information" because forced disclosure of sensitive identifiers would make citizens hesitant to register to vote); *Pub. Int. Legal Found., Inc. v. N.C. State Bd. of Elections*, 996 F.3d at 265-66 (recognizing the NVRA's broad disclosure mandate while permitting limited redaction of sensitive identifiers); *Project Vote, Inc. v. Kemp*, 208 F. Supp. 3d 1320, 1344 (N.D. Ga. 2016) ("Section 8(i) requires the disclosure of

17

individual voter registration records, but it does not require the disclosure of sensitive information that implicates special privacy concerns."). These holdings harmonize the NVRA with the Privacy Act, which was already in effect when Congress enacted the NVRA. *See supra* Background II(B). Plaintiff itself argued in an amicus brief that "the NVRA does not prohibit States from redacting 'uniquely sensitive information' like voters' Social Security Numbers before disclosing records . . . [n]or does it prohibit redacting an even broader set of personal information in certain sensitive circumstances." Brief for the United States as Amicus Curiae at 27, *Pub. Int. Legal Found., Inc. v. Bellows*, No. 23-1361, 2023 WL 4882397 (1st Cir. July 25, 2023); *Pub. Int. Legal Found., Inc. v. Bellows*, 92 F.4th 36, 56 (1st Cir. 2024). The First Circuit agreed, noting that "nothing in the text of the NVRA prohibits the appropriate redaction of uniquely or highly sensitive personal information in the Voter File" and finding that "the proper redaction of certain personal information in the Voter File can further assuage the potential privacy risks implicated by the public release of the Voter File." *Bellows*, 92 F.4th at 47, 56.

Defendants satisfied their obligations by providing New York's statewide voter registration list with voters' driver's license numbers, other DMV identifiers, and social security numbers, redacted. To read the public-disclosure provision as the Plaintiff urges would require states covered by the NVRA to disclose highly sensitive information like social security numbers to any individual or entity that might ask. Compl. ¶¶ 61-62. Therefore, this Court should find that Plaintiff has failed to state a cognizable claim under the NVRA's public-disclosure provision.

       2.    *New York law prohibits Defendants from disclosing the requested records.*

Moreover, state law prohibits Defendants from disclosing the requested records. Plaintiff claims, without citation to legal authority, that "state election laws, public disclosure laws, and federal privacy laws" are "inapplicable" to USDOJ. Compl. ¶ 50. But New York's privacy laws do

not exempt agents of the federal government and are not preempted by the NVRA, because the NVRA does not reach the records that the Attorney General seeks. *See supra* Argument II(A)(2). New York law prohibits the public disclosure of voters' driver's license numbers, other DMV identifiers, and social security numbers. *See* N.Y. Elec. Law § 3-220(1); N.Y. Pub. Off. Law § 96-a; *see Matter of Seelig v. Sielaff*, 201 A.D.2d 298, 607 N.Y.S.2d 300 (1st Dept. 1994) (release of officers' Social Security numbers in response to a request pursuant to FOIL constituted unwarranted invasion of officers' privacy); *see also Fernandez v. State*, 43 Misc.3d 1221(A), *5, 992 N.Y.S.2d 158 (Ct. Cl. 2014) (N.Y. Public Officers Law § 96-a "bars with certain exceptions the intentional release of social security numbers and other private information."). In addition to these protections, state law also provides for the confidentiality of registrations for certain individuals who are victims of domestic violence. N.Y. Elec. Law § 5-508.

Courts have recognized that the NVRA and state privacy laws operate together where such state privacy laws require minimal redaction of sensitive personal identifiers, while still requiring disclosure of the underlying records. *See Project Vote*, 682 F.3d at 339-40; *see also Pub. Int. Legal Found., Inc. v. N.C. State Bd. of Elections*, 996 F.3d at 265-66. New York laws preventing disclosure of sensitive information do not frustrate the NVRA's purpose. Instead, those privacy laws reinforce the boundaries of public inspection articulated by the courts and the Attorney General. *See id.*; Brief for the United States as Amicus Curiae at 28, *Pub. Int. Legal Found., Inc.* (arguing that state law limits on voter information are not preempted when they affect uses that "would not further the NVRA's purposes," including "bans on disseminating personal data.").

