UNITED STATES DISTRICT COURT
NORTHERN DISTRICT OF NEW YORK

THE UNITED STATES OF AMERICA,

                              Plaintiff,

          v.                                                    No. 25-cv-1338 (MAD)(PJE)

BOARD OF ELECTIONS OF THE STATE OF NEW
YORK, *et al.,*

                              Defendants.


## MEMORANDUM OF LAW IN SUPPORT OF DEFENDANT STATE OF NEW YORK'S MOTION TO DISMISS THE COMPLAINT


LETITIA JAMES
Attorney General
State of New York
28 Liberty Street
New York, New York 10005
Tel.: (212) 416-8673
*Attorney for Defendant State of New York*

YUVAL RUBINSTEIN
Special Litigation Counsel
    *of* Counsel

## <u>TABLE OF CONTENTS</u>

**Page**

TABLE OF AUTHORITIES ................................................................................................ ii

PRELIMINARY STATEMENT ......................................................................................... 1

BACKGROUND ................................................................................................................ 3

     A.   New York's Voter Registration List Maintained by the SBOE ................................ 3

     B.   DOJ's Unprecedented Request for an Unredacted NYSVoter List ........................... 4

     C.   The Instant Action ................................................................................................. 7

ARGUMENT ..................................................................................................................... 8

I.     DOJ FAILS TO ALLEGE ITS COMPLIANCE WITH FEDERAL PRIVACY LAWS ...... 9

II.    DOJ'S CLAIM UNDER THE CRA FAILS AS A MATTER OF LAW ......................... 12

III.   DOJ'S CLAIM UNDER NVRA FAILS AS A MATTER OF LAW ............................. 15

IV.   DOJ'S CLAIM UNDER HAVA FAILS AS A MATTER OF LAW ............................. 18

V.   THE STATE IS NOT THE PROPER PARTY FOR THE RELIEF SOUGHT BY DOJ .. 19

CONCLUSION .................................................................................................................. 20

## TABLE OF AUTHORITIES

CASES                                                                          Page(s)

*AFGE, AFL-CIO v. U.S. OPM,* 786 F.Supp.3d 647 (S.D.N.Y. 2025) .......................9, 11

*Arizona v. Inter Tribal Council of Ariz., Inc.*, 570 U.S. 1 (2013) ...................................15

*Ashcroft v. Iqbal*, 556 U.S. 662 (2009) .............................................................................8

*Bell Atl. Corp. v. Twombly*, 550 U.S. 544 (2007) ............................................................8

*Chambers v. Time Warner, Inc.*, 282 F.3d 147 (2d Cir. 2002) .......................................4

*Dinkens v. Att'y Gen. of U.S.*, 285 F.2d 430 (5th Cir. 1961) .........................................12

*EPIC v. Presidential Advisory Comm'n on Election Integrity*, 266 F.Supp.3d 297 (D.D.C. 2017) ...........................................................................................................................11

*Greater Birmingham Ministries v. Sec'y of State for Ala.*, 105 F.4th 1324 (11th Cir. 2024) ........17

*Husted v. A. Philip Randolph Inst.*, 584 U.S. 756 (2018) .............................................15

*Kennedy v. Lynd*, 306 F.2d 222 (5th Cir. 1962) ......................................................12, 14

*Nat'l Coal. on Black Civic Participation v. Wohl*, 498 F.Supp.3d 457 (S.D.N.Y. 2020) .............13

*Oklahoma v. Castro-Huerta*, 597 U.S. 629 (2022) .......................................................19

*PILF v. Bellows*, 92 F.4th 36 (1st Cir. 2024) ................................................................17

*PILF v. Benson*, 136 F.4th 613 (6th Cir. 2025) ...........................................................15

*PILF v. v. N.C. State Bd. of Elections*, 996 F.3d 257 (4th Cir. 2021) .............................17

*Project Vote/Voting for Am., Inc. v. Long*, 752 F.Supp.2d 697 (E.D. Va. 2010), *aff'd*, 682 F.3d 331 (4th Cir. 2012) ........................................................................................17

*Ritter v. U.S.*, 177 Fed. Cl. 84 (2025) .............................................................................9

*State of Ala. ex rel. Gallion v. Rogers*, 187 F.Supp.848 (M.D. Ala. 1960) ...................12

*True the Vote v. Hosemann*, 43 F.Supp.3d 693 (S.D. Miss. 2014) ...............................17

*U.S. v. Lynd*, 301 F.2d 818 (5th Cir. 1962) ...................................................................12

**Constitutions**

Art. I, § 4, cl. 1 ..............................................................................................................15

**Federal Rules**

Fed. R. Civ. P. 8 ..................................................................................................8

Fed. R. Civ. P. 12(b)(6) ....................................................................................1, 8

**Federal Statutes**

5 U.S.C. § 552a(e)(4) ....................................................................................10, 11

5 U.S.C. § 552a(e)(7) ........................................................................................10

18 U.S.C. § 2721 ...............................................................................................12

18 U.S.C. § 2721(a)(1) ......................................................................................12

18 U.S.C. § 2725(3) ...........................................................................................12

52 U.S.C. § 20501(a) ...........................................................................................6

52 U.S.C. § 20507(a)(4) .................................................................................15, 16

52 U.S.C. § 20507(d)(2) ....................................................................................16

52 U.S.C. § 20507(i) ........................................................................................8, 16

52 U.S.C. § 20507(i)(2) ......................................................................................16

52 U.S.C. § 20701 ..............................................................................................13

52 U.S.C. § 20703 .........................................................................6, 8, 13, 14, 15

52 U.S.C. § 21083 ................................................................................................8

52 U.S.C. § 21083(a)(1)(A) ...............................................................................18

52 U.S.C. § 21083(a)(2) .......................................................................................4

52 U.S.C. § 21083(a)(2)B)(iii) ..........................................................................18

52 U.S.C. § 21083(a)(4) ....................................................................................18

52 U.S.C. § 21083(a)(5)(A) ...............................................................................19

52 U.S.C. § 21083(a)(5)(A)(i) .............................................................................6

52 U.S.C. § 21111 ..............................................................................................19

Pub. L. No. 107-347, § 208(b)(1) ......................................................................11

