# IN THE UNITED STATES DISTRICT COURT FOR THE
# NORTHERN DISTRICT OF NEW YORK

| | |
|---|---|
| UNITED STATES OF AMERICA, | |
| *Plaintiff*, | |
| *v.* | Case No. 1:25-cv-01338-MAD-PJE |
| BOARD OF ELECTIONS OF THE STATE OF NEW YORK, et al., | |
| *Defendants*. | |

## MEMORANDUM OF LAW IN SUPPORT OF THE NATIONAL ASSOCIATION FOR THE ADVANCEMENT OF COLORED PEOPLE'S AND THE NAACP NEW YORK STATE CONFERENCE'S PROPOSED MOTION TO DISMISS

## TABLE OF CONTENTS

TABLE OF AUTHORITIES .................................................................................................... ii

INTRODUCTION ............................................................................................................. 1

BACKGROUND .............................................................................................................. 2

    I.      Federal law has long made voter list maintenance a state responsibility, consistent with the constitutional separation of powers. ................................... 2

    II.     DOJ embarks on a nationwide crusade to collect voter data held by states. .................... 4

    III.    DOJ sues New York as part of its effort to create a national voter list. ......................... 5

LEGAL STANDARD ........................................................................................................ 7

ARGUMENT .................................................................................................................. 8

    I.      DOJ has not stated a claim entitling it to New York's statewide voter registration list. ........................................................................................... 8

          A.    The NVRA does not entitle DOJ to New York's full unredacted voter list ............. 8

          B.    HAVA does not entitle DOJ to New York's full unredacted voter list .................. 12

          C.    DOJ has not stated a claim to New York's full unredacted voter list under Title III of the Civil Rights Act of 1960 .................................................. 14

    II.     DOJ has not stated any other claim for relief. .................................................. 21

CONCLUSION ............................................................................................................. 22

# TABLE OF AUTHORITIES

**Cases:**

*Advoc. Health Care Network v. Stapleton,*
    581 U.S. 468 (2017)................................................................ 16, 17

*Alabama ex rel. Gallion v. Rogers,*
    187 F. Supp. 848 (M.D. Ala. 1960) ......................................... 7, 14

*Arizona v. Inter Tribal Council of Ariz., Inc.,*
    570 U.S. 1 (2013)......................................................................... 3

*Ashcroft v. Iqbal,*
    556 U.S. 662 (2009)..................................................................... 8

*Bell Atl. Corp. v. Twombly,*
    550 U.S. 544 (2007)................................................................ 8, 22

*CFPB v. Accrediting Council for Indep. Colls. & Schs.,*
    854 F.3d 683 (D.C. Cir. 2017)................................................... 18

*CFPB v. Source for Pub. Data, L.P.,*
    903 F.3d 456 (5th Cir. 2018) ..................................................... 18

*Common Cause/N.Y. v. Brehm,*
    344 F. Supp. 3d 542 (S.D.N.Y. 2018)....................................... 21

*Foster v. Love,*
    522 U.S. 67 (1997)....................................................................... 2

*Honeycutt v. United States,*
    581 U.S. 443 (2017)................................................................... 17

*Huddleston v. United States,*
    415 U.S. 814 (1974)................................................................... 17

*Husted v. A. Philip Randolph Inst.,*
    584 U.S. 756 (2018)................................................................. 3, 4

*In re Admin. Subpoena No. 25-1431-019,*
    No. 1:25-MC-91324-MJJ, 2025 WL 2607784 (D. Mass. Sep. 9, 2025) ......................... 20

*In re Subpoena No. 25-1341-014,*
    No. MC 25-39, 2025 WL 3252648 (E.D. Pa. Nov. 21, 2025)......................... 19

*In re Wallace*,
   170 F. Supp. 63 (M.D. Ala. 1959) ................................................................. 14

*Kennedy v. Braidwood Mgmt., Inc.*,
   606 U.S. 748 (2025)...................................................................................... 16

*Kennedy v. Lynd*,
   306 F.2d 222 (5th Cir. 1962) ......................................................... 7, 18, 19, 20

*Loughrin v. United States*,
   573 U.S. 351 (2014)...................................................................................... 16

*Lozano v. Montoya Alvarez*,
   572 U.S. 1 (2014)......................................................................................... 16

*McCloskey v. Mueller*,
   446 F.3d 262 (1st Cir. 2006)................................................................. 13, 22

*Prewett v. Weems*,
   749 F.3d 454 (6th Cir. 2024) ........................................................................ 17

*Project Vote, Inc. v. Kemp*,
   208 F. Supp. 3d 1320 (N.D. Ga. 2016) ......................................................... 11

*Project Vote/Voting for Am., Inc. v. Long*,
   682 F.3d 331 (4th Cir. 2012) ................................................................ 10, 11

*Project Vote/Voting for Am., Inc. v. Long*,
   752 F. Supp. 2d 697 (E.D. Va. 2010) .......................................................... 11

*Pub. Int. Legal Found. v. Chapman*,
   595 F. Supp. 3d 296 (M.D. Pa. 2022) ......................................................... 11

*Pub. Int. Legal Found. v. Sec'y Commonwealth of Pa.*,
   136 F.4th 456 (3d Cir. 2025) ................................................................ 10, 11

*Pub. Int. Legal Found., Inc. v. Bellows*,
   92 F.4th 36 (1st Cir. 2024)................................................................ *passim*

*Pub. Int. Legal Found., Inc. v. Matthews*,
   589 F. Supp. 3d 932 (C.D. Ill. 2022) .......................................................... 11

*Pub. Int. Legal Found., Inc. v. N.C. State Bd. of Elections*,
   996 F.3d 257 (4th Cir. 2021) ................................................................ 10, 11

*RNC v. N.C. State Bd. of Elections*,
    120 F.4th 390 (4th Cir. 2024) ....................................................................... 3

*True the Vote v. Hosemann*,
    43 F. Supp. 3d 693 (S.D. Miss. 2014)............................................................ 11

*United States v. Elias*,
    154 F.4th 56 (2d Cir. 2025) ............................................................................ 18

*United States v. New York*,
    700 F. Supp. 2d 186 (N.D.N.Y. 2010)........................................................... 22

*United States v. Ressam*,
    553 U.S. 272 (2008)........................................................................................ 17

*Voter Reference Found., LLC v. Torrez*,
    160 F.4th 1068 (10th Cir. 2025) ............................................................... 1, 10

*Waldron v. Cities Serv. Co.*,
    361 F.2d 671 (2d Cir. 1966)............................................................................ 13

*Watson Lab'ys, Inc. v. Forest Lab'ys, Inc.*,
    101 F.4th 223 (2d Cir. 2024) ...................................................................... 8, 22

*Williams v. Taylor*,
    529 U.S. 362 (2000)........................................................................................ 16

