**IN THE UNITED STATES DISTRICT COURT
FOR THE NORTHERN DISTRICT OF NEW YORK
SYRACUSE DIVISION**

| | |
|---|---|
| UNITED STATES OF AMERICA, *Plaintiff*, v. BOARD OF ELECTIONS OF THE STATE OF NEW YORK, et al., *Defendants*. | Case No. 1:25-cv-1338 (MAD) (PJE) |

**AMICUS BRIEF OF THE DEMOCRATIC NATIONAL COMMITTEE**

## **TABLE OF CONTENTS**

I.   Introduction ........................................................................................................................ 1

II.  Interest of Amicus Curiae................................................................................................... 1

III. Background ........................................................................................................................ 2

IV. Legal Standard ................................................................................................................... 3

V.  Argument ........................................................................................................................... 4

   A.   DOJ Has Obscured the True Basis and Purpose for Its Title III Demand. ................. 4

   B.   The NVRA Does Not Require Public Disclosure of Unredacted Voter Files. ........... 11

   C.   HAVA Does Not Provide DOJ with Subpoena Authority........................................... 12

VI. Conclusion.......................................................................................................................... 12

## I.  INTRODUCTION

Federal law authorizes the Attorney General to demand voter registration records, but she cannot do so based on a misrepresentation.  Rather than disclosing "the basis and the purpose" for its demand for the complete, unredacted New York voter file—as Title III of the Civil Rights Act of 1960, 52 U.S.C. § 20703, requires—the Department of Justice suggests it is engaged in routine enforcement of federal civil rights laws.  But the Justice Department intends to transfer voter data to the Department of Homeland Security and is reportedly compiling a national voter file.  This deception invalidates the Title III demand.  Invocations of a public records law and basic enforcement authority fare no better; neither authorizes demands for unredacted personal information.  An Attorney General that cannot be forthright cannot be trusted with the personal information of every registered voter in New York, including over 6,000,000 active registered Democrats.  The Democratic National Committee submits this amicus brief to protect the privacy of its members and the interests of its candidates and campaigns in free and fair elections.

## II.  INTEREST OF AMICUS CURIAE

The Democratic National Committee (DNC) is the oldest continuing party committee in the United States.  Its purposes and functions are to communicate the Democratic Party's position on issues, protect voters' rights, and aid the election of Democrats, including by organizing citizens to register to vote and to cast ballots for Democratic candidates.  The DNC represents millions of voters, including over 6,000,000 registered Democrats in New York.

The U.S. Department of Justice (DOJ) has demanded a copy of New York's complete, unredacted voter registration file.  This demand forces Democrats to choose between democratic participation and the privacy of their personal information.  Conditioning the right to vote on the release of private information "creates an intolerable burden on that right." *Project Vote/Voting*

*for America, Inc. v. Long*, 682 F.3d 331, 339 (4th Cir. 2012).  The DNC also has a significant protectable interest in the success of Democratic candidates, and pressure on Democrats to avoid registration or remove themselves from the voter rolls would burden that interest.  *See, e.g.*, *Paher v. Cegavske*, No. 3:20-cv-243, 2020 WL 2042365 (D. Nev. Apr. 28, 2020).

### III.   BACKGROUND

In June 2025, DOJ began sending state officials letters demanding complete, unredacted voter files.  *See* Jonathan Shorman, *DOJ Plans to Ask All States for Detailed Voting Info*, Stateline, Aug. 1, 2025, https://perma.cc/526V-97C3.  DOJ has confirmed that it is sharing lists with the Department of Homeland Security (DHS), and reporting indicates that DOJ is developing a national voter file.  *See* Tr. 120:6-121:2, *United States v. Weber*, No. 2:25-cv-09149 (C.D. Cal. Dec. 12, 2025) (Ex. 1); Jonathan Shorman, *DOJ Is Sharing State Voter Roll Lists with Homeland Security*, Stateline, Sept. 12, 2025, https://perma.cc/C6RQ-6ATP; Devlin Barrett and Nick Corasaniti, *Trump Administration Quietly Seeks to Build National Voter Roll*, N.Y. Times, Sept. 9, 2025, https://perma.cc/9PM4-2A6R.