The NVRA's coexistence with state privacy laws is another way that the law balances its objectives of encouraging participation and protecting the integrity of the electoral system. Instead of displacing state protections, those laws operate in concert with the NVRA as a "single

procedural scheme," ensuring that the Attorney General and private litigants have the data required to enforce the Act, while simultaneously protecting voters' privacy interests. *See Gonzalez v. Arizona*, 677 F.3d 383, 394 (9th Cir. 2012). Thus, New York's privacy laws are not preempted by the NVRA. *See Atlas Data Priv. Corp. v. We Inform, LLC*, No. 24-cv-4037, 2025 WL 2444153, at *2-3 (D.N.J. Aug. 25, 2025) (state law limiting disclosure of personal information not preempted by the NVRA).

### 3.    *The NVRA's enforcement provision does not include power to demand records.*

Count II cannot survive simply because the Attorney General has the authority to enforce the NVRA, given that the statute does not authorize the Attorney General to seek records beyond the requirements of the public-disclosure provision.

Although Count II of the Complaint relies solely on the NVRA's public-disclosure provision, *see* Compl. at 15, the Complaint also makes passing reference to the Attorney General's enforcement authority. *Id.* ¶¶ 10, 49. But the NVRA's provision granting the Attorney General enforcement authority simply allows the Attorney General to "bring a civil action in an appropriate district court for such declaratory or injunctive relief as is necessary to carry out this chapter." *See* 52 U.S.C. § 20510(a). Neither that provision nor any part of the NVRA grants the Attorney General independent subpoena or administrative investigatory powers.[15] *See* 52 U.S.C. § 20510(a). The Attorney General has no special right to access information outside of the procedures that the NVRA prescribes.

---

[15] Instead, Congress authorized parallel enforcement by private plaintiffs and the Attorney General to ensure broad compliance with the NVRA's goals. 52 U.S.C. § 20510(a) & (b); *see United States v. State of New York*, 3 F. Supp. 2d 298, 308 (E.D.N.Y. 1998) (Attorney General's powers under the NVRA are "limited to commencing civil actions 'as is necessary to carry out' the purposes of the statute" and are not exclusive), *aff'd in part, rev'd on other grounds sub nom.*, *Disabled in Action of Metro. N.Y. v. Hammons*, 202 F.3d 110 (2d Cir. 2000). This reflects that the NVRA's provisions were designed intentionally to balance transparency and privacy concerns. *See supra* Background II(B).

Caselaw confirms that a general grant of enforcement authority does not create an implied right to force states to provide data to the federal government. *See Consumer Fin. Prot. Bureau v. Accrediting Council for Indep. Colleges & Schs.*, 854 F.3d 683, 691 (D.C. Cir. 2017) (agency's ability to define the scope of its investigation broadly "does not afford it unfettered authority to cast about for potential wrongdoing"); *United States v. Xcel Energy, Inc.*, 759 F. Supp. 2d 1106, 1112 (D. Minn. 2010) (broad discretion to request documents is limited by the text of the authorizing statute); *United States v. Gurley*, 235 F. Supp. 2d 797, 802 (W.D. Tenn. 2002), *aff'd*, 384 F.3d 316 (6th Cir. 2004) (EPA could proffer information requests where Congress expressly authorized the agency to seek requested information). In situations in which enforcement power includes the authority to compel the production of records, that authority is clearly delineated. *See e.g.*, *United States v. Constr. Prods. Rsch., Inc.*, 73 F.3d 464, 471 (2d Cir. 1996) (Nuclear Regulatory Commission's authority to subpoena records established by 42 U.S.C. § 2201(c)); *see also* 26 U.S.C. §§ 7604, 7609 (IRS summons enforcement).

Here, Congress delineated the scope of the NVRA's public-disclosure provision, and it does not contain any other specific records-collection authority for the Attorney General. If the Attorney General has evidence that New York has failed to comply with the NVRA's list-maintenance requirements, she may file a civil suit alleging those violations and may take discovery in that suit. *See* 52 U.S.C. § 20510(a). The Attorney General did not invoke that enforcement mechanism here, nor does Plaintiff make any such suggestion in its Complaint. Instead, Plaintiff has demanded that New York provide millions of voters' driver's license numbers, other DMV identifiers, and social security numbers so that it can amass significant amounts of data.