Pub. L. No. 107–347, § 208(b)(1)(A)(ii)(II) .................................................................................11

**Federal Register**

68 Fed. Reg. 47610-01 (Aug. 11, 2003) .....................................................................................10

70 Fed. Reg. 43904-01 (July 29, 2005) .....................................................................................10

82 Fed. Reg. 24147-01 (May 25, 2017) ................................................................................ 10-11

**State Statutes**

N.Y. Elec. Law § 3-220(1) ...........................................................................................................4

N.Y. Elec. Law. § 5-102 ...............................................................................................................3

N.Y. Elec. Law. § 5-106 ...............................................................................................................3

N.Y. Elec. Law. § 5-400(2)(d) .....................................................................................................3

N.Y. Elec. Law § 5-614 ................................................................................................................3

N.Y. Elec. Law § 5-614(1) ......................................................................................................3, 20

N.Y. Elec. Law § 5-614(3)(b)-(c) ................................................................................................3

N.Y. Elec. Law § 5-704 ................................................................................................................3

N.Y. Elec. Law § 5-708 ................................................................................................................3

Pub. Officers Law § 96-a(1)(a) .................................................................................................4, 9

**State Regulations**

9 N.Y.C.R.R § 6217.8 ..................................................................................................................3

9 N.Y.C.R.R § 6217.10(d) ...........................................................................................................3

Defendant State of New York ("State")[1] respectfully submits this memorandum of law in support of its motion to dismiss the Complaint (Compl., ECF No. 1) pursuant to Federal Rule of Civil Procedure 12(b)(6).

## PRELIMINARY STATEMENT

The State of New York, similar to every state in our federal system of government, has the sovereign and primary responsibility for regulating and administering its elections, including the registration of qualified voters. The federal government's ability to impinge upon this state responsibility is thus narrowly circumscribed. And New York has a compelling interest in ensuring that highly sensitive information furnished by millions of its registered voters—including their driver's license information and Social Security numbers—remains secure and confidential. Doing so also serves New Yorkers' expectation of privacy when they register to vote. But for the past several months, the U.S. Department of Justice ("DOJ") has sought to intrude upon New York's sovereign role by demanding that the State turn over "all fields" in its computerized statewide voter registration list, known as NYSVoter ("NYSVoter List"), unredacted and unprotected from further dissemination and use.

DOJ's unprecedented request is breathtaking in scope and deeply alarming. DOJ is demanding access to the private information of *millions* of New York voters, something no prior federal administration has ever requested, let alone obtained through a court order. And DOJ has proffered only fig-leaf justifications for its sweeping demand. In June, DOJ asserted that the unredacted NYSVoter List is somehow necessary to assess whether New York has complied with its "list maintenance obligations" under the Help America Vote Act of 2002 ("HAVA"). In August,

---

[1] This Office represents defendant State of New York only. The Commissioners and Co-Executive Directors of the Board of Elections of the State of New York ("SBOE"), who are also named as defendants, are represented by separate counsel.

DOJ tacked on two additional federal statutes that supposedly justify its request: the Civil Rights Act of 1960 ("CRA"), and National Voter Registration Act ("NVRA").  The SBOE, a named party and the custodian of the NYSVoter database, furnished to DOJ detailed information regarding New York's voter registration maintenance procedures on August 29, 2025. Moreover, DOJ can request access to the redacted NYSVoter List at any time to the extent DOJ's purported justification for this data is to assess New York's compliance with provisions of NVRA and HAVA. Yet DOJ nonetheless filed this action on September 25, 2025, asserting that only the unredacted NYSVoter List containing "all fields" will suffice. DOJ is wrong.

First, as a threshold matter, DOJ has utterly failed to establish that it has complied with applicable requirements under federal privacy statutes for safeguarding voter registration data. Under the Privacy Act of 1974, DOJ is obligated to (among other things) publish a System of Records Notice ("SORN") in the Federal Register before establishing a "system of records," including voter-registration data. Yet no such SORN has been proposed or published. Nor has DOJ complied with the procedures set forth in the E-Government Act of 2002 or the Driver's Privacy Protection Act. DOJ's failure to allege compliance with these basic safeguards precludes its entitlement to a court order requiring production of the NYSVoter List.

Moreover, none of DOJ's proffered statutory justifications for its request can survive initial scrutiny, and they in no way justify or provide any basis for the requested relief as a matter of law. The CRA was enacted in the midst of widespread and egregious denials of the right to vote. Yet DOJ does not claim that the NYSVoter List is necessary to investigate any denial of voting rights in New York. Moreover, the CRA obligates DOJ to state the basis and purpose for its request. No "basis" has been articulated to date, while the only "purpose" DOJ has mustered is that the

unredacted NYSVoter List is purportedly needed to assess New York's compliance with two *different* statutes, NVRA and HAVA. That is simply not a valid purpose under the CRA.