*Ysleta Del Sur Pueblo v. Texas*,
    596 U.S. 685 (2022)........................................................................................ 17

**Us Constitutional Provision:**

 U.S. Const. art I, § 4, cl. 1................................................................................. 2

**Statutes:**

5 U.S.C. § 55 ...................................................................................................... 20

6 U.S.C. § 1502.................................................................................................. 17

13 U.S.C. § 214.................................................................................................. 17

18 U.S.C. § 1709................................................................................................ 17

18 U.S.C. § 2721................................................................................................ 20

30 U.S.C. § 1732 ................................................................................................ 17

50 U.S.C. § 217 .................................................................................................. 17

52 U.S.C. § 20501 ................................................................................................ 3

52 U.S.C. § 20507 ....................................................................................... *passim*

52 U.S.C. § 20510 ......................................................................................... 21, 22

52 U.S.C. § 20701 ................................................................................... 14, 15, 16

52 U.S.C. § 20703 ......................................................................................... 15, 18

52 U.S.C. § 21083 ............................................................................... 3, 15, 20, 21

52 U.S.C. § 21111 ................................................................................... 7, 12, 21

Me. Stat. tit. 21-A, §196-A ................................................................................. 9

N.Y. Elec. Law § 3-220 ............................................................................... 1, 9, 20

**Regulation:**

11 C.F.R. § 9428.7 ............................................................................................ 21

**Federal Rule:**

Fed. R. Civ. P. 12 ............................................................................................... 7

**Other Authorities:**

Brief for the United States as Amicus Curiae in Support of Plaintiff-Appellee, *Pub. Int. Legal Found., Inc. v. Bellows*, 92 F.4th 36 (No. 23-1361), 2023 WL 4882397 ................ 9

Brief for the United States as Amicus Curiae, *Project Vote/Voting for Am., Inc. v. Long*, 682 F.3d 331 (No. 11-1809), 2011 WL 4947283 ......................................... 9–10

Brief for the United States as Amicus Curiae in Support of Plaintiff-Appellee, *Pub. Int. Legal Found. v. Sec'y Commonwealth of Pa.*, 136 F.4th 456 (3d Cir. 2025) (Nos. 23-1590, 23-1591), 2023 WL 7486717 ................................................. 10

*Come into possession*, Cambridge Dictionary, https://dictionary.cambridge.org/us/thesaurus/come-into-possession-of (last visited Dec. 30, 2025) ............................................................................... 16

Devlin Barrett & Nick Corasaniti, *Trump Administration Quietly Seeks to Build National Voter Roll*, N.Y. Times (Sep. 9, 2025), https://www.nytimes.com/2025/09/09/us/politics/trump-voter-registration-data.html [https://perma.cc/8VP4-WRXD] ...................................................................... 4

Kaylie Martinez-Ochoa, Eileen O'Connor, & Patrick Berry, *Tracker of Justice Department Requests for Voter Information*, Brennan Ctr. for Just. (Dec. 19, 2025), https://www.brennancenter.org/our-work/research-reports/tracker-justice-department-requests-voter-information [https://perma.cc/966Z-NS7S] ................ 4

*Random House Dictionary of the English Language* 995 (1966)................................................. 17

*Receive*, *Black's Law Dictionary* (12th ed. 2024) ...................................................................... 15

Video posted by AAG Harmeet Dhillon (@AAGHarmeetDhillon), X (Dec. 18, 2025, at 9:24 ET), https://x.com/AAGDhillon/status/2001659823335616795 ........................... 5

*Webster's New International Dictionary* (3d ed. 1966)................................................................. 18

## INTRODUCTION

The United States Department of Justice ("DOJ") seeks to build a nationwide voter registration list, a scheme not authorized by Congress and contrary to federal laws assigning states the responsibility for maintaining voter registration. To accomplish this task, DOJ has demanded that dozens of states turn over their full, unredacted voter lists, even though state laws often shield voter information on those lists—most notably driver's license numbers, partial social security numbers, dates of birth, and signatures—from disclosure. New York law is no exception: it guarantees voters that their personal information—such as driver's license numbers and social security numbers—"shall not be released for public inspection" and shall be accessible solely to designated *state* election officials. N.Y. Elec. Law § 3-220(1).

When New York refused to comply with DOJ's demands, DOJ amplified its pressure campaign by filing suit to forcibly obtain the state's voter registration list. Its Complaint cites three purported authorities in support of its demand—the National Voter Registration Act ("NVRA"), the Help America Vote Act ("HAVA"), and Title III of the Civil Rights Act of 1960—but none require the production of New York's unredacted voter registration list. The NVRA does not sanction what DOJ wants because courts have broadly held that "nothing in the text of the NVRA prohibits the appropriate redaction of uniquely or highly sensitive personal information in . . . [v]oter [f]ile[s]." *Pub. Int. Legal Found., Inc. v. Bellows*, 92 F.4th 36, 56 (1st Cir. 2024) ("*PILF*"); *see also Voter Reference Found., LLC v. Torrez*, 160 F.4th 1068, 1083 n.14 (10th Cir. 2025) (similar). HAVA does not contain *any* disclosure provision, so that too fails as a basis for DOJ's demand. Finally, the Civil Rights Act also fails to support DOJ's claim because its demand falls outside the plain text of the statute and is also not supported by an adequate basis or purpose, as the law demands. Moreover, as with the NVRA, nothing in Title III's text prevents states from redacting the sensitive voter information DOJ seeks.

Despite having now filed similar suits against over 20 states, DOJ has yet to identify a single instance where the statutes it cites have ever been used to obtain the sort of sensitive voter information that it now demands. The reasons why are clear: not only is DOJ's gambit without precedent, it runs directly contrary to the decentralized structure of our federal electoral system. *See, e.g.*, U.S. Const. art. I, § 4, cl. 1 (granting the States principal authority over congressional elections). When enacting HAVA after the contested 2000 election, Congress stressed that the power to administer elections must remain primarily with the states because the "dispersal of responsibility for election administration has made it impossible for a single centrally controlled authority to dictate how elections will be run and thereby be able to control the outcome." H.R. Rep. No. 107-329, pt. 1, at 32 (2001). DOJ's attempt to amass voter data at the federal level flies in the face of this stark warning. Notably, in its most recent tranche of lawsuits seeking similar voter data from other states, DOJ has abandoned its NVRA and HAVA claims, relying solely on Title III of the Civil Rights Act. But DOJ's attempt to assert sweeping federal authority over the management of federal elections is not supported by that provision either.

In sum, because DOJ's demand is not only unsupported by law but entirely antithetical to the carefully designed system of American elections as reflected by the Constitution, federal law, and the states' rightful administration of their own elections, the Court should dismiss the Complaint with prejudice under Rule 12(b)(6) for failure to state a claim.