At the end of June, DOJ sent a letter to the New York State Board of Elections (SBOE) demanding an unredacted copy of the New York voter file, to address compliance with the Help America Vote Act (HAVA).  June 30 Let., https://perma.cc/S6UZ-4VKG; Compl. ¶¶ 42-43, ECF No. 1.  In August, DOJ sent a second letter, clarifying that it demanded all fields in the voter file and indicating that it relied on its authority under Title III, the National Voter Registration Act (NVRA), and HAVA.  Aug. 14 Let., ECF No. 74-4; Compl. ¶¶ 45-47.  At the end of August, the SBOE replied and provided the public version of the New York voter file, which does not include particularly sensitive personal information.  Compl. ¶¶ 48-49.  In response, the United States filed suit against the SBOE, its members and staff, and the State of New York.  *See*

2

Compl. Following a brief stay, New York and some of the individual defendants moved to dismiss. N.Y. Mot., ECF No. 74; Bagnuola Mot, ECF 76.[1]

### IV.   LEGAL STANDARD

Title III of the Civil Rights Act of 1960, 52 U.S.C. §§ 20701-06, dictates that "every officer of election shall retain and preserve, for a [defined] period . . . , all records and papers which come into his possession relating to any . . . act requisite to voting." *Id.* § 20701. In turn, "[a]ny record . . . to be retained and preserved shall, upon demand in writing by the Attorney General or his representative . . . , be made available for inspection, reproduction, and copying at the principal office of such custodian . . . ." *Id.* § 20703. "This demand shall contain a statement of the basis and the purpose therefor." *Id.* "The United States district court for the district in which a demand is made . . . shall have jurisdiction by appropriate process to compel the production of such record or paper." *Id.* § 20705.

The NVRA, 52 U.S.C. §§ 20501-11, aims to improve both voter registration access and accuracy. *See id.* § 20501(b)(1)-(4). To facilitate public oversight, Section 8(i) requires states to "maintain for at least 2 years and . . . make available for public inspection . . . records concerning the implementation of programs and activities conducted for the purpose of ensuring the accuracy and currency of official lists of eligible voters," subject to exceptions. *Id.* § 20507(i).

---

[1] DOJ has thus far sued 21 states and the District of Columbia for unredacted voter files. *See* U.S. Dep't of Justice, *Justice Department Sues Oregon and Maine for Failure to Provide Voter Registration Rolls* (Sept. 16, 2025), https://perma.cc/8URN-US8S; U.S. Dep't of Justice, *Justice Department Sues Six States for Failure to Provide Voter Registration Rolls* (Sept. 25, 2025), https://perma.cc/6Q23-2X8Y; U.S. Dep't of Justice, *Justice Department Sues Six Additional States for Failure to Provide Voter Registration Rolls* (Dec. 3, 2025), https://perma.cc/KAK9-E5L5; U.S. Dep't of Justice, *Justice Department Sues Four Additional States and One Locality for Failure to Comply with Federal Elections Laws* (Dec. 12, 2025), https://perma.cc/6BGN-MG5Z; U.S. Dep't of Justice, *Justice Department Sues Four States for Failure to Produce Voter Rolls* (Dec. 18, 2025), https://perma.cc/C773-CNYY. *See also* Weber Tr. 88:24-90:18 (describing transfer of four additional unredacted voter files and negotiations to obtain 11 more).

3

HAVA, 52 U.S.C. §§ 20901-21145, imposes additional requirements on the federal election administration. The Attorney General may enforce only HAVA's "uniform and nondiscriminatory election technology and administration requirements." *Id.* § 21111. HAVA does not contain express subpoena authority or disclosure requirements.

**V.     ARGUMENT**

DOJ has no legal basis to obtain the unredacted New York voter file. By refusing to offer an honest statement of "the basis and the purpose" for the demand, the Attorney General has forfeited Title III authority. 52 U.S.C. § 20703. The NVRA's public records provision does not authorize disclosure of sensitive personal information. *See, e.g.*, *Pub. Interest Legal Found. v. Bellows*, 92 F.4th 36, 56 (1st Cir. 2024). And HAVA contains no subpoena authority at all. *See* 52 U.S.C. § 21111. Because the complaint does not state a claim upon which relief can be granted, this Court should grant the motions to dismiss.