**B.    New York's unredacted statewide voter registration list is not necessary to determine New York's compliance with the NVRA's list-maintenance requirements.**

Even if the NVRA provided some mechanism for the Attorney General to obtain records based on an alleged violation, Count II would nonetheless fail. The facts alleged do not indicate that New York has violated the NVRA and, even if the Complaint alleged potential violations, sensitive personal data is not necessary to assess New York's compliance with the NVRA's list-maintenance requirements. The NVRA requires states to implement "a *general program* that makes a *reasonable effort* to remove the names of ineligible voters from the official lists of eligible voters." 52 U.S.C. § 20507(a)(4) (emphasis added); *Husted v. A. Philip Randolph Inst.*, 584 U.S. 756, 787 (2018) (Thomas, J., concurring). The Supreme Court has "recognized that 'States take a variety of approaches' in complying with the NVRA's requirements." *Common Cause/New York v. Brehm*, 432 F. Supp. 3d 285, 317 (S.D.N.Y. 2020) (citing *Husted*, 584 U.S. at 762). "Congress did not give any further guidance on what a 'reasonable effort' must look like. Congress did not, for example, enumerate what steps a state should take to come into compliance with this standard." *Pub. Int. Legal Found. v. Benson*, 136 F.4th 613, 624 (6th Cir. 2025). As the Eighth Circuit held, this phrase represents "some middle ground" in delineating the state's obligations under the NVRA. *United States v. Missouri*, 535 F.3d 844, 850-851 (8th Cir. 2008). "In other words, the NVRA sets the floor for how states conduct list maintenance; states have discretion to choose how precisely to follow its requirements." *Common Cause/New York*, 432 F. Supp. 3d at 317.

The Attorney General does not explain why she needs access to driver's license numbers, other DMV identifiers, and social security numbers to evaluate New York's list-maintenance programs. Plaintiff's legal conclusion that the Attorney General has duties under the NVRA (or HAVA) to "determine if New York is conducting effective list maintenance to ensure that the SVRL

is free of errors such as duplicitous registrations, deceased and noncitizen voters, and voters who have moved," Compl. ¶ 49, misstates the scope of the Attorney General's enforcement authority. Defendants have already provided Plaintiff with access to the publicly available statewide voter registration list and other pertinent information regarding its NVRA compliance. Compl. ¶ 46; Ex. D, Dem. Comm. Aug. 29, 2025 Letter; Ex. E, Rep. Comm. Aug. 29, 2025 Letter. While Plaintiff's true goal may be the removal of voters from the rolls, driver's license numbers, other DMV identifiers, and social security numbers are irrelevant to determining whether New York has satisfied the NVRA's requirements that it conducts a *reasonable*, *general* program of list maintenance. As a result, Plaintiff's claim fails and should be dismissed.

III.    **Count III should be dismissed because the request for New York's full voter list exceeds the Attorney General's authority to investigate under HAVA.**

The Complaint fails to state a claim under Count III because HAVA does not afford the Attorney General access to New York's unredacted voter list. Like the NVRA, HAVA contains an enforcement provision without reference to disclosure of the voter file, much less the voter file with DMV numbers and social security numbers. And HAVA contains *no* provision that requires states to provide the Attorney General, or anyone else, election data.

Section 21111 of HAVA authorizes the Attorney General to "bring a civil action against any State . . . as may be necessary" for the limited purpose of "carry[ing] out the uniform and nondiscriminatory election technology and administration requirements" set forth in HAVA, including the list-maintenance requirements detailed in 52 U.S.C. § 21083(a). 52 U.S.C. § 21111. Plaintiff alleges that it is unable to "determine[] New York's compliance with the list maintenance requirements of HAVA" without access to an unredacted voter registration file. Compl. ¶ 69. But the Attorney General cannot point to any part of HAVA—or any legal authority—that gives her the power to demand the full, unredacted voter registration file from states outside of a HAVA

enforcement suit. No such legal authority exists: a basic enforcement provision does not implicitly include the authority to force production of records, especially those that must be kept private under law. *See supra* Argument II(A)(3); *cf.* 52 U.S.C. § 20701; 52 U.S.C. § 20703 (empowering the Attorney General with specific power to demand records).