Nor do NVRA and HAVA authorize DOJ's request. NVRA obligates states to conduct a general list maintenance program that makes a reasonable effort to remove the names of ineligible voters, while HAVA obligates states to implement a computerized statewide voter registration list and make a reasonable effort to remove ineligible registrants. Yet DOJ does not allege any basis to believe the State has failed to comply with its obligations under either statute. In any case, NVRA does not authorize the disclosure of unredacted voter information, as several courts have already held, while HAVA lacks any inspection provision at all.

In sum, DOJ's request poses a grave and wholly unjustified threat to New York's core sovereignty in regulating its own elections, as well as the privacy of millions of New Yorkers. Accordingly, the Court should grant the State's motion and dismiss the Complaint with prejudice.

## **BACKGROUND**

### A.    **New York's Voter Registration List Maintained by the SBOE**

The State of New York maintains a centralized official voter registration list, known as NYSVoter. *See* N.Y. Elec. Law § 5-614. The NYSVoter List contains the name and registration information of every legally registered voter in New York, as well as a unique identifier for each such voter. *Id.* §§ 5-614(3)(b)-(c). The NYSVoter List is in the "custody" of the SBOE, and is "administered and maintained" by that agency. *Id.* § 5-614(1).

New York's Election Law and its implementing regulations mandate, among other things, the removal of duplicative registrations identified in the statewide voter registration system (9 N.Y.C.R.R § 6217.8); removal of incarcerated felons and decedents from voter rolls (9 N.Y.C.R.R. § 6217.10(d); removal of voters that have moved to another state (N.Y. Elec. Law §§ 5-400(2)(d);

5-704; 5-708); and removal of voters from the voter rolls for any statutory reason (N.Y. Elec. Law §§ 5-102 to 5-106).

The unredacted voter registration information in the NYSVoter List is shielded from disclosure pursuant to New York state law. In particular, Public Officers Law § 96-a(1)(a) prohibits the State from "mak[ing] available to the general public in any manner an individual's social security account number." In addition, New York election law is clear that "a voter's driver's license number, department of motor vehicle non-driver photo ID number, social security number and facsimile number shall not be released for public inspection." N.Y. Elec. Law § 3-220(1). And as discussed below, federal privacy laws also shield this information.

### B.    DOJ's Unprecedented Request for an Unredacted NYSVoter List

On June 30, 2025, DOJ sent a letter to defendants Kristen Zebrowski Stavisky and Raymond Riley III, Co-Executive Directors of the SBOE. *See* Ex. A, Declaration of Yuval Rubinstein, June 30, 2025 Letter; ECF No. 1, Complaint ("Compl."), ¶¶ 42-43.[2] The letter asserted that HAVA establishes minimum standards for States in the administration of federal elections, and imposes "certain list maintenance obligations on states" pursuant to 52 U.S.C. § 21083(a)(2). DOJ's letter also included a number of requests for information purportedly relating to "the State's HAVA compliance":

> (1)    Describe how the State processes new applications to register to vote for elections for federal office, as required by HAVA Section 303.
> (2)    Describe the process by which New York assigns a unique identifier to each legally registered voter in New York, as required by HAVA Section 303(a)(l )(A).
> (3)    Describe how the statewide voter registration list is coordinated with the databases of other state agencies, as required by HAVA Section 303(a)(l)(A). Provide the name of each state database used for coordination, and describe the procedures used for the coordination as well as how often the databases are

---

[2] The correspondence between DOJ and the SBOE, annexed for the Court's ease of reference as exhibits to the Declaration of Yuval Rubinstein, is expressly cited in the Complaint, and thereby incorporated by reference. *See Chambers v. Time Warner, Inc.*, 282 F.3d 147, 153 (2d Cir. 2002).

coordinated with the statewide voter registration list.

(4)    Describe the process by which any duplicate voter registrations are identified and removed from the statewide voter registration list under HAVA Section 303(a)(2)(B)(iii). Please include an explanation of how the State determines what constitutes a duplicate voter registration record.

(5)    Describe the process by which voters who have been convicted of a felony are identified and, if applicable under state law, removed from the statewide voter registration list under HAVA Section 303(a)(2)(A)(ii)(I).

(6)    Describe the process by which deceased registrants are identified and removed from the statewide voter registration list under HAVA Section 303(a)(2)(A)(ii)(II).

(7)    Describe all technological security measures taken by the State to prevent unauthorized access to the statewide voter registration list, as required by HAVA Section 303(a)(3).

(8)    Describe the process by which voters who have moved outside the State and subsequently register to vote in another state are identified and removed from the statewide voter registration list, under HAVA Section 303(a)(4)(A).

(9)    Describe the process by which registrants who are ineligible to vote due to non-citizenship are identified and removed from the statewide voter registration list.

(10)    HAVA requires states to verify voter registration information by mandating that applicants provide certain information under HAVA Section 303(a)(5). Please provide a copy of the voter registration application(s) utilized for in-person voter registration, a link to the State's online voter registration application, and, if applicable, the voter registration application used for same-day registration.

(11)    Please describe the verification process under HAVA Section 303(a)(5) that election officials perform to verify the required information supplied by the registrant. Please describe what happens to the registration application if the information cannot be verified.

(12)    Provide a copy of the current agreement, under HAVA Section 303(a)(5)(B)(i), between the chief State election official and the State's motor vehicle authority.

(13)    Provide a copy of the current agreement between the official responsible for the State's motor vehicle authority and the Commissioner of Social Security Administration under HAVA Section 303(a)(5)(B)(ii).