## BACKGROUND

**I.    Federal law has long made voter list maintenance a state responsibility, consistent with the constitutional separation of powers.**

The U.S. Constitution "invests the States with responsibility for the mechanics" of elections, subject to any decision by Congress to "preempt state legislative choices." *Foster v. Love*, 522 U.S. 67, 69 (1997); *see also* U.S. Const. art. I, § 4, cl. 1. Accordingly, as a default matter,

the Constitution assigns *states* the responsibility for determining voter eligibility and maintaining lists of eligible voters. *See Arizona v. Inter Tribal Council of Ariz., Inc.*, 570 U.S. 1, 17 (2013).

While Congress has enacted certain laws governing voter registration, these laws augment existing "state voter-registration systems," *id.* at 5, and confirm that states are the custodians of voter registration data. As relevant here, Congress enacted the NVRA in 1993 to serve "two main objectives: increasing voter registration and removing ineligible persons from the States' voter registration rolls." *Husted v. A. Philip Randolph Inst.*, 584 U.S. 756, 761 (2018); *see also* 52 U.S.C. § 20501(b). The law charges *states*—not the federal government—with the "administration of voter registration for elections for Federal office," 52 U.S.C. § 20507(a), including as to maintaining voter lists (subject to strict safeguards), *id.* § 20507(c)–(g). It similarly makes *states* the custodians of voter lists. *See Husted*, 584 U.S. at 761.

In the wake of the 2000 elections, Congress enacted HAVA "to improve voting systems and voter access." *RNC v. N.C. State Bd. of Elections*, 120 F.4th 390, 394 (4th Cir. 2024). HAVA regulates how states maintain their voter rolls, requiring them to create a "computerized statewide voter registration list." 52 U.S.C. § 21083(a)(1). It also requires states to "perform list maintenance" consistent with the NVRA. *Id.* § 21083(a)(2). HAVA is abundantly clear that this list is to be "defined, maintained, and administered *at the State level*." *Id.* § 21083(a)(1)(A) (emphasis added). Indeed, HAVA's legislative history stressed the importance of maintaining our decentralized electoral system to preserving liberty:

> Historically, elections in this country have been administered at the state and local level. This system has many benefits that must be preserved. The dispersal of responsibility for election administration has made it impossible for a single centrally controlled authority to dictate how elections will be run, and thereby be able to control the outcome. This leaves the power and responsibility for running elections where it should be, in the hands of the citizens of this country.

H.R. Rep. No. 107-329, pt. 1, at 31–32.

Consistent with that principle, neither the NVRA nor HAVA tasks the federal government with compiling a federal national voter registration list. Congress has traditionally "left it up to the States to maintain accurate lists of those eligible to vote in federal elections," *Husted*, 584 U.S. at 761, subject only to the specific requirements of the NVRA and HAVA, which purposefully operate through the states themselves.

## II.    DOJ embarks on a nationwide crusade to collect voter data held by states.

In spring 2025, DOJ launched a campaign, demanding broad and unprecedented access to state voter files, including personal information about each registered voter. To date, DOJ has sent demands to more than forty states with plans to make similar demands on all fifty.[1] The vast majority of states that have received such demands—regardless of their officials' political party affiliation—have refused to comply, declining to turn over sensitive personal information that is typically protected by state law.[2] DOJ seeks to use the data to create a national voter database that will, in turn, be used in an attempt to substantiate President Trump's unfounded accusations that millions of non-citizens have voted illegally in recent elections.[3] Moreover, Assistant Attorney

---

[1] *See* Kaylie Martinez-Ochoa, Eileen O'Connor, & Patrick Berry, *Tracker of Justice Department Requests for Voter Information*, Brennan Ctr. for Just. (Dec. 5, 2025), https://www.brennancenter.org/our-work/research-reports/tracker-justice-department-requests-voter-information [https://perma.cc/966Z-NS7S]; Devlin Barrett & Nick Corasaniti, *Trump Administration Quietly Seeks to Build National Voter Roll*, N.Y. Times (Sep. 9, 2025), https://www.nytimes.com/2025/09/09/us/politics/trump-voter-registration-data.html [https://perma.cc/8VP4-WRXD].

[2] *See* Martinez-Ochoa, O'Connor, & Berry, *supra* note 1 (seven states have given DOJ everything it sought: Arkansas, Indiana, Kansas, Louisiana, Mississippi, Tennessee, and Wyoming).

[3] *See* Barrett & Corasaniti, *supra* note 1.

General Harmeet Dhillon recently admitted in an interview regarding these lawsuits: "You're going to see hundreds of thousands of people in some states being removed from the voter rolls."[4]

DOJ sent New York a letter on June 30, 2025, demanding, among other things, New York's "[s]tatewide voter registration list." Compl. ¶¶ 42–43. DOJ reiterated its requests on August 14, *id.* ¶ 45, demanding that New York produce its entire computerized statewide voter registration list, "with all fields, including each registrant's full name, date of birth, residential address, their state driver's license number, and the last four digits of their Social Security number," *id.* ¶ 46. New York responded on August 29, sharing only the public version of its statewide voter registration list. *Id.* ¶ 48. The Complaint, which does not attach the relevant correspondence, indicates a partisan split between the State Board of Election's Democratic and Republican members, with the latter urging production of the complete, unredacted list. *Id.*

## III.    **DOJ sues New York as part of its effort to create a national voter list.**

DOJ filed this suit on September 25, seeking to compel New York to provide its full statewide voter registration list. *Id.* ¶ 7. It named the State of New York, the bipartisan State Board of Elections, and each of the State Board's members—Democratic and Republican alike—as Defendants. *See id.* ¶¶ 11–18. As noted, DOJ cited three federal statutes to justify its claims: the NVRA, HAVA, and the Civil Rights Act of 1960. *Id.* ¶ 1. The same day that DOJ sued New York, it filed nearly identical lawsuits against California, Michigan, Minnesota, New Hampshire, and

---

[4] Video posted by AAG Harmeet Dhillon (@AAGHarmeetDhillon), X (Dec. 18, 2025, at 9:24 ET), https://x.com/AAGDhillon/status/2001659823335616795.

Pennsylvania.[5] These lawsuits followed two others filed against Maine and Oregon days earlier.[6] Since that time, DOJ has sued another thirteen states—Colorado, Delaware, Georgia, Hawaii, Illinois, Maryland, Massachusetts, Nevada, New Mexico, Rhode Island, Vermont, Washington, and Wisconsin—as well as the District of Columbia, similarly demanding their unredacted and complete voter registration lists.[7]

Although the NVRA requires states to allow public inspection of certain records, 52 U.S.C. § 20507(i)(1), courts have consistently held that "nothing in the text of the NVRA prohibits the appropriate redaction of uniquely or highly sensitive personal information in" those records, such as driver's license numbers, partial social security numbers, and dates of birth. *PILF*, 92 F.4th at 56 (collecting cases). And unlike the NVRA, HAVA has no disclosure provisions whatsoever— DOJ's Complaint cites no case law or other authority for the novel proposition that the mere existence of DOJ's authority to enforce HAVA's "uniform and nondiscriminatory" requirements

---

[5] *See* Compl., *United States v. Weber*, No. 25-cv-09149 (C.D. Cal. Sep. 25, 2025); Compl., *United States v. Benson*, No. 25-cv-1148 (W.D. Mich. Sep. 25, 2025); Compl., *United States v. Simon*, No. 25-cv-3761 (D. Minn. Sep. 25, 2025); Compl., *United States v. Scanlan*, No. 25-cv-371 (D.N.H. Sep. 25, 2025); Compl., *United States v. Pennsylvania*, No. 25-cv-1481 (W.D. Pa. Sep. 25, 2025).