**A.     DOJ Has Obscured the True Basis and Purpose for Its Title III Demand.**

DOJ's Title III demand for the unredacted voter file should be denied because the demand did not state "the basis and the purpose therefor." 52 U.S.C. § 20703; *see also* N.Y. Br. 14-15, ECF No. 74-1; Bagnuola Br. 9-12, ECF No. 76-6. Title III requires candor between federal officials and election administrators who safeguard voters' personal information. *See* 52 U.S.C. § 20703; *see also CFPB v. Accrediting Council for Independent Colleges & Secondary Schs.* (*ACICS)*, 854 F.3d 683, 690 (D.C. Cir. 2017) (emphasizing that an investigate demand "is measured by the stated purpose," making notification "an important statutory requirement"). Yet DOJ has provided New York and its citizens less than a half-truth. DOJ told the SBOE that "The purpose of the request is to ascertain New York's compliance with the list maintenance requirements of the NVRA and HAVA. Aug. 14 Let. at 2. However, DOJ has confirmed that it

4

is sharing voter files with DHS, and reporting indicates that DOJ is compiling a national voter file. *See DOJ Is Sharing State Voter Roll Lists with Homeland Security*, *supra*; *Trump Administration Quietly Seeks to Build National Voter Rolls*, *supra*. Neither action is related to NVRA and HAVA enforcement.[2]

Title III demands a statement of "*the* basis and *the* purpose" for the demand, not merely *a* basis and *a* purpose. 52 U.S.C. § 20703 (emphasis added). By using the definite article, Title III requires the Attorney General to offer "a discrete thing": the complete basis and purpose of the request and not merely one basis and purpose among many. *Niz-Chavez v. Garland*, 593 U.S. 155, 166 (2021). Without a complete basis and purpose statement, state officials and reviewing courts "cannot accurately determine whether the inquiry is within the authority of [DOJ] and whether the information sought is reasonably relevant." *ACICS*, 854 F.3d at 691; *see also In re Gordon*, 218 F. Supp. 826, 827 (S.D. Miss. 1963) (indicating that Title III cannot be "used without restraint"). Ultimately, "half-truths . . . can be actionable misrepresentations." *Universal Health Servs. v. United States ex. rel. Escobar*, 579 U.S. 176, 188 (2016); *cf. Dep't of Commerce v. New York*, 588 U.S. 752, 781-85 (2019) (setting aside agency action due to pretextual invocation of the Voting Rights Act). Thus, DOJ's refusal to be forthright with officials and voters about the intended use of personal information is fatal to the demand.

DHS has broad authority over counterterrorism, emergency management, immigration, and border protection, but its powers do not extend to NVRA and HAVA enforcement. *See* 6 U.S.C. § 111(b); *cf.* 52 U.S.C. §§ 20510(a), 21111 (DOJ authority). Even if DOJ were only

---

[2] DOJ has similarly invoked the NVRA and HAVA when requesting records related to the 2020 Presidential election, even while claiming its interest was "transparency." Oct. 30 Let., https://perma.cc/WCM3-FVTW. Repeat demands for records based on pretextual invocation of the NVRA and HAVA further undercut purported reliance on those statutes here.