Moreover, a static, unredacted copy of the New York's voter registration list is not necessary—or even useful—to determine whether New York is complying with HAVA's list-maintenance requirements because a static list does not explain the procedures by which New York maintains the list. The Attorney General claims that, absent New York's unredacted voter list, she is unable to evaluate (1) whether "duplicate names are eliminated from the computerized list pursuant to 52 U.S.C. § 21083(a)(2)(B)" and (2) whether the State is in compliance with Section 21083(a)(5)(A). Compl. ¶¶ 68-69 (internal quotations omitted).[16] Neither of these provisions can justify Plaintiff's demand for additional sensitive voter information beyond what is contained in the publicly available voter list. *First*, NYSBOE has already explained in detail its processes for determining duplicate registrations and for removing duplicate names from the Qualified Voter File. *See* Ex. C, Aug. 29, 2025 Letter.

*Second*, New York's unredacted voter registration file is unnecessary to determine its compliance with Section 21083(a)(5)(A). Though the Plaintiff characterizes Section 21083(a)(5)(A) as containing "list maintenance requirements," Compl. ¶ 69, Section 21083(a)(5)(A) is not a list-maintenance requirement; it requires voter registration applications to request certain identifying information such as a driver's license number or last four digits of a social security number. *See* 52 U.S.C. § 21083(a)(5)(A)(i). New York requires applicants for

---

[16] Plaintiff also alleges that "New York has failed to provide the necessary information under NVRA and HAVA" with reference to the "reasonable effort" program requirements of 52 U.S.C. § 20507(a)(4). Compl. ¶ 60. But that provision is solely a requirement of the NVRA.

registration to supply this information. N.Y. Elec. Law § 5-210(5)(k)(v). A proper inquiry into whether the state complies with 52 U.S.C. § 21083(a)(5)(A)(i) would be into the process it uses for voter registration, not private data about individual voters that is protected by state law.

No other provision of HAVA requires disclosure of New York's unredacted voter list. Unlike the NVRA, HAVA does not contain a provision through which the Attorney General or the public may request records. As described, *see supra* Background II(C), the NVRA was already in place when Congress passed HAVA, and HAVA's repeated invocation of the NVRA demonstrates that "Congress knew how to reference the NVRA." *Bellito*, 935 F.3d at 1202. But Congress chose not to incorporate the NVRA's disclosure provision or to craft one specific to HAVA. As a result, no provision of HAVA requires New York to produce the detailed voter information that the Attorney General has requested. Therefore, Plaintiff has failed to allege a cognizable claim that New York has violated HAVA by withholding its unredacted voter list, and Count III cannot stand.

## CONCLUSION

For the reasons stated above, Proposed-Intervenor Defendant League of Women Voters of New York asks that the Court grants this motion to dismiss all counts of the Complaint.

Dated: December 30, 2025                         Respectfully submitted,


                                                 /s/ *Daniel S. Lenz*
                                                 Daniel S. Lenz*
                                                 Robert Brent Ferguson (N.Y. Bar No. 4890620)*
                                                 Sejal Jhaveri (N.Y. Bar No. 5396304)*
                                                 Renata O'Donnell (N.Y. Bar No. 5767561)*
                                                 Heather Szilagyi*
                                                 Alexis Grady*
                                                 Kate Hamilton*
                                                 Campaign Legal Center

1101 14th St. NW, Suite 400
Washington, DC 20005
Tel: (202) 736-2200
Fax: (202) 736-2222
bferguson@campaignlegalcenter.org
dlenz@campaignlegalcenter.org
sjhaveri@campaignlegalcenter.org
rodonnell@campaignlegalcenter.org
hszilagyi@campaignlegalcenter.org
agrady@campaignlegalcenter.org
khamilton@campaignlegalcenter.org

Maura Eileen O'Connor (N.Y. Bar No.
4312302)*
Brennan Center for Justice
at NYU School of Law
777 6th St. NW, Ste. 1100
Washington, DC 20001
Tel: (202) 249-7190
oconnore@brennan.law.nyu.edu

Patrick Berry (N.Y. Bar No. 5723135)
Brennan Center for Justice
at NYU School of Law
120 Broadway, Suite 1750
Tel: (646) 292-8310
Fax: (212) 463-7308
berryp@brennan.law.nyu.edu

*Admitted pro hac vice

Counsel for Proposed Intervenor-Defendant
League of Women Voters of New York State

## **CERTIFICATE OF SERVICE**

I certify that on this 30th of December 2025, I caused to be served a copy of the above document on all counsel of record and parties via the ECF system.

<u>/s/ *Daniel S. Lenz*</u>
Daniel S. Lenz