(14)    Under HAVA Section 303(b), describe the State's requirements for an individual to vote if the individual registered to vote by mail and has not previously voted in an election for federal office in the State.

(15)    Please send us New York's current statewide voter registration list. Please include both active and inactive voters.

*Id.* at 1-2.

On August 14, 2025, DOJ sent another letter to Stavisky and Riley. *See* Ex. B, August 14, 2025 Letter. Compl., ¶¶ 45-47. The letter purportedly sought to "clarify" DOJ's earlier June 30,

2025 letter, and requested that the NYSVoter List "should contain all fields," including "the registrant's full name, date of birth, residential address, his or her state driver's license number or the last four digits of the registrant's social security number[.]" *Id.* at 1. DOJ's letter cited to § 21083(a)(5)(A)(i) of HAVA as the basis for its renewed request.

The August 14 letter further claimed that DOJ was requesting the NYSVoter List to purportedly "assess [New York's] compliance with the statewide maintenance provisions" of NVRA and invoked the Attorney General's authority to bring enforcement actions pursuant to 52 U.S.C. § 20501(a). *Id.* at 1. The letter further claimed that "the Attorney General is also empowered by Congress to request records" pursuant to Title III of the Civil Rights Act of 1960. *Id.* at 2. In particular, the letter cited to 52 U.S.C. § 20703 of the CRA, which authorizes the Attorney General to demand in writing that certain records relating to federal elections "be made available for inspection, reproduction and copying at the principle office of" each state's custodian of elections. *Id.* at 2.

The August 14 letter omitted the final sentence of § 20703, which mandates that the Attorney General's "demand shall contain a statement of the basis and the purpose therefor." The August 14 letter did not state any "basis" for demanding all fields in the NYSVoter List. The asserted "purpose" of DOJ's request, as set forth in the August 14 letter, was "to ascertain New York's compliance with the list maintenance requirements of the NVRA and HAVA." *Id.* at 2. Finally, the letter attempted to preempt any "privacy concerns" by claiming the NYSVoter List is "subject to federal privacy protections," citing to Section 304 of the CRA and the Privacy Act of 1974. *Id.* at 2-3.

On August 29, 2025, the SBOE, through its Democratic and Republican Co-Counsel, responded to DOJ's requests for the information set forth in the June 30, 2025 letter. Ex. C, August

29, 2025 Letter, at 1-3. Compl., ¶ 48. With respect to DOJ's request for "New York's current statewide voter registration list," the SBOE stated that it is "a bipartisan agency, typically requiring agreement between agency leadership of both parties to take action." *Id.* at 4. Because the SBOE did "not have a consensus view on responding to this request," two separate responses from the Democratic and Republican counsel were submitted. *Id.*

The Democratic Commissioners and staff stated that they "cannot approve the release of voter files containing social security numbers and Department of Motor Vehicle identification numbers," which are not available for public disclosure under New York state law. Ex. D, August 29, 2025 Letter of Brian J. Quail, at 1. In addition, they emphasized that DOJ could request the "appropriately redacted, public statewide voter registration list" by submitting a request through New York's Freedom of Information Law (FOIL). *Id.* The Republican Commissioners and staff represented that the NYSVoter List "can and should be provided in its entirety, with an understanding that all personal identifying information contained within any version of [the NYSVoter List] be protected from public disclosure under all relevant provisions of both New York State and federal law." Ex. E, Letter of Kevin G. Murphy, at 1. In addition, they noted that because the SBOE does not have consensus to provide the information requested, it is "unable to fulfill [DOJ's requests] at this time." *Id.* at 2.

## C. The Instant Action

On September 25, 2025, DOJ filed this action claiming to seek to "enforce" the CRA, NVRA, and HAVA. *See* Compl., ¶ 3. The Complaint asks the Court "to compel [defendants] to provide all fields of New York's" NYSVoter List that are supposedly "HAVA-required identifiers," including "each registrant's driver's license number or the last four [digits] of their Social Security number." *Id.* at ¶ 7. The Complaint represents that this information will "allow the Attorney

General to fulfill its duties of effectively assessing Defendants' compliance with the requirements of the NVRA and HAVA." *Id.*

The Complaint asserts that the public version of the NYSVoter List lacks the necessary information for the Attorney General to "carry out its duties of NVRA and HAVA enforcement," and that DOJ supposedly needs to "ensure that the [NYSVoter List] is free of errors such as duplicitous registrations, deceased and noncitizen voters, and voters who have moved." Compl., ¶ 49. The Complaint also asserts that the Attorney General requires "the full name, date of birth, address, and the full driver's license number and/or last four digits of social security numbers of the registrants" to purportedly "prevent false positives in [the Attorney General's] review." *Id.*

The Complaint asserts claims pursuant to § 20703 of CRA, § 20507(i) of NVRA, and § 21083 of HAVA. Compl., ¶¶ 53-70. The Prayer For Relief requests a declaratory judgment as well as an order for "Defendants to provide to the United States the current electronic copy of New York's statewide voter registration list, with all fields, including each registrant's full name, date of birth, residential address, [ ] state driver's license number, and the last four digits of their Social Security number," as "required by 52 U.S.C. § 20703." *See* Prayer For Relief, ¶¶ (A)-(E).