[6] *See* Compl., *United States v. Bellows*, No. 25-cv-468 (D. Me. Sep. 16, 2025); Compl., *United States v. Oregon*, No. 25-cv-1666 (D. Or. Sep. 16, 2025).

[7] *See* Compl., *United States v. Albence*, No. 25-cv-01453 (D. Del. Dec. 2, 2025); Compl., *United States v. DeMarinis*, No. 25-cv-03934 (D. Md. Dec. 1, 2025); Compl., *United States v. Oliver*, No. 25-cv-1193 (D.N.M. Dec. 2, 2025); Compl., *United States v. Amore*, No. 25-cv-00629 (D.R.I. Dec. 2, 2025); Compl., *United States v. Hanzas*, No. 25-cv-903 (D. Vt. Dec. 2, 2025); Compl., *United States v. Hobbs*, No. 25-cv-6078 (W.D. Wash. Dec. 2, 2025); Compl., *United States v. Griswold*, No. 25-cv-03967 (D. Colo. Dec. 12, 2025); Compl., *United States v. Nago*, No. 25-cv-00522 (D. Haw. Dec. 12, 2025); Compl., *United States v. Galvin*, No. 25-cv-13816 (D. Mass. Dec. 12, 2025); Compl., *United States v. Aguilar*, No. 25-cv-00728 (D. Nev. Dec. 2, 2025); Compl., *United States v. D.C. Bd. of Elections*, No. 25-cv-04403 (D.D.C. Dec. 18, 2025); Compl., *United States v. Raffensperger*, No. 25-cv-00548 (M.D. Ga. Dec. 18, 2025); Compl., *United States v. Matthews*, No. 25-cv-03398 (C.D. Ill. Dec. 18, 2025); Compl., *United States v. Wis. Elections Comm'n*, No. 25-cv-1036 (W.D. Wis. Dec. 18, 2025).

entitles it to unfettered access to state voter registration lists upon demand. 52 U.S.C. § 21111. Perhaps recognizing that nothing in these laws authorizes its demand, DOJ has jettisoned its NVRA and HAVA claims in the fourteen latest lawsuits it has filed against New York's sister states, asserting instead only a single claim under the Civil Rights Act of 1960 in those cases.[8]

Finally, DOJ invokes Title III of the Civil Rights Act of 1960, a long dormant Civil Rights-era law that permits DOJ to review certain voting records to investigate "question[s] concerning infringement or denial of . . . constitutional voting rights." *Kennedy v. Lynd*, 306 F.2d 222, 228 (5th Cir. 1962). Congress enacted the law to preserve "the right of all qualified citizens to vote without discrimination on account of race," and specifically to facilitate "investigation[s]" authorized under the Civil Rights Act of 1957, which recalcitrant local officials had frustrated through the destruction of records. H.R. Rep. No. 86-956, at 1944 (1959). This history "leaves no doubt but that [Section 303] is designed to secure a more effective protection of the right to vote." *Alabama ex rel. Gallion v. Rogers*, 187 F. Supp. 848, 853 (M.D. Ala. 1960), *aff'd sub nom. Dinkens v. Att'y Gen. of U.S.*, 285 F.2d 430 (5th Cir. 1961). In short, rather than facilitating the exclusion of voters, the provision exists to ensure a greater number of persons are allowed to vote. DOJ admits that is not its purpose here; rather it claims to be evaluating New York's list maintenance efforts under the NVRA and HAVA—statutes with their own separate disclosure rules (under the NVRA specifically) and enforcement mechanisms.

## LEGAL STANDARD

A complaint must be dismissed where it "fail[s] to state a claim upon which relief can be granted." Fed. R. Civ. P. 12(b)(6). At the motion-to-dismiss stage, the Court "must accept as true all of the allegations contained in a complaint" but need not accept the complaint's "legal

---

[8] *See supra* note 7.

conclusions." *Ashcroft v. Iqbal*, 556 U.S. 662, 678 (2009). "Threadbare recitals of the elements of

a cause of action, supported by mere conclusory statements, do not suffice." *Id.* "Mere 'labels and

conclusions' are insufficient." *Watson Lab'ys, Inc. v. Forest Lab'ys, Inc.*, 101 F.4th 223, 235 (2d

Cir. 2024) (quoting *Bell Atl. Corp. v. Twombly*, 550 U.S. 544, 555 (2007)).

## ARGUMENT

While far from clear, the Complaint appears to seek only one form of relief: the compelled

disclosure of New York's full, unredacted statewide voter list. Compl. at 17–18, Prayer for Relief,

¶ E. DOJ cites three statutes to justify this demand: (1) the NVRA; (2) HAVA; and (3) the Civil

Rights Act of 1960. *Id.* ¶¶ 1–7, 10–11, 19–41, 45, 53–70. But none of these laws supply any

recognizable basis for releasing sensitive voter data protected by state and federal privacy laws.

DOJ also vaguely seeks declaratory relief stating that New York has not made available certain

"list maintenance records" under the NVRA and HAVA. *See id.* at 17, Prayer for Relief, ¶¶ B–C.

But this request for relief is also unsupported by any plausibly alleged claim, not least of all

because DOJ fails to even identify what list maintenance records it is purportedly entitled to and

which New York has refused to provide it.

## I.    DOJ has not stated a claim entitling it to New York's statewide voter registration list.

### A.    The NVRA does not entitle DOJ to New York's full unredacted voter list.

DOJ points to the NVRA to support its demand for New York's unredacted voter list, *id.*

¶¶ 1–2, 5, 7, 10–11, 18, 22–31, 45, 49, 58–64, but that law cannot sustain the weight DOJ puts on

it. The NVRA requires that each state "maintain for at least 2 years and . . . make available for

public inspection . . . all records concerning the implementation of programs and activities

conducted for the purpose of ensuring the accuracy and currency of official lists of eligible voters."

52 U.S.C. § 20507(i)(1). This "public inspection" requirement is the sole disclosure provision in

the NVRA, and, by its terms, it does not grant the federal government special inspection rights

beyond those available to any general member of the public. Moreover, courts across the country have squarely rejected the notion that the public inspection provision obligates states to provide *every* piece of information stored in covered records—up to and including highly sensitive personal information contained within those files. Instead, courts have recognized that nothing in the NVRA's text prohibits states from redacting sensitive voter information before disclosure and that doing so does not violate that federal law.