5

comparing the New York voter file with DHS data—which might not require transferring voter data to DHS custody—such database matching would not advance NVRA and HAVA enforcement. The NVRA's affirmative list maintenance mandate concerns only deceased registrants and those who have moved outside the jurisdiction of a local registrar. *See* 52 U.S.C. § 20507(a)(4). HAVA specifies that appropriate officials must remove voters from statewide voter registration lists using a "system of file maintenance that makes a reasonable effort to remove registrants who are ineligible to vote from the official list of eligible voters . . . consistent with the [NVRA]," *id.* § 21083(a)(4)(A), and this provision does not "broaden[] the scope of the NVRA's list-maintenance obligations." *Bellitto v. Snipes*, 935 F.3d 1192, 1202 (11th Cir. 2019); *see also Am. Civ. Rights Union v. Phila. City Comm'rs*, 872 F.3d 175, 184-85 (3d Cir. 2017) (rejecting contention that HAVA "augment[s]" NVRA list maintenance requirements); 52 U.S.C. § 21083(a)(2)(B) (guidelines for list maintenance); 52 U.S.C. § 21145(a)(4) (directing that nothing in HAVA supersedes the NVRA). *But see* Compl. ¶ 49 (invoking list maintenance not required by the NVRA and HAVA). Federal data concerning deaths and changes of address are held by the Social Security Administration and the Postal Service respectively, not DHS. *See* 42 U.S.C. § 1306c(d); 52 U.S.C. § 20507(c)(1); 39 C.F.R. § 122.2(b). Thus, DHS data is not relevant to NVRA and HAVA enforcement.

Adding the unredacted New York voter file to a national voter database also does not advance the stated purpose of investigating NVRA and HAVA compliance. The NVRA requires that states conduct only a "reasonable effort to remove the names of ineligible voters by reason of the death of the registrant[] or a change in the residence of the registrant." 52 U.S.C. § 20507(a)(4). With respect to movers, a "reasonable effort" can be achieved using Postal Service data alone. *See id.* § 20507(c)(1). In any case, joining the New York voter file to

another state's voter file—a file New York does not possess and is not legally required to obtain—does not help determine whether New York has conducted a "reasonable effort." *Cf. id.* § 21083(a)(2)(A)(ii) (requiring coordination with in-state databases). HAVA merely reiterates the NVRA's list maintenance requirements, *see, e.g.*, *Bellitto*, 935 F.3d at 1202, and comparison to another state's database has no bearing on database design mandates, such as consolidation of duplicate registration records within a single state, *see id.* § 21083(a)(2)(B)(iii).

Even if Title III required the Attorney General's representative to provide only "a purpose" and not "the purpose" of a demand—and it does not—DOJ's demand for the complete, unredacted New York voter file is unrelated to "New York's compliance with the list maintenance requirements of the NVRA and HAVA." Aug. 14 Let. at 2.[3] For nearly two decades, DOJ neither demanded nor required a complete, unredacted voter file to investigate NVRA violations or oversee compliance with a remedy. *See, e.g.*, Press Release, U.S. Dep't of Justice, *United States Announces Settlement with Kentucky Ensuring Compliance with Voter Registration List Maintenance Requirements*, July 5, 2018, https://perma.cc/G2EZ-UUA5 (describing 2017 letters to all 44 states covered by the NVRA requesting list maintenance information but not demanding voter files). And with good reason. As noted above, the NVRA's affirmative list maintenance mandate requires only a "reasonable effort" to remove deceased registrants and movers. *See* 52 U.S.C. § 20507(a)(4); *see also id.* § 20507(c)(1) (safe

---

[3] In other states, DOJ asserted that the purpose of obtaining the unredacted voter file is to address only the NVRA or only HAVA. *See, e.g.*, Aug. 18 Let., *United States v. Scanlan*, 1:25-cv-371 (D.N.H. Sept. 30, 2025), ECF No. 6-9 (HAVA); Aug. 21 Let., *United States v. Weber*, No. 2:25-cv-9149 (C.D. Cal. Nov. 7, 2025), ECF No. 37-2, at 24 (NVRA). DOJ has also incorporated a voter file demand as a purported remedial oversight measure. *See* Consent Decree ¶ 11, *United States v. N.C. State Bd. of Elections*, No. 5:25-cv-283 (E.D.N.C. Sept. 8, 2025), ECF No. 72. The Attorney General's assertion of varying purposes for identical voter file demands suggests that the claimed enforcement aim here is mere pretext. *Cf. Village of Arlington Heights v. Metro. Hous. Dev. Corp.*, 478 U.S. 252, 267 (1977) (deeming inconsistencies to be evidence of pretext).