## ARGUMENT

Under Rule 12(b)(6), a complaint must contain "sufficient factual matter, accepted as true, to 'state a claim to relief that is plausible on its face.'" *Ashcroft v. Iqbal*, 556 U.S. 662, 678 (2009) (quoting *Bell Atl. Corp. v. Twombly*, 550 U.S. 544, 570 (2007)). A claim has facial plausibility "when the Plaintiff pleads factual content that allows the Court to draw the reasonable inference that the defendant is liable for the misconduct alleged." *Iqbal*, 556 U.S. at 678 (quoting *Twombly*, 550 U.S. at 556-57). The pleading requirements under Rule 8 "demand more than an unadorned, the-defendant-unlawfully-harmed-me accusation." *Id.* at 678. "Nor does a complaint suffice if it

tenders naked assertions devoid of further factual enhancement." *Id.* Rather, a complaint's "[f]actual allegations must be enough to raise a right to relief above the speculative level." *Twombly*, 550 U.S. at 555. Where a Plaintiff has failed to "nudge [his] claims across the line from conceivable to plausible, [the] complaint must be dismissed." *Id.* at 570.

## I.    DOJ FAILS TO ALLEGE ITS COMPLIANCE WITH FEDERAL PRIVACY STATUTES

The State of New York retains a fundamental sovereign interest in ensuring the confidentiality of sensitive, nonpublic voter information, as enshrined in New York state law. *Supra* at 3-4. But DOJ's sweeping and unprecedented demand for *all* fields in the NYSVoter List, including the last four digits of registrants' Social Security numbers and their driver's license numbers, encroaches upon the State's interest as set forth in these statutes, in particular Public Officers Law § 96-a(1)(a) and N.Y. Elec. Law § 3-220(1).  The request places in jeopardy the private information of millions of New York's registered voters, upsetting their legitimate expectations of privacy with respect to such sensitive information. Moreover, this private information is protected under both state *and* federal law. Indeed, DOJ fails to allege that it has satisfied applicable prerequisites under federal privacy statutes for establishing any "system of records," a term that includes the voter-registration data sought here. Thus, even assuming that DOJ was entitled to request production of the NYSVoter List (which, as discussed below, it is not), DOJ's claims fail at the threshold because DOJ does not allege compliance with basic prerequisites for receiving that data.

First, DOJ fails to allege that it has complied with the Privacy Act of 1974, which was passed "in light of [federal] government abuse" during the Watergate era. *AFGE*, *AFL-CIO v. U.S. OPM,* 786 F.Supp.3d 647, 694 (S.D.N.Y. 2025); *Ritter v. U.S.*, 177 Fed. Cl. 84, 87 (2025) ("The Privacy Act exists to protect individuals from disclosure of government-collected information.").

The Act contains a number of safeguards to prevent such unjustified disclosure. For example, the Act prohibits federal agencies from maintaining any record "describing how any individual exercises rights guaranteed by the First Amendment," subject to narrow exceptions. 5 U.S.C. § 552a(e)(7). The Act also requires federal agencies to first publish a System of Records Notice ("SORN") in the Federal Register before they seek to "establish[ ] or revis[e]" a "system of records." *Id.* § 552a(e)(4). The Act defines "system of records" to include a "group of records under the control of any agency from which information is retrieved by the name of the individual" or other individual personal identifier. *Id.* § 552a(a)(5).

The sensitive voter registration information contained in the NYSVoter List is a "system of records" falling squarely within the ambit of the Privacy Act. Under New York law, the NYSVoter List contains a unique identifier for each registered voter. *Supra* at 3.  Indeed, DOJ does not dispute that the NYSVoter list constitutes a "system of records" under the Act. DOJ, however, fails to allege that it has satisfied the strictures of the Act. In particular, DOJ does not allege that it has published a SORN in the Federal Register specifically applicable to statewide voter registration data. DOJ merely points to prior SORN's published several years ago: 68 Fed. Reg. 47610-01, 611 (Aug. 11, 2003); 70 Fed. Reg. 43904-01 (July 29, 2005); and 82 Fed. Reg. 24147-01 (May 25, 2017). Compl., ¶ 52.

But these earlier SORNs concern information far afield from the highly sensitive voter registration data sought here by DOJ, and cannot be used as an after-the-fact substitute. For example, the 2003 SORN merely states in general terms that it applies to "case files, matters, memoranda, correspondence, studies, and reports relating to enforcement of civil rights laws and other various duties of the Civil Rights Division." 68 Fed. Reg. at 47611. The 2005 SORN adds a new routine use of records maintained under the SORN that "allows the disclosure of information

explaining [DOJ's] decision to close a criminal matter to the local community or public…" Finally, the 2017 SORN "revises the breach response routine use for the DOJ systems of records," and "adds a new routine use to the DOJ systems of records…to ensure that [DOJ] can assist another agency in responding to a confirmed or suspected breach, as appropriate." Although the Complaint asserts that "the statutes cited for routine use include the CRA, NVRA, and HAVA" (Compl., ¶ 52), the three SORNs cited by DOJ make no mention of these statutes. In short, none of these prior SORNs that are referenced in the September 25, 2025 Complaint even come close to meeting the requirements pursuant to § 552a(e)(4).

DOJ also points to the Privacy Act Statement contained on the website of the Civil Rights Division. Compl., ¶ 52. But the broadly worded statement merely states that "we may use the information you provide on this form for certain routine purposes," and fails to detail DOJ's compliance with the provisions of the Act. *Cf. AFGE*, 786 F.Supp.3d at 694 ("The [federal] Government has defended this lawsuit by repeatedly invoking a mantra that it adhered to all established procedures and safeguards. It did not."). DOJ's failure to satisfy the Privacy Act's provisions is sufficient by itself to dismiss the Complaint.