As a recent example, in *PILF*, the First Circuit heard a challenge to a Maine law that made a limited version of the state's voter registration list available for purchase but also restricted the use and publication of that list by purchasers. 92 F.4th at 43–44 (citing Me. Stat. tit. 21-A, § 196-A(1)(J)(1)–(2)). The court held that while the voter registration list was a "record" covered by Section 20507(i) and therefore subject to public inspection, *see id.* at 45–49, "nothing in the text of the NVRA prohibits the appropriate redaction of uniquely or highly sensitive personal information in" such voter files. *Id.* at 56; *see also id.* (citing with approval decisions recognizing that states could redact information such as birthdates and Social Security numbers). Accordingly, the First Circuit recognized that the "proper redaction of certain personal information" in statewide voter registration lists could "assuage the potential privacy risks implicated by the public release of the [v]oter [list]." *Id.* In so holding, the First Circuit effectively recognized that the NVRA's public inspection provisions did not preempt or circumvent the Maine legislature's lawfully enacted privacy requirements, which largely parallel New York's protections and prohibit disclosure of the highly sensitive personal information that DOJ seeks. *Compare, e.g.*, Me. Stat. tit. 21-A, § 196-A(1)(K), *with* N.Y. Elec. Law § 3-220(1).

That conclusion should come as no surprise to DOJ—it filed an amicus brief in *PILF* urging the First Circuit to reach that result. *See* Brief for the United States as Amicus Curiae in Support

9

of Plaintiff-Appellee at 27–30, *PILF*, 92 F.4th 36 (No. 23-1361), 2023 WL 4882397. While the DOJ opposed Maine's argument that it could place broad limitations on a requester's ability to use and publish the voter registration list, DOJ recognized that the state's "privacy concerns" were "substantial." *Id.* at 27. To that end, its brief "emphasize[d] the limits on [Section 20507(i)'s] preemptive scope." *Id.* Most notably, it conceded that "*the NVRA does not prohibit States from redacting 'uniquely sensitive information' like voters' Social Security Numbers before disclosing records.*" *Id.* (emphasis added) (citing *Project Vote/Voting for Am., Inc. v. Long*, 682 F.3d 331, 339 (4th Cir. 2012)). And it further conceded that the NVRA does not "prohibit [states from] redacting an even broader set of personal information in certain sensitive circumstances." *Id.* (citing *Pub. Int. Legal Found., Inc. v. N.C. State Bd. of Elections*, 996 F.3d 257, 267 (4th Cir. 2021)); *see also* Brief for the United States as Amicus Curiae in Support of Plaintiff-Appellee at 28–29, *Pub. Int. Legal Found. v. Sec'y Commonwealth of Pa.*, 136 F.4th 456 (3d Cir. 2025) (Nos. 23-1590, 23-1591), 2023 WL 7486717 (similar). DOJ made similar arguments more than a decade earlier. *See* Brief for the United States as Amicus Curiae at 11, 25–26, *Project Vote/Voting for Am.*, 682 F.3d 331 (No. 11-1809), 2011 WL 4947283. Perhaps recognizing that its earlier, longstanding view was correct, DOJ has omitted NVRA claims in its most recent suits seeking similar relief from several other states.[9] Its insistence in this case that the NVRA requires New York to produce an entirely unredacted voter registration list reflects an unexplained reversal of its longstanding (and correct) view of federal law.

    *PILF* itself is merely one example of a court holding that the NVRA permits states to redact sensitive voter information—many other courts have reached the same conclusion. *See Voter Reference Found.*, 160 F.4th at 1083 n.14 (agreeing with holding in *PILF* that nothing in the text

---

[9] *See supra* note 7.

of the NVRA prohibits redacting information from voter lists); *Project Vote*, 682 F.3d at 339 (affirming district court order to redact social security numbers before disclosure under NVRA); *N.C. State Bd. of Elections*, 996 F.3d at 268 (recognizing that the NVRA permits redactions to "protect sensitive information"); *Pub. Int. Legal Found. v. Chapman*, 595 F. Supp. 3d 296, 306 (M.D. Pa. 2022) (permitting redactions for "personal information" under NVRA), *vacated on other grounds sub nom. Sec'y Commonwealth of Pa.*, 136 F.4th 456 (reversing on standing); *Pub. Int. Legal Found., Inc. v. Matthews*, 589 F. Supp. 3d 932, 942 (C.D. Ill. 2022) (holding the NVRA permits "proper redaction of highly sensitive information"); *Project Vote, Inc. v. Kemp*, 208 F. Supp. 3d 1320, 1344 (N.D. Ga. 2016) (holding the NVRA "does not require the disclosure of sensitive information that implicates special privacy concerns," including telephone numbers, partial social security numbers, partial email addresses, and birth dates); *True the Vote v. Hosemann*, 43 F. Supp. 3d 693, 739 (S.D. Miss. 2014) (holding the NVRA "does not require the disclosure of unredacted voter registration documents, including voter registrant birthdates"); *Project Vote/Voting for Am., Inc. v. Long*, 752 F. Supp. 2d 697, 711 (E.D. Va. 2010) (holding the NVRA permits redacting social security numbers). Although the Second Circuit has yet to decide this issue, the broad and uniform precedent from multiple courts across the country reaffirms that the NVRA does not grant the invasive authority that DOJ claims here. This Court should follow suit.

To hold otherwise would have striking privacy implications. As noted, the NVRA's public inspection provides no special disclosure rights to the federal government. *See generally* 52 U.S.C. § 20507. Thus, any right that DOJ may have to request inspection of records under Section 20507(i) is a right that is equally shared by the public. If, as DOJ claims, federal officials enjoy the right under a Section 20507(i) to demand the complete unredacted voter registration list, then

any member of the public could do the same—nothing in the NVRA's text provides a basis for distinguishing the scope of the public inspection provision based on the identity of the requestor. Accepting DOJ's theory would therefore not only clash with widespread and uniform precedent, it would also work a radical and unexpected harm to voter privacy, allowing any person to demand the driver's license numbers, signatures, and partial social security numbers of every registered voter. There is no reason for the Court to depart from the judicial consensus about the scope of the NVRA and jeopardize the privacy rights of millions of registered voters.