harbor procedures). DOJ has recognized this flexible standard since the Act's passage. *See, e.g.*, U.S. Dep't of Justice, *The National Voter Registration Act of 1993* (last updated Nov. 1, 2024), https://perma.cc/D8YZ-F9AM; U.S. Dep't of Justice, *NVRA List Maintenance Guidance* (Sept. 2024), https://perma.cc/J3C2-WSSE. Thus, state and local procedures establish compliance; voter files that result from those procedures do not. *See Pub. Int. Legal Found. v. Benson*, 136 F.4th 613, 624-26 (6th Cir. 2025), *petition for cert. pending*, No. 25-437 (filed Oct. 7, 2025) (defining "reasonable effort" as "a serious attempt that is rational and sensible" and rejecting any "quantifiable, objective standard"); *Bellitto*, 935 F.3d at 1205 (finding a "reasonable effort" based on safe harbor procedures alone). Even if DOJ could identify movers and deceased voters on the registration rolls, this would not indicate failure to meet the "reasonable effort" requirement. *See Benson*, 136 F.4th at 626-27 (rejecting identification of "27,000 'potentially deceased' voters" as evidence of an NVRA violation); *Republican Nat'l Comm. v. Benson*, No. 24-1985, 2025 WL 2731704 (6th Cir. Sept. 25, 2025) (per curiam) (acknowledging that some movers remain temporarily registered due to the NVRA's "procedural restraints"). Ultimately, the NVRA places responsibility for list maintenance with the States and does not authorize DOJ to search for individual registrants who may not meet state eligibility requirements.[4]

HAVA enforcement also does not require or use complete, unredacted voter files. Although HAVA requires that statewide voter registration databases have specific list maintenance capabilities, *see* 52 U.S.C. § 21083(a)(2), (a)(4), these are subject to state

---

[4] In 2006, DOJ sought and obtained a state voter registration file, including Social Security numbers, for the ostensible purpose of assessing NVRA compliance. *See* Compl. ¶ 9, *United States v. Georgia*, No. 1:06-cv-2442 (N.D. Ga. Oct. 12, 2006); *see also* Consent Decree, *United States v. Georgia*, No. 1:06-cv-2442 (N.D. Ga. Oct. 30, 2006). DOJ did not pursue an enforcement action based on the file, *see* U.S. Dep't of Justice, *Cases Raising Claims under the National Voter Registration Act*, https://perma.cc/A3JG-CNZA, and for the next 19 years abandoned attempts to use voter files to assess NVRA compliance.

8

discretion, *id.* § 21085.  DOJ previously recognized as much when it entered a consent decree requiring "reasonable steps" to identify possible duplicate registrations and movers and "review" of registrants previously identified "as potentially deceased"—not perfect removal of ineligible registrants and consolidation of duplicate records.  Consent Decree ¶¶ 4, 8-9, *United States v. New Jersey*, No. 06-4889 (D.N.J. Oct. 12, 2006), https://perma.cc/TF6V-NUY4; *see also* U.S. Election Assist. Comm'n, *Voluntary Guidance on Implementation of Statewide Voter Registration Lists* 11-14 (July 2005), https://perma.cc/KJX9-ZZ3W ("recogniz[ing] the fallibility of databases" and prioritizing "[s]afeguards to ensure that eligible voters are not removed in error from the official list of eligible voters").  And once a HAVA-compliant system was in place, the decree did not demand the unredacted voter file for oversight.  *See* N.J. Consent Decree ¶ 11.  Ultimately, HAVA list maintenance requirements are no more prescriptive than the NVRA, *see, e.g.*, *Bellitto*, 935 F.3d at 1202, and unredacted voter files do not assist HAVA enforcement.