DOJ's demand for the unredacted NYSVoter List also runs afoul of the E-Government Act of 2002. Pub. L. No. 107-347, § 208(b)(1), 116 Stat. 2899 (2002). The Act requires federal agencies to prepare a "privacy impact assessment" prior to "initiating a new collection of information" that "includes any information in an identifiable form permitting the physical or online contacting of a specific individual" if the information encompasses "10 or more persons." *Id.* § 208(b); *AFGE*, 786 F.Supp.3d at 665 n. 11. The Act's procedural requirements must be satisfied "*before* the agency initiates a new collection of information." *EPIC v. Presidential Advisory Comm'n on Election Integrity*, 266 F.Supp.3d 297, 311 (D.D.C. 2017) (emphasis in original). The voter registration

"information" contained in the NYSVoter List is subject to the Act. Pub. L. No. 107–347, § 208(b)(1)(A)(ii)(II). Yet DOJ fails to even cite the Act, let alone address the applicable requirements or allege that it has prepared the requisite privacy impact assessment  and satisfied other applicable procedures.

Finally, DOJ has failed to sufficiently allege its compliance with the Driver's Privacy Protection Act ("DPPA"). 18 U.S.C. § 2721 *et seq. See Reno v. Condon*, 528 U.S. 141, 143 (2000). The DPPA prohibits the disclosure of "personal information" obtained in connection with a "motor vehicle record." 18 U.S.C. § 2721(a)(1). The DPPA defines "personal information" to include, among other things, an individual's "social security number" and "driver identification number." 18 U.S.C. § 2725(3). DOJ's request for the "state driver's license number" unquestionably falls within this definition. Once again, the Complaint fails to address DOJ's compliance with the statute's provisions.

## II.    DOJ'S CLAIM UNDER THE CRA FAILS AS A MATTER OF LAW

DOJ invokes Title III of the CRA, a statute enacted during a period of widespread resistance to voting rights. Compl., ¶¶ 53-57. The CRA was thus "designed to secure a more effective protection of the right to vote." *State of Ala. ex rel. Gallion v. Rogers*, 187 F.Supp.848, 853 (M.D. Ala. 1960), *aff'd sub nom, Dinkens v. Att'y Gen. of U.S.*, 285 F.2d 430 (5th Cir. 1961); *Kennedy v. Lynd*, 306 F.2d 222, 231 n.6 (5th Cir. 1962) (Attorney General's demand was based upon information "tending to show that distinctions on the basis of race or color have been made with respect to registration and voting within your jurisdiction"); *U.S. v. Lynd*, 301 F.2d 818, 822 (5th Cir. 1962) (Attorney General was authorized to inspect county's voting records where there were "reasonable grounds for belief that certain voters are being discriminatorily denied their voting rights in a given county").

In particular, a 1959 report by the bipartisan Commission on Civil Rights emphasized that the Civil Rights Act of 1957, which was enacted to address alleged denials of the right to vote, had been thwarted by States' failure to produce or retain rejected voter applications and other registration records. *See* Ex. F, *Amicus Brief of 16 States, U.S. v. Weber*, No. 25-cv-09149 (C.D. Cal.), at 21-22 (citing *Report of the United States Commission on Civil Rights* (Sept. 9, 1959).[3] The Commission thus recommended that Congress require States to preserve and retain all registration and voting records so they could be inspected. *Id.* at 22-23. The legislative history of the CRA likewise demonstrates that it was intended to prevent discriminatory application of voter qualification rules. *Id.* at 23-24 (citing statement of Representative Emanuel Celler). *Cf. Nat'l Coal. on Black Civic Participation v. Wohl*, 498 F.Supp.3d 457, 475-76 (S.D.N.Y. 2020) (similarly emphasizing that CRA of 1960 was among the statutes intended to "vindicate the rights these [earlier voting rights] laws were meant to protect").

With this historical backdrop in mind, the CRA's primary purpose is preservative in nature. Accordingly, it requires state election officials to "retain and preserve, for a period of twenty-two months from the date of any" federal election, "all records and papers which come into [their] possession relating to any application, registration, payment of poll tax, or other act requisite to voting in such election[.]" 52 U.S.C. § 20701. As a means of ensuring states' compliance with their preservation obligations, the CRA authorizes the Attorney General to "demand in writing" that any of the "records and papers" referenced in § 20701 be "made available for inspection, reproduction, and copying at the principal office of such custodian by the Attorney General or his representative." 52 U.S.C. § 20703. However, the Attorney General does not have an absolute right to inspect and copy these records. Rather, the statute provides that the Attorney General may inspect and copy

---

[3] The State of New York was a signatory to the *amicus* brief in *Weber*.

records only where the demand is accompanied by a statement of the basis and purpose for the request. *Id.* ("demand *shall* contain a statement of the basis *and* the purpose therefor") (emphases added)).

DOJ's request for "all fields" in the NYSVoter List falls well short of satisfying its burden under § 20703. The Complaint cites DOJ's August 14, 2025 letter, which invoked the CRA for the first time. Compl., ¶ 46. Yet the letter merely proffered the conclusory assertion that "[t]he purpose of the request [under the CRA] is to ascertain New York's compliance with the list maintenance requirements of the NVRA and HAVA." Ex. B, at 2. The August 14 letter failed to provide any statutorily-required "basis" for believing that New York had failed to comply with any provisions of NVRA or HAVA. Nor did the letter even explain how the sensitive voter registration information contained in the unredacted NYSVoter List is germane to "ascertain[ing]" New York's compliance with either statute.