**B.    HAVA does not entitle DOJ to New York's full unredacted voter list.**

DOJ points to HAVA as another basis for relief, but that statute also does not support its demand. In fact, HAVA contains no disclosure provision *at all*. The Complaint does not cite any authority to the contrary, relying instead upon a provision permitting the Attorney General to file suit "as may be necessary to carry out the uniform and nondiscriminatory election technology and administration requirements" of HAVA. 52 U.S.C. § 21111; *see also* Compl. ¶¶ 8, 10, 40, 67. But the underlying statutory provisions DOJ may enforce through Section 21111 say nothing about states being obliged to turn over their voter registration lists to DOJ at its demand. To the contrary, the sole underlying provision concerning voter registration affirms that voter registration lists must be "maintained" and "administered at the State level"—not the federal government. *Id.* § 21083(a)(1)(A); *see also* H.R. Rep. No. 107-329, pt. 1, at 32, 36 (emphasizing that "local control must be preserved" under HAVA and voter registration databases should be "administered at the state level"). Nothing in HAVA provides any basis for DOJ to compel the disclosure of information that the Constitution and federal law both instruct to be administered by states.

Further, it would defy logic to conclude that HAVA implicitly authorizes, let alone *requires*, states to disclose all voter information, including sensitive and personal information protected by state law. Since the NVRA—which has an actual public disclosure provision—

permits states to redact sensitive and personal voter information, HAVA—which does not contain *any* disclosure requirement—cannot somehow be read to have broader preemptive effect on state privacy laws than the NVRA. And the mere fact that HAVA grants the Attorney General a cause of action to enforce HAVA's substantive requirements changes nothing because the statute imposes no obligation on states to disclose records to the federal government. Unsurprisingly, DOJ has chosen not to file any claims arising under HAVA in its most recent litigation against Colorado, Delaware, Georgia, Hawaii, Illinois, Maryland, Massachusetts, Nevada, New Mexico, Rhode Island, Vermont, Washington, Wisconsin, and the District of Columbia.[10]

Nor can DOJ try to backdoor its demand for New York's full voter file through discovery (which in any event has not yet occurred in this case). DOJ makes no allegation whatsoever in the Complaint that New York has violated HAVA's substantive requirements—indeed, it concedes that it has not yet even made an assessment of New York's compliance with HAVA. *See* Compl. ¶¶ 7, 69. It therefore has no basis to seek the full voter file as discovery in support of unpled claim. The federal government, as much as any litigant, is not permitted to "conduct fishing expeditions in hopes of discovering claims that they do not know they have." *McCloskey v. Mueller*, 446 F.3d 262, 271 (1st Cir. 2006); *cf. Waldron v. Cities Serv. Co.*, 361 F.2d 671, 673 (2d Cir. 1966) (affirming denial of motion for further discovery "by which plaintiff sought to engage in . . . 'fishing expedition' in the hope that he could come up with some tenable cause of action"), *aff'd sub nom. First Nat'l Bank of Ariz. v. Cities Serv. Co.*, 391 U.S. 253 (1968).

---

[10] *See supra* note 7.

**C.      DOJ has not stated a claim to New York's full unredacted voter list under Title III of the Civil Rights Act of 1960.**

In its final effort to justify its disclosure demand, DOJ dusts off Title III of the Civil Rights Act of 1960, a law passed in the civil rights era to combat racial discrimination in voting in Jim Crow states. *See* 52 U.S.C. § 20701. As with the NVRA and HAVA, however, Title III does not support DOJ's demands.

**1.      Title III was designed to combat the denial of voting rights based on race.**

Congress enacted Title III to buttress DOJ's enforcement and protection of voting rights. *See* H.R. Rep. No. 86-956, at 3 (finding that while "some progress" has been made since the Civil Rights Act of 1957, there was a "need for additional legislation to implement the enforcement of civil rights"); *Rogers*, 187 F. Supp. at 853 ("The legislative history leaves no doubt but that [Title III] is designed to secure a more effective protection of the right to vote."). Congress found that DOJ's efforts to enforce the right to vote were stymied by "the refusal of some state and local authority to permit" inspection of voter registration records. H.R. Rep. No. 86-956, at 7. Specifically, DOJ had "no existing power in civil proceedings to require the production of records during any investigation." *Id.* Congress found that without granting DOJ a "suitable provision for access to voting records during the course of an investigation," its ability to protect the right to vote was "rendered relatively ineffective." *Id.* (explaining Title III is "an essential step in the process of enforcing and protecting the right to vote regardless of color, race, religion, or national origin" (quoting *In re Wallace*, 170 F. Supp. 63, 67 (M.D. Ala. 1959))).

Title III has two relevant parts. First, Section 301 requires election officials to retain for twenty-two months "all records and papers which come into [their] possession relating to any application, registration, payment of poll tax, or other act requisite to voting in such election." 52 U.S.C. § 20701. Next, Section 303 requires election officials to make records covered by

Section 301 available for inspection by the Attorney General upon receiving a "demand . . . contain[ing] a statement of the basis and the purpose" for the inspection. *Id.* § 20703.

### 2. By its plain text, Title III does not cover New York's internally created statewide voter registration list.

Title III is an inapt tool for obtaining statewide voter registration lists—records that oftentimes did not even exist prior to enactment of HAVA, which first tasked states in 2002 with creating "a single, uniform, official, centralized, interactive computerized statewide voter registration list." 52 U.S.C. § 21083(a)(1)(A). And even then, Congress made clear in HAVA that the list was to be maintained "at the State level." *Id.*; *see also* H.R. Rep. No. 107-329, pt. 1, at 31–32 (stressing the importance of maintaining "the dispersal of responsibility for election administration," to make it "impossible for a single centrally controlled authority to dictate how elections will be run, and thereby be able to control the outcome"). DOJ's present effort to reverse HAVA's purposeful dispersal of responsibility and to instead centralize voter lists with the federal government thus runs headlong into congressional intent. That effort finds no support in Title III, which simply was not designed to grant DOJ access to state computer databases that would not exist until decades after Title III was enacted.

The first problem with DOJ's effort to invoke Title III is that, by its plain terms, Title III permits DOJ to access records that "come into [the] possession" of election officials relating to a voter "application, registration, payment of poll tax, or other act requisite to voting." 52 U.S.C. § 20701. To "come into possession" of something means to receive or acquire it from someone else. *See, e.g.*, *Receive*, *Black's Law Dictionary* (12th ed. 2024) (defining "receive" as "to come into possession of or get from some outside source"); *Come into possession*, Cambridge Dictionary

(listing synonyms of "come into possession" as "obtain," "acquire," and "receive").[11] Here, DOJ seeks New York's "computerized statewide voter registration list," Compl. ¶¶ 46, 55—an internal database *created* by New York election officials. *See also PILF*, 92 F.4th at 42 (noting election officials "generate" the voter registration list from its central voter registration system, which it "created" pursuant to HAVA). Simply put, DOJ does not seek a record—like a registration application—that "c[a]me into [the] possession" of New York officials. 52 U.S.C. § 20701. It seeks an unredacted copy of an internal database created by the states pursuant to a different federal statute, and that statute has no disclosure provisions. *See supra* Section I.B. It thus requires significant rewriting of federal law to conclude that Title III authorizes DOJ's demand here.