DOJ cannot avoid scrutiny of the basis and purpose for its Title III demand by claiming that the Civil Rights Act of 1960 authorizes a "special statutory proceeding," as it has in other recent litigation.  *See, e.g.*, DOJ Mot. 8, *United States v. Bellows*, No. 1:25-cv-468 (D. Me. Sept. 18, 2025), ECF No. 5-1 (quoting *Kennedy v. Lynd*, 306 F.2d 222, 225 (5th Cir. 1962)).  In the six decades since DOJ last litigated a contested Title III action, the Supreme Court has confirmed that "the Federal Rules apply to proceedings to compel the giving of testimony or production of documents in accordance with a subpoena issued by an officer or agency of the United States under any statute of the United States except as otherwise provided by statute or by rules of the district court or by order of the court in the proceedings." *Becker v. United States*, 451 U.S. 1306, 1308 (1981) (internal citation and quotation marks omitted); *see also* Fed. R. Civ. P. 81(a)(5) (contemporary restatement).  Indeed, just two years after *Kennedy v. Lynd*, on which

9

DOJ recently relied, the Supreme Court held that the IRS Commissioner bears the burden to establish statutory requirements before a tax subpoena may be enforced. *See United States v. Powell*, 379 U.S. 48, 57-58 (1964); *see also, e.g.*, *Mollison v. United States*, 481 F.3d 119, 122 (2d Cir. 2007) (allowing rebuttal of prima facie case). Nothing in the text of Title III insulates the sufficiency of the requisite "statement of the basis and the purpose" of a demand from judicial review. 52 U.S.C. § 20703.[5] Rather, Title III's jurisdictional provision authorizes only "appropriate process to compel the production" of documents. *Id.* § 20705; *see also Lynd*, 306 F.2d at 230 (anticipating that "'appropriate process' . . . will include the power and duty to issue protective orders"). It is possible that an "assertion that the demand was made for the purpose of investigating possible violations of a Federal statute" could meet the basis and purpose requirement, *Coleman v. Kennedy*, 313 F.2d 867, 868 (5th Cir. 1963), but only when the assertion is both complete and accurate. And while DOJ might ordinarily be presumed to be acting in good faith, "appropriate process" requires an opportunity to prove otherwise. *See In re Coleman*, 208 F. Supp. 199, 201 (S.D. Miss. 1962).[6] Applying appropriate process, this Court should conclude that Title III does not require production of the unredacted New York voter file.

---

[5] The Fifth Circuit indicated in 1962 that "the factual foundation for, or the sufficiency of, the Attorney General's 'statement of the basis and the purpose' contained in the written demand is not open to judicial review or ascertainment." *Lynd*, 306 F.2d at 226 (quoting former 42 U.S.C. § 1974b). Although racist mass disenfranchisement may have warranted truncating proceedings in the early 1960s, *Powell* makes clear that even in exigency, the government must establish requirements that Congress has set to issue a valid document request. *See* 379 U.S. at 57-58.

[6] The presumption of regularity articulated in *United States v. Chemical Foundation, Inc.*, 272 U.S. 1, 15 (1926), does not shield official actions "from a thorough, probing, in-depth review." *Citizens to Preserve Overton Park, Inc. v. Volpe*, 401 U.S. 402, 415 (1971). In recent months, district courts have repeatedly "identified serious defects in the government's explanations and representations . . . prompting judges to discount government submissions, compel expedited discovery, and withhold the presumption." Ryan Goodman et al., *The "Presumption of Regularity" in Trump Administration Litigation* (Nov. 20, 2025), https://perma.cc/PL5G-BTAN.

### B. The NVRA Does Not Require Public Disclosure of Unredacted Voter Files.

The United States' request for the unredacted New York voter file under Section 8(i) of the NVRA fares no better. Section 8(i) requires public disclosure of voter registration rolls, but "nothing in the text of the NVRA prohibits the appropriate redaction of uniquely or highly sensitive personal information in the Voter File." *Bellows*, 92 F.4th at 56; *see also* N.Y. Br. 17-18; Bagnuola Br. 15-16. Moreover, the NVRA does not "prohibit the redaction of personal information that can be particularly sensitive in certain circumstances, including those circumstances explicitly recognized by federal courts." *Id.*; *see also, e.g.*, *Pub. Interest Legal Found, Inc. v. N.C. State Bd. of Elections*, 996 F.3d 257, 268 (4th Cir. 2021) (remanding for redactions). DOJ has historically agreed, recognizing that "the NVRA does not prohibit States from redacting 'uniquely sensitive information' like voters' Social Security Numbers before disclosing records." DOJ Amicus Br. 27, *Pub. Interest Legal Found. v. Bellows*, No. 23-1361 (1st Cir. July 23, 2023) (quoting *Project Vote*, 682 F.3d at 339), https://perma.cc/ML4S-5V4S; *see also* DOJ Amicus Br. 28-29, *Public Interest Legal Found. v. Schmidt*, No. 23-1590 (3d Cir. Nov. 6, 2023), https://perma.cc/3BQ9-36UJ; DOJ Amicus Br. 24-26, *Project Vote/Voting for America, Inc. v. Long*, No. 11-1809 (4th Cir. Oct. 18, 2011), https://perma.cc/HSM3-U964.