Moreover, the asserted "purpose" of DOJ's request is insufficient even on its own terms. DOJ does not argue that its intrusive request pertains to any pending or anticipated investigation relating to voting rights violations in New York. The decisions from the 1960s interpreting Title III of the Act further illustrate why the "purpose" of DOJ's request is wholly insufficient to justify its request. *Kennedy*, 306 F.3d at 231 n.6; *Lynd*, 301 F.2d at 822.

Instead, DOJ mistakenly contends that the CRA authorizes it to inspect millions of voter registration records to ascertain New York's compliance with *other* federal statutes. But nothing in the text of the CRA or its legislative history even suggests that § 20703 sweeps so broadly. *Kennedy*, 306 F.2d at 228 (inspection demand was based upon the "duties imposed upon [the Attorney General] by the Civil Rights Act of 1957 and 1960"). Indeed, the CRA was passed several decades *before* the enactment of NVRA and HAVA.

14

Finally, DOJ's request for the NYSVoter List in electronic format cannot be squared with the plain text of the CRA and its underlying purpose. The statute only mandates that covered records "be made available…at the principal office of such custodian." 52 U.S.C. § 20703. Accordingly, DOJ's demand is far beyond the scope of relief that the CRA authorizes.

## III.    DOJ's CLAIM UNDER NVRA FAILS AS A MATTER OF LAW

DOJ contends that NVRA, in addition to the CRA, justifies its request for the unredacted NYSVoter List. Compl., ¶¶ 22-31; 58-64. NVRA was enacted in 1993, and "erect[s] a complex superstructure of federal regulation atop state voter-registration systems." *Husted v. A. Philip Randolph Inst.*, 584 U.S. 756, 761 (2018) (cleaned up). Yet NVRA's "superstructure" does not displace the States' core prerogatives with respect to the regulation and administration of elections, including federal elections. *See, e.g., Arizona v. Inter Tribal Council of Ariz., Inc.*, 570 U.S. 1, 17 (2013) ("Prescribing voting qualifications…forms no part of the power to be conferred upon the national government by the Elections Clause[.]") (cleaned up); *Id.* at 38 (Alito, J., dissenting) ("The States…have the default authority to regulate federal voter registration.") (citing Art. I, § 4, cl. 1).

NVRA "has two main objectives: increasing voter registration and removing ineligible persons from the States' voter registration rolls." *Husted*, 584 U.S. at 761. To effectuate these objectives, NVRA "requires States to 'conduct a general program that makes a reasonable effort to remove the names' of voters who are ineligible 'by reason of' death or change in residence." *Id.* (quoting 52 U.S.C. § 20507(a)(4)). However, a state "need not . . . go to extravagant or excessive lengths in creating and maintaining such a program." *PILF v. Benson*, 136 F.4th 613, 625 (6th Cir. 2025) (cleaned up).

As the SBOE explained in the August 29, 2025 letter to DOJ, New York's Election Law and its implementing regulations mandate, among other things, the removal of duplicative registrations identified in the statewide voter registration system; removal of incarcerated felons and decedents from voter rolls; removal of voters that have moved to another state; and removal of voters from the voter rolls for any statutory reason. *Supra* at 3.[4]

DOJ nonetheless claims that New York has somehow "failed to provide the necessary information" for the Attorney General to determine if New York is satisfying the requirements of § 20507(a)(4). Compl., ¶ 60. Yet DOJ does not acknowledge the detailed information provided to them in the August 29, 2025 letter. Nor does DOJ otherwise suggest that New York's "general program" for "remov[ing] the names of ineligible voters" from the voter rolls is deficient under § 20507(a)(4), or why the unredacted voter file is necessary to assess compliance with NVRA.

DOJ instead points to NVRA's inspection provision in § 20507(i), which states that "[e]ach State shall maintain for at least 2 years and shall make available for public inspection and, where available, photocopying at a reasonable cost, all records concerning the implementation of programs and activities conducted for the purpose of ensuring the accuracy and currency of official lists of eligible voters[.]" Compl., ¶ 61. The records retained must include "lists of the names and addresses of all persons to whom [address confirmation] notices described in [52 U.S.C. § 20507(d)(2)] are sent, and "information concerning whether or not each such person has responded to the notice[.]" 52 U.S.C. § 20507(i)(2). DOJ asserts that the unredacted NYSVoter List is a "record" subject to § 20507(i). *Id.*, ¶ 62.

---

[4] The August 29 letter responded to DOJ's June 30 letter that invoked only HAVA. But the detailed information conveyed in the August 29 letter is also pertinent to New York's fulfilment of its obligations under NVRA.

DOJ's asserted justification is once again baseless. DOJ already has the ability to obtain the public version of the NYSVoter List subject to redactions, to the extent DOJ's purported justification for the NYSVoter List is to assess New York's compliance with provisions of NVRA and HAVA. Ex. D, at 1. DOJ's representation that the unredacted NYSVoter List is somehow needed to "prevent false positives in its review" (Compl., ¶ 49) is both dubious on its own and in no way justifies DOJ's demand for "all fields" in the unredacted NYSVoter List. And New York is under no obligation to provide an electronic version of the NYSVoter List in any case. *See Greater Birmingham Ministries v. Sec'y of State for Ala.*, 105 F.4th 1324, 1333-34 (11th Cir. 2024) ("'[P]ublic inspection' as used in the…[NVRA] does not include electronic disclosure…[t]he same goes for the Act's 'photocopying' provision—electronic production of a database does not fit there, either.").