The "cardinal principle" of statutory interpretation is "that courts must give effect, if possible, to every clause and word of a statute." *Loughrin v. United States*, 573 U.S. 351, 358 (2014) (internal quotation marks omitted) (quoting *Williams v. Taylor*, 529 U.S. 362, 404 (2000)). Congress's choice to draft Title III to specifically reach only records and papers that "come into [the] possession" of election officials must be accorded respect and given its plain meaning. To do otherwise would "nullify Congress's purposeful choice of language." *Kennedy v. Braidwood Mgmt., Inc.*, 606 U.S. 748, 773 (2025). That is particularly so since Congress "did not adopt 'obvious alternative' language," *Advoc. Health Care Network v. Stapleton*, 581 U.S. 468, 477 (2017) (quoting *Lozano v. Montoya Alvarez*, 572 U.S. 1, 16 (2014)), such as "all papers and records *in the possession*" of election officials, rather than merely those that "come" into the possession of such officials. Congress's choice to adopt the latter formulation carries "the natural implication

---

[11] Available at https://dictionary.cambridge.org/us/thesaurus/come-into-possession-of (last visited Dec. 30, 2025).

. . . that they did not intend the alternative." *Id.* (internal quotation marks omitted) (citation omitted).

Indeed, Congress frequently employs the phrase "in the possession of" when it means to do so. *See, e.g.*, 30 U.S.C. § 1732(b); 6 U.S.C. § 1502(a). In the comparatively few instances where Congress has employed the phrase "come into his possession," it has done so in contexts where, as here, it was referring to materials that an individual or entity received from an outside source. *See, e.g.*, 18 U.S.C. § 1709 (similarly prohibiting a postal employee from stealing postal material that "comes into his possession"); 50 U.S.C. § 217 (requiring a solider to turn over captured or abandoned property that "comes into his possession"); 13 U.S.C. § 214 (prohibiting a census worker from publishing or disclosing material that "comes into his possession"). To interpret such phrases "in possession" and "come into possession" identically would erase a purposeful drafting choice from Congress. *See Ysleta Del Sur Pueblo v. Texas*, 596 U.S. 685, 698 (2022) (noting "presumption" that "differences in language . . . convey differences in meaning" (citation omitted)); *Prewett v. Weems*, 749 F.3d 454, 461 (6th Cir. 2024) ("Omitting a phrase from one statute that Congress has used in another statute with a similar purpose 'virtually commands the . . . inference' that the two have different meanings." (alteration in original) (quoting *United States v. Ressam*, 553 U.S. 272, 276–77 (2008))).

The Supreme Court and Second Circuit—relying on dictionaries contemporaneous to the Civil Rights Act of 1960—have held that to "come into possession" of something means to receive, acquire, or obtain it from some other source. *E.g.*, *Honeycutt v. United States*, 581 U.S. 443, 449 (2017) (defining "obtain" as "to come into possession of" (quoting *Random House Dictionary of the English Language* 995 (1966))); *Huddleston v. United States*, 415 U.S. 814, 820 (1974) ("The word 'acquire' is defined to mean simply 'to come into possession, control, or power of disposal

of." (quoting *Webster's New International Dictionary* (3d ed. 1966))); *United States v. Elias*, 154 F.4th 56, 68 (2d Cir. 2025) (applying *Honeycutt*). DOJ cannot claim New York officials received, obtained, or acquired New York's statewide voter registration list from elsewhere. Thus, DOJ's claim under Title III necessarily fails at the outset.

### 3.    DOJ lacks proper basis and purpose to demand records under Title III.

Even if Title III could be read to reach the state's internally created voter file, DOJ's claim still could not succeed because by its plain terms Title III requires that every demand for records "contain a statement of the basis and the purpose therefor." 52 U.S.C. § 20703. DOJ has not even bothered to try to articulate any basis for its demand—nowhere has it set forth any basis that New York has denied the right to vote or otherwise violated federal law. The lack of any stated basis for investigating New York is further highlighted by the fact that DOJ has made what appear to be near carbon copy demands to over forty other states and has sued twenty of those states (as well as the District of Columbia) with complaints that contain nearly identical boilerplate claims and allegations. *See supra* Background §§ II–III. "Simply put, [DOJ's demand] does not identify what conduct, it believes, constitutes an alleged violation." *CFPB v. Source for Pub. Data, L.P.*, 903 F.3d 456, 458 (5th Cir. 2018) (reversing order to compel response to CFPB subpoena).

DOJ's stated purpose for issuing the demand to New York—to "allow the Attorney General to fulfill its duties of effectively assessing Defendants' compliance with the requirements of the NVRA and HAVA," Compl. ¶ 7—is also not sufficient under Title III, which is meant to permit DOJ to review voting records for "question[s] concerning infringement or denial of [people's] constitutional voting rights." *Lynd*, 306 F.2d at 228; *see CFPB v. Accrediting Council for Indep. Colls. & Schs.*, 854 F.3d 683, 690–91 (D.C. Cir. 2017) (rejecting "perfunctory" statement of purpose in issuing civil investigative demand, reasoning agencies are also "not afford[ed] . . . unfettered authority to cast about for potential wrongdoing" (citation omitted)). Throughout the

Complaint, DOJ fails to cite a single instance in which the Attorney General issued a demand for records under Title III that did not relate to investigating the "infringement or denial of . . . constitutional voting rights." *Lynd*, 306 F.2d at 228. The NAACP Intervenors are not aware of any such instance, despite their intimate familiarity with the federal government's enforcement of voting and civil rights legislation.[12]

Further, even if ascertaining New York's compliance with the NVRA and HAVA were permissible grounds for invoking Title III, New York's full unredacted voter list is entirely unnecessary for that purpose. Both the NVRA and HAVA grant states wide discretion in list maintenance by design: State efforts under the NVRA must only be "reasonable," 52 U.S.C. § 20507(a)(4), and HAVA explicitly commits "specific choices . . . to the discretion of the State." *Id.* § 21085. New York has already provided DOJ with more than adequate information to confirm that it is meeting its list maintenance obligations, and DOJ has not identified any specific shortcomings or deficiencies that warrant its intrusive demand. *See supra* Background § II; *see also* Compl. ¶ 49. Further still, rather than asking follow-up questions or engaging in any further dialogue with New York election officials, DOJ cut short any dialogue about New York's list maintenance activities and simply filed this lawsuit.

Considering all the circumstances, the only conclusion that can be drawn is that DOJ has no reasonable basis to justify a fishing expedition into New York's compliance with the NVRA and HAVA. *See In re Subpoena No. 25-1431-014*, No. MC 25-39, 2025 WL 3252648, at *17 (E.D.