Because Section 8(i) is a public records provision, redactions are necessary to avoid risk of identity theft and voter intimidation. Social Security numbers are "are uniquely sensitive and vulnerable to abuse," and "a statute that conditions voting on public release of a voter's Social Security number creates an intolerable burden on that right as protected by the First and Fourteenth Amendments." *Project Vote*, 682 F.3d at 339 (internal citations and quotation marks omitted). Once again, DOJ has historically agreed, arguing under Section 8(i) that a litigant was "wrong to claim that disclosures of personally identifiable information are 'imaginary

11

monsters.'" U.S. Amicus Br. 29, *Pub. Interest Legal Found. v. Bellows*, *supra* (internal citation omitted). And Section 8(i) does not distinguish between categories of requestors when making information available, which might allow election officials to provide unredacted information only to favored individuals, groups, or entities. *See* 52 U.S.C. § 20507(i). Thus, the NVRA also provides no basis for DOJ's request for the unredacted New York voter file.

### C. HAVA Does Not Provide DOJ with Subpoena Authority.

The United States' invocation of HAVA as a third basis for its demand is at best puzzling, as HAVA contains neither subpoena authority nor a public records provision. *See* 52 U.S.C. §§ 20901-21145; *see also* N.Y. Br. 19; Bagnuola Br. 17-19. Although DOJ claims that HAVA "provides authority for the Justice Department to seek the State's [voter file] via Section 401," Aug. 14 Let. at 1, that provision merely authorizes enforcement of four sections of the Act, *see* 52 U.S.C. § 21111. The "authority of an administrative agency to issue subpoenas for investigatory purposes is created solely by statute." *Peters v. United States*, 853 F.2d 692, 696 (9th Cir. 1988). Thus, the mere fact that a statute contains enforcement provisions does not grant subpoena authority. *See, e.g.*, *United States v. Iannone*, 610 F.2d 943, 945-46 (D.C. Cir. 1979). If enforcement authority were always accompanied by the authority to demand relevant documents, express subpoena provisions—and indeed Title III—would be meaningless surplusage. On the other hand, enforcement authority does not mandate direct oversight of state election authorities, which would impose substantial federalism costs. *See, e.g.*, *Shelby Cnty. v. Holder*, 570 U.S. 529, 549 (2013); *see also* 52 U.S.C. § 21085 (codifying state discretion). Therefore, HAVA provides no basis for DOJ's request for the unredacted New York voter file.

### VI. CONCLUSION

For the reasons set out above, this Court should grant the motions to dismiss.

12

Dated: December 31, 2025                          Respectfully submitted,

                                                                   */s/ Daniel J. Freeman*
                                                                   Daniel J. Freeman
                                                                   Democratic National Committee
                                                                   430 South Capitol Street SE
                                                                   Washington, DC 20003
                                                                   (202) 863-8000
                                                                   freemand@dnc.org

**LOCAL RULE 7.2(D) CERTIFICATION**

      Pursuant to Local Rule 7.2(d), I hereby affirm that the above brief is no more than twelve (12) pages in length, double-spaced, contains a table of contents and numbered pages, and meets the requirements of Local Rule 10.1(a).  Moreover, I hereby affirm that no counsel for any party authored this brief in whole or part, that no party or party's counsel contributed money that was intended to fund preparing or submitting the brief, and that no person—other than the Democratic National Committee, its members, or its counsel—contributed money that was intended to fund preparing or submitted the brief.

      */s/ Daniel J. Freeman*
      Daniel J. Freeman