Even if NVRA authorized the production of the NYSVoter List in electronic format—and it clearly does not—DOJ's demand for "all fields" is still unjustified under the Act. Indeed, courts have consistently interpreted NVRA to permit the redaction of highly sensitive voter registration information. *See, e.g., PILF v. Bellows*, 92 F.4th 36, 56 (1st Cir. 2024) ("[N]othing in the text of the NVRA prohibits the appropriate redaction of uniquely or highly sensitive personal information in the [state] Voter File."); *PILF v. v. N.C. State Bd. of Elections*, 996 F.3d 257, 266-67 (4th Cir. 2021) ("a district court can order redaction of uniquely sensitive information in otherwise disclosable documents" under NVRA) (cleaned up); *True the Vote v. Hosemann*, 43 F. Supp. 3d 693, 733 (S.D. Miss. 2014) ("all records" in NVRA "does not require automatic disclosure of all *information* within the covered records") (emphasis in original).

Thus, SSN and other fields can be appropriately redacted under the Act. *See Project Vote/Voting for Am., Inc. v. Long*, 752 F.Supp.2d 697, 711–12 (E.D. Va. 2010), *aff'd*, 682 F.3d 331

(4th Cir. 2012) (because "a SSN disclosure requirement potentially undermines the voter registration goals of the NVRA," any "voter registration application containing an applicant's SSN should be redacted"). Indeed, DOJ *itself* has previously acknowledged that NVRA does not prohibit the redaction of "uniquely sensitive information" such as SSNs. S*ee Brief for the United States as Amicus Curiae, PILF v. Bellows*, No. 23-1361 (1st Cir. July 25, 2024), 2023 WL 4882397 at *27–28. Although DOJ has now shifted its position without any explanation, DOJ's demand for "all fields" in the NYSVoter List remains unjustified pursuant to NVRA.

## IV.    DOJ'S CLAIM UNDER HAVA FAILS AS A MATTER OF LAW

As a third claimed statutory basis for requesting the unredacted NYSVoter List, DOJ claims an entitlement under HAVA, but this basis fares no better. HAVA was enacted in 2002, and requires states to "implement, in a uniform and nondiscriminatory manner, a single, uniform, official, centralized, interactive computerized statewide voter registration list" that "contains the name and registration information of every legally registered voter in the State" using a "unique identifier" for each registered voter. 52 U.S.C. § 21083(a)(1)(A). HAVA also requires that each State have a "system of file maintenance that makes reasonable effort to remove ineligible registrants" while implementing safeguards to prevent erroneous removals. *Id.* § 21083(a)(4).

As noted above, the SBOE's August 29, 2025 letter provided extensive information to DOJ concerning the State's compliance with HAVA. Ex. C. And yet DOJ once again contends that the letter somehow "fail[ed] to provide sufficient information" in response to DOJ's June 30 and August 14 letters. Compl., ¶ 67. DOJ claims that it needs the unredacted NYSVoter List to evaluate New York's compliance with two provisions of HAVA: that New York "ensures that…duplicate names are eliminated from the computerized list" pursuant to § 21083(a)(2)(B)(iii), and that New

York complies with the list maintenance requirements set forth in  § 21083(a)(5)(A). Compl.,¶¶ 68-69.

As with NVRA, DOJ does not proffer any substantiated basis to believe that New York has failed to satisfy these two statutory provisions of HAVA. *See* Ex. C at 1 (detailing New York's compliance with HAVA). DOJ is not entitled to the unredacted NYSVoter List in any case, as HAVA lacks any inspection provision at all. Indeed, the enactment of NVRA nine years before HAVA makes clear that Congress knows how to include a statutory provision for inspection and copying. DOJ's attempt to engraft such a provision onto HAVA is baseless.

Nor does the Attorney General's enforcement authority under HAVA open the door for DOJ's demand. HAVA merely confers upon the Attorney General the authority to bring a civil action "to carry out the uniform and nondiscriminatory election technology and administration requirements" under the Act. 52 U.S.C. § 21111. This language cannot be reasonably interpreted to encompass the electronic production of a state's unredacted voter registration database. *See Oklahoma v. Castro-Huerta*, 597 U.S. 629, 642 (2022).

## V.    THE STATE IS NOT THE PROPER PARTY FOR THE RELIEF SOUGHT BY DOJ

As discussed above, DOJ's request for the unredacted NYSVoter List should be denied as a matter of law, as DOJ cannot demonstrate its entitlement to this highly sensitive voter registration information under any of the claimed statutory bases. Nevertheless, as a practical matter, the State of New York, as a separate party, cannot provide the substantive relief sought. In particular, the Prayer For Relief requests an order for "Defendants to provide to the United States the current electronic copy of New York's statewide voter registration list, with all fields…" Prayer For Relief, ¶ (E).

But the State itself does not possess the NYSVoter List, electronically or otherwise. Indeed, New York State election law makes clear that the NYSVoter List "shall be in the custody" of the SBOE, and "administered and maintained" by that agency. *See* N.Y. Elec. Law § 5-614(1). The SBOE and its commissioners and co-executive directors are separate parties in this action. Accordingly, the State, separate from the SBOE, would have no ability to carry out DOJ's requested relief. Thus, DOJ's request for relief, to the extent it includes the State, is baseless.

## <u>CONCLUSION</u>

For the reasons set forth above, the State respectfully requests that the Court grant the State's motion, dismiss the Complaint with prejudice, together with such other and further relief as the Court deems just and proper.

Dated: New York, New York
　　　December 30, 2025

Respectfully submitted,
LETITIA JAMES
Attorney General
State of New York
By:

_____/s/_____
Yuval Rubinstein
Special Litigation Counsel
28 Liberty Street
New York, New York 10005
(212) 416-8673
yuval.rubinstein@ag.ny.gov