---

[12] While some of the 1960s-era cases that interpreted Title III included language indicating broad deference to the Attorney General's statement of a "basis and . . . purpose" for requesting records, *see Lynd*, 306 F.2d at 226, those cases involved circumstances where Title III was being used for its intended purpose: investigations into the potential denial of voting rights. Those cases are thus fundamentally different than the circumstances here, where DOJ has offered no justifiable basis to support the need for records to evaluate compliance with two *other* statutes.

Pa. Nov. 21, 2025) (rejecting subpoena for private health information when DOJ "invoke[d] sweeping needs" for the information "far removed from those claimed purposes granted by Congress"); *In re Admin. Subpoena No. 25-1431-019*, No. 1:25-MC-91324-MJJ, 2025 WL 2607784, at *5 (D. Mass. Sep. 9, 2025) (quashing subpoena when DOJ "failed to show proper purpose" under the statutory scheme, rejecting the notion that "the Government's self-proclaimed say-so" is sufficient to "preclude any form of judicial review").

#### 4.    Title III does not prohibit redacting sensitive voter information.

Finally, even if DOJ could overcome each of the textual arguments above, it still could not succeed on its claim that Title III entitles it to demand New York's entire unredacted voter registration list because Title III *does not require the production of sensitive and personal voter information*. To reiterate, courts have rejected arguments that NVRA's access rules preclude states from redacting sensitive voter data on the grounds that "nothing in the text of the NVRA prohibits the appropriate redaction of uniquely or highly sensitive personal information," such as driver's license numbers, partial social security numbers, and signatures. *PILF*, 92 F.4th at 56. Title III's plain text does not prohibit the redaction of that information either.

As the Fifth Circuit has explained, Title III is intended to reach only "*public* records which ought ordinarily to be open to legitimate reasonable inspection," but *not* "confidential, private papers and effects." *Lynd*, 306 F.2d at 231 (emphasis added). The information that DOJ seeks here is not typically "open to legitimate reasonable inspection." *Id.* To the contrary, it seeks plainly sensitive information that is typically safeguarded from prying eyes under both federal and state law. *See, e.g.*, 5 U.S.C. § 552a; 18 U.S.C. § 2721; N.Y. Elec. Law § 3-220. And since driver's license numbers and partial social security numbers were not required to be requested on voter registration forms until HAVA was enacted in 2002, *see* 52 U.S.C. § 21083(a)(5)(A)(i), the

Congress that enacted Title III in 1960 would not have intended the statute's reach to cover the disclosure of such information.

## II.    DOJ has not stated any other claim for relief.

The only explicit request for relief in the Complaint is DOJ's demand for New York's statewide voter registration list. Compl. at 17–18, Prayer for Relief, ¶ E. But the Complaint also contains other fleeting suggestions that New York failed "to provide sufficient information" necessary for "evaluating New York's compliance with HAVA." *Id.* ¶¶ 67–68. To the extent these vaguely alleged deficiencies are meant to constitute a claim for relief under the NVRA or HAVA, they fail.

First, New York has no statutory obligation to answer DOJ's questions *at all*. Through the NVRA and HAVA, Congress charged states with making "reasonable effort[s]" to perform list maintenance, 52 U.S.C. § 20507(a)(4); *see id.* § 21083(a)(1)(A), but Congress never required states to report the results of that maintenance to DOJ or answer DOJ's inquiries about their list maintenance activities.[13] Accordingly, any perceived deficiencies or incompleteness in New York's responses to DOJ's questions do not alone constitute a violation of the NVRA or HAVA.

DOJ attempts to fall back on its general enforcement authority to bring actions "necessary to carry out" the NVRA and HAVA, Compl. ¶ 10 (citing 52 U.S.C. §§ 20510(a), 21111), but those provisions simply permit DOJ to bring suits to address plausibly alleged *violations* of those statutes. *See Common Cause/N.Y. v. Brehm*, 344 F. Supp. 3d 542, 547 (S.D.N.Y. 2018) ("The NVRA creates a private right of action for 'a person who is aggrieved by a violation' of the

---

[13] Regulations require states to provide certain information to the *Election Assistance Commission*, not to DOJ, *see* 11 C.F.R. § 9428.7, and DOJ's NVRA claim does not allege that the information New York provided the EAC was insufficient or otherwise violated this regulation. In fact, DOJ neither cites the regulation, nor claims any authority to enforce it.

NVRA." (quoting 52 U.S.C. § 20510(b)(1))); *United States v. New York*, 700 F. Supp. 2d 186, 197 (N.D.N.Y. 2010) (same). DOJ does not allege that New York has *violated* any of its obligations under the NVRA or HAVA; instead, it claims to seek information to prospectively "ensure that voter registration records in the State are accurate," Compl. ¶ 36, as it has done with dozens of other states, *see supra* Background §§ II–III. But that argument gets things backwards—DOJ cannot sue New York (or any other state) as part of a roving inquiry into noncompliance with federal law; rather, the Attorney General can file suit when she can plausibly allege that the substantive terms of the NVRA or HAVA have been violated. *See McCloskey*, 446 F.3d at 271.

Likewise, DOJ does not allege what specific inquiries have gone unaddressed, nor how New York's responses are insufficient. Compl. ¶¶ 67–69. The Complaint thus amounts to nothing more than "labels and conclusions" about the sufficiency of New York's responses. *Twombly*, 550 U.S. at 555. Such "naked assertion[s]" devoid of "further factual enhancement" are not enough to state a claim. *Id.* at 557 (citation omitted); *see also Watson Lab'ys*, 101 F.4th at 235 ("Absent further factual enhancement, naked assertions will not salvage a complaint otherwise subject to dismissal." (citation modified)).

## CONCLUSION

For the foregoing reasons, the Court should dismiss the Complaint with prejudice under Rule 12(b)(6) for failure to state a claim upon which relief can be granted.

Dated: December 30, 2025

Respectfully submitted,
*/s/ Aria C. Branch*

Andrew G. Celli, Jr. (Bar No. 105255)
Katherine Rosenfeld (Bar No. 511795)
Daniel M. Eisenberg (Bar No. 706811)
**EMERY CELLI BRINCKERHOFF ABADY**
**WARD & MAAZEL LLP**
One Rockefeller Plaza, 8th Floor
New York, NY 10020
T: (212) 763-5000
F: (212) 763-5001
acelli@ecbawm.com
krosenfeld@ecbawm.com
deisenberg@ecbawm.com

Aria C. Branch*
Christopher D. Dodge*
Tina Meng Morrison*
Omeed Alerasool*
**ELIAS LAW GROUP LLP**
250 Massachusetts Ave. NW, Suite 400
Washington, DC 20001
T: (202) 968-4490
F: (202) 968-4498
abranch@elias.law
cdodge@elias.law
tmengmorrison@elias.law
oalerasool@elias.law

\* Application *pro hac vice* and Motion for
Limited Admission granted

*Counsel for Proposed Intervenor-Defendants National Association for the Advancement of Colored*
*People and the NAACP New York State Conference*