UNITED STATES DISTRICT COURT
NORTHERN DISTRICT OF NEW YORK

THE UNITED STATES OF AMERICA,

                              Plaintiff,

        v.                                              No. 25-cv-1338 (MAD)(PJE)

BOARD OF ELECTIONS OF THE STATE OF NEW
YORK, *et al.,*

                              Defendants.

**DEFENDANT STATE OF NEW YORK'S REPLY MEMORANDUM OF
LAW IN FURTHER SUPPORT OF ITS MOTION TO DISMISS THE
COMPLAINT AND IN OPPOSITION TO PLAINTIFF'S CROSS-MOTION
TO COMPEL**

                    LETITIA JAMES
                    Attorney General
                    State of New York
                    28 Liberty Street
                    New York, New York 10005
                    Tel.: (212) 416-8673
                    *Attorney for Defendant State of New York*

YUVAL RUBINSTEIN
Special Litigation Counsel
        *of Counsel*

# TABLE OF CONTENTS

**Page**

TABLE OF AUTHORITIES ..........................................................................................................ii

PRELIMINARY STATEMENT .................................................................................................1

ARGUMENT .................................................................................................................................2

I.     DOJ'S OPPOSITION FURTHER DEMONSTRATES THAT THE COMPLAINT
IS SUBJECT TO DISMISSAL UNDER RULE 12(b)(6) ...................................................3

     A.     DOJ's Claim Under the CRA Fails as a Matter of Law ..............................................3

          1.     Title III of the CRA Does Not Authorize DOJ to Obtain Records
Unconnected to Investigations of Voting Rights Violations .....................3

          2.     DOJ is Not Entitled to the Unredacted NYSVoter List Under Title III .....8

     B.     DOJ's Truncated Arguments Under HAVA and NVRA Further Demonstrate
That its Request for the Unredacted NYSVoter List is Baseless.............................10

     C.     DOJ's Opposition Fails to Establish the Agency's Compliance With Federal
Privacy Laws..........................................................................................................12

     D.     DOJ Does Not Dispute That the State Cannot Provide the Relief Sought ..............15

II.     DOJ'S PURPORTED MOTION TO COMPEL IS BASELESS .........................................15

CONCLUSION............................................................................................................................18

# TABLE OF AUTHORITIES

**CASES**            **Page(s)**

*Auburn Housing Auth. v. Martinez*, 277 F.3d 138 (2d Cir. 2002) ...............................4, 6

*Becker v. U.S.*, 451 U.S. 1306 (1981) .......................................................................18

*Califano v. Yamasaki*, 442 U.S. 682 (1979) .............................................................17

*Clean Coal Technologies, Inc. v. Leidos, Inc.*, 377 F.Supp.3d 303 (S.D.N.Y. 2019) ...................16

*In re Coleman*, 208 F.Supp. 199 (S.D. Miss. 1962) ...............................................5, 9, 10

*Coleman v. Kennedy*, 313 F.2d 867 (5th Cir. 1963) ...............................................5, 9, 10

*EPIC v. Presidential Advisory Comm'n on Election Integrity*, 266 F.Supp.3d 297 (D.D.C. 2017) ...................................................................................................13, 14

*Gallina v. Wilkinson*, 988 F.3d 137 (2d Cir. 2021) ..................................................8

*Glen 6 Assocs., Inc. v. Dedaj*, 770 F.Supp. 225 (S.D.N.Y.1991) ...............................17

*Kennedy v. Lynd*, 306 F.2d 222 (5th Cir. 1962) .......................................................18

*Maracich v. Spears*, 570 U.S. 48 (2013) ...................................................................14

*Nat'l Coal. on Black Civic Participation v. Wohl*, 498 F.Supp.3d 457 (S.D.N.Y. 2020) ............7, 8

*N.H. Fire Ins. Co. v. Scanlon*, 362 U.S. 404 (1960) .................................................17

*NYLAG v. Bd. of Immigration Appeals*, 987 F.3d 207 (2d Cir. 2021) ..........................7

*Robinson v. Shell Oil Co.*, 519 U.S. 337 (1997) ........................................................4

*Senne v. Vill. of Palatine*, 695 F.3d 597 (7th Cir. 2012) .............................................14

*State of Ala. v. U.S.*, 304 F.2d 583 (5th Cir. 1962) ....................................................6

*St. Mary's Honor Center v. Hicks*, 509 U.S. 502 (1993) ............................................5

*U.S. v. Cartwright*, 230 F.Supp. 873 (M.D. Ala. 1964) .........................................5, 6

*U.S. v. Hansen*, 599 U.S. 762 (2023) .........................................................................7

*U.S. v. Powell*, 379 U.S. 48 (1964) ...........................................................................18

*U.S. v. Robinson*, 702 F.3d 22 (2d Cir. 2012) ............................................................4

*U.S. v. Mississippi*, 380 U.S. 128 (1965) ........................................................................5

*U.S. Nat. Bank of Oregon v. Independent Ins. Agents of America, Inc.*, 508 U.S. 439 (1993) ................................................................................................................................4

*U.S. v. Weber, et al.*, __F.Supp.3d__, 2026 WL 118807 (C.D. Cal. Jan. 15, 2026) ............. *passim*

*Walker v. U.S.*, 134 F.4th 437 (6th Cir. 2025) ...............................................................17

**Federal Rules**

Fed. R. Civ. P. 1 ...............................................................................................................17

Fed. R. Civ. P. 4 ...............................................................................................................16

Fed. R. Civ. P. 12(b)(6) ..............................................................................2, 3, 12, 15, 18

Fed. R. Civ. P. 34 .............................................................................................................11

Fed. R. Civ. P. 57 .............................................................................................................16

Fed. R. Civ. P. 81 .............................................................................................................17

**Federal Statutes**

5 U.S.C. § 552a(e)(4) .......................................................................................................12

18 U.S.C. § 2721(b)(1) .....................................................................................................14

18 U.S.C. § 2725(3) ..........................................................................................................14

28 U.S.C. § 1331 ...............................................................................................................16

28 U.S.C. § 1345 ...............................................................................................................16

28 U.S.C. § 2201(a) ..........................................................................................................16

52 U.S.C. § 10101 ...............................................................................................................6

52 U.S.C. § 20507(i) .........................................................................................................12

52 U.S.C. § 20701 .................................................................................................4, 5, 6, 15

52 U.S.C. § 20702 ...............................................................................................................5

52 U.S.C. § 20703 .............................................................................3, 6, 7, 10, 11, 17

52 U.S.C. § 20705 .......................................................................................................16, 17

52 U.S.C. § 21083(a)(2) ................................................................................9

52 U.S.C. § 21083(a)(5)(A) ...........................................................................9

52 U.S.C. § 21083(a)(5)(A)(iii) ......................................................................9

52 U.S.C. § 21111 .........................................................................................11

Pub. L. No. 107-347, § 208 ...........................................................................13

**State Statutes**

N.Y. Elec. Law § 5-614(1) .............................................................................15

**Miscellaneous Authorities**

Julia Shumway, *Oregon Not Required to Give Feds Voter Data, Judge Rules*, Oregon
Capital Chronicle (Jan. 15, 2026), https://www.opb.org/article/2026/01/15/oregon-not-
        required-to-give-feds-voter-data-judge-rules ........................................................3

Defendant State of New York ("State") respectfully submits this reply memorandum of law in further support of its motion to dismiss the Complaint (ECF No. 1) and in opposition to Plaintiff United States of America's Cross-Motion to Compel (ECF No. 81).

## PRELIMINARY STATEMENT

The U.S. Department of Justice's ("DOJ") sweeping and unprecedented demand for "all fields" in New York's unredacted computerized statewide voter registration list ("NYSVoter List"), including the driver's license numbers and full Social Security numbers furnished by New York voters, intrudes upon New York's core state responsibility for administering its elections and jeopardizes the personal privacy of millions of New Yorkers. DOJ's opposition to the State's motion to dismiss only heightens the State's significant concerns and manages to set off even *more* alarm bells.

DOJ's original June 30, 2025 letter to the Board of Elections of the State of New York ("SBOE") relied solely upon the Help America Vote Act ("HAVA") as the purported statutory basis for its demand. DOJ's August 14, 2025 follow-up letter tacked on two additional statutes: the Civil Rights Act of 1960 ("CRA") and National Voter Registration Act ("NVRA"). On September 25, 2025, DOJ filed a self-styled "Complaint" bringing this action against multiple defendants, and asserting separate claims under all three statutes.[1]

Yet DOJ now asserts that it is merely filing an "application for an order" pursuant to Title III of the CRA to obtain the NYSVoterList, and that this "special statutory proceeding" is not subject to the Federal Rules of Civil Procedure. DOJ even contends that its claims under HAVA

---

[1] DOJ also filed "lawsuits" against five other states in September. *See Justice Department Sues Six States for Failure to Provide Voter Registration Roll*s (Sept. 25, 2025), https://www.justice.gov/opa/pr/justice-department-sues-six-states-failure-provide-voter-registration-rolls. And DOJ's tactics have begun to fail, as recent rulings from Oregon and California demonstrate. *Infra* at 2-3.

and NVRA that it chose to plead in its Complaint are "mooted" by an order of production under the CRA (and indeed by DOJ's mere request for such production in its so-called "cross-motion").

DOJ's ever-shifting basis for demanding the unredacted NYSVoter List is itself a tell-tale sign that DOJ's stated justification for the List is simply not credible. Moreover, DOJ's opposition fails to withstand the State's Rule 12(b)(6) motion in any case. The text, structure, purpose, and history of Title III make clear that the "records and papers" required to be preserved pertain solely to voting rights violations, and DOJ's demand thus exceeds the bounds of the statute. DOJ's paper-thin justification for demanding this highly sensitive voter registration data under the CRA—to supposedly assess New York's compliance with the list maintenance provisions of HAVA and NVRA—is patently insufficient in any case. Nor does DOJ's opposition sufficiently establish its compliance with federal privacy statutes.

Finally, DOJ's purported "cross-motion to compel," relying upon Title III of the CRA, is baseless. DOJ's contention that it is filing an "application" that is exempt from the Federal Rules is belied by the plenary action that DOJ filed on September 25, 2025, while Title III in no way entitles DOJ to sidestep the Federal Rules. Given DOJ's failure to provide any non-conclusory grounds for its unprecedented demand, this Court should exercise its legitimate gatekeeping function and deny DOJ's request regardless of form. Accordingly, the Court should grant the State's motion to dismiss and deny DOJ's cross-motion.

**ARGUMENT**

As demonstrated in the State's December 30, 2025 motion to dismiss, DOJ's request for the unredacted NYSVoter List is baseless, as HAVA, NVRA, and the CRA do not authorize DOJ's sweeping request for highly sensitive voter registration data. And within the past week, two district courts have rejected DOJ's arguments. On January 14, 2026, a federal judge orally granted

Oregon's motion to dismiss. *See* Julia Shumway, *Oregon Not Required to Give Feds Voter Data, Judge Rules*, Oregon Capital Chronicle (Jan. 15, 2026), https://www.opb.org/article/2026/01/15/oregon-not-required-to-give-feds-voter-data-judge-rules. And on January 15, 2026, DOJ's request for California's electronic statewide voter registration list was also denied. *See U.S. v. Weber, et al.*, __F.Supp.3d__, 2026 WL 118807 (C.D. Cal. Jan. 15, 2026). As detailed below, the Court should likewise deny DOJ's demand for the NYSVoter List.

# I. DOJ'S OPPOSITION FURTHER DEMONSTRATES THAT THE COMPLAINT IS SUBJECT TO DISMISSAL UNDER RULE 12(b)(6)

## A. DOJ's Claim Under the CRA Fails as a Matter of Law

### 1. Title III of the CRA Does Not Authorize DOJ to Obtain Records Unconnected to Investigations of Voting Rights Violations

Title III of the CRA does not grant DOJ unfettered access to "records" and "papers" pertaining to voting in federal elections. Section 303 instead requires that any such demand by DOJ "shall contain a statement of the basis and the purpose therefor." In other words, this statutory requirement means that the recipient of such a request—and a reviewing Court—must be provided with non-conclusory grounds for DOJ's request to evaluate and ensure that it comes within the scope of the statute. Yet DOJ's purported justification for demanding production of the unredacted NYSVoter List—to assess the State's compliance with its list maintenance obligations under NVRA and HAVA—falls well outside the bounds of the CRA. Indeed, DOJ's stated rationale is unrelated to any pending or anticipated investigation relating to voting rights violations in New York. *See* ECF No. 74-1, Memorandum of Law in Support of Defendant State of New York's Motion to Dismiss the Complaint ("State Memo.") at 14.

DOJ's opposition does not assert that the agency has initiated any investigation pertaining to alleged violations of voting rights in New York. DOJ instead maintains that the text of Title III

is not limited to documents pertaining to voting rights violations based upon racial discrimination. *See* ECF No. 81-1, Memorandum of the United States in Support of the United States' Cross-Motion to Compel Production of Federal Election Records Pursuant to 52 U.S.C. 20701 *et seq.* and in Opposition to Motions to Dismiss ("DOJ Opp.") at 11. DOJ also contends that "principles of statutory construction" preclude "engrafting" a requirement of racial discrimination onto the text of Title III. *Id.* at 12.

But DOJ fails to heed the cardinal principle that "statutory interpretation is a holistic endeavor," and thus "the words of a statute are *not* to be read in isolation." *U.S. v. Robinson*, 702 F.3d 22, 31 (2d Cir. 2012) (emphasis in original) (cleaned up). The scope and meaning of the "record and papers" that are required to be preserved under Section 301 must be "consonant with the rest of the statute." *Auburn Housing Auth. v. Martinez*, 277 F.3d 138, 144 (2d Cir. 2002); *Robinson v. Shell Oil Co.*, 519 U.S. 337, 341 (1997) ("The plainness or ambiguity of statutory language is determined by reference to the language itself, the specific context in which that language is used, and the broader context of the statute as a whole."). DOJ's wooden and decontextualized interpretation of the words "records" and "papers" in Title III is fundamentally misguided under a "holistic" reading of the CRA.

First, the statute is entitled the "*Civil Rights* Act of 1960," and the title alone significantly undermines DOJ's contention that Title III encompasses voting records unrelated to civil rights enforcement. *See U.S. Nat. Bank of Oregon v. Independent Ins. Agents of America, Inc.*, 508 U.S. 439, 455 (1993) (statutory construction "must account for a statute's full text, language as well as punctuation, structure, and *subject matter*") (emphasis added). Although DOJ notes that Title III is entitled "Federal Election Records," DOJ Opp. at 10, that subheading by no means expands the "subject matter" of the CRA.

Indeed, the cases decided under Title III in the early 1960s clearly pertained to racial discrimination in voting. State Memo. at 12; *Weber*, 2026 WL 118807 at *8 (in Title III cases, DOJ "routinely stated both a purpose and basis related to alleged civil rights violations..."). Yet DOJ errs by citing isolated snippets from these decisions. DOJ Opp. at 11-12. For example, DOJ cites *In re Coleman*, 208 F.Supp. 199, 200 (S.D. Miss. 1962), *aff'd sub nom.*, *Coleman v. Kennedy*, 313 F.2d 867 (5th Cir. 1963), in which the district court noted that the Attorney General was demanding inspection of records "to see if any Federal laws were violated."

But Congress could not have reasonably intended to grant DOJ such roving authority, and this sentence cannot be divorced from the Attorney General's underlying purpose for demanding the records, which was "based upon information in the possession of the Attorney General tending to show that discriminations on the basis of race and color have been made with respect to registration and voting[.]" *Id.* at 199; *see also St. Mary's Honor Center v. Hicks*, 509 U.S. 502, 515 (1993) (cautioning against "dissect[ing] the sentences" of judicial decisions "as though they were the United States Code").

Second, Title III contains two operative provisions: Section 301 obligates election officers to "retain and preserve" records pertaining to voting in federal elections, while Section 302 provides that "[a]ny person, whether or not an officer of election or custodian, who willfully steals, destroys, conceals, mutilates, or alters any record or paper required by" Section 301 is subject to a fine or imprisonment. This provision addresses instances in which county registrars and other officials deliberately destroyed voter registration records to impede investigations of racial discrimination in voter registration. *See, e.g., U.S. v. Mississippi*, 380 U.S. 128, 133-34 (1965); *U.S. v. Cartwright*, 230 F.Supp. 873, 875 (M.D. Ala. 1964).[2] Section 302 further demonstrates that

---

[2] *Cartwright* vividly illustrates the lengths to which county registrars went to stymie investigations

Title III is directed towards election officials who fail to preserve voting records, and even destroy them, as a means of hindering investigations of voting rights violations. *Weber*, 2026 WL 118807 at * 8 ("The purpose of Title III is to detect voting-related racial discrimination."). The statute's limited scope is a far cry from the unbounded blanket authority that DOJ now claims.

Third, Title VI of the CRA sets forth extensive remedies to address the denial of voting rights based on race. For example, Section 601 enables a court to declare an applicant eligible to vote "upon a finding by the Court that persons have been deprived on account of race…and that such deprivation was or is pursuant to a pattern or practice." *State of Ala. v. U.S.*, 304 F.2d 583, 593 (5th Cir. 1962). The proper scope of the "records and papers" encompassed by Title III is even more clear when read in conjunction with Title VI of the CRA. *Auburn Housing Auth.*, 277 F.3d at 144 (meaning of a particular section in statute can be understood "by appreciating how sections relate to one another").

The State also emphasized that the plain text of Section 303 does not authorize the wholesale and untargeted production of millions of voter registration records in electronic format. State Memo. at 15. Section 303 merely states in the singular that "[a]ny record and paper" covered by Section 301 is to be "made available for inspection, reproduction, and copying at the principal office of such custodian by the Attorney General or his representative." Although Section 303 makes clear that DOJ is only entitled to in-person inspection and copying of specific voting records housed in the "principal office" of a custodian, DOJ asserts that this clear statutory language should not apply because the NYSVoter List is required to be maintained in electronic form under HAVA.

---

even after Title III was enacted. A member of the Board of Registrars for Elmore County, Alabama, after being informed by FBI agents "that an investigation was being conducted into possible discrimination in the voter registration process" in the county, admittedly "carried the records to the city garbage dump" along with a colleague, who "set them on fire." 230 F.Supp. at 875 n.2.

DOJ Opp. at 19. But DOJ's attempt to stretch the plain meaning of Section 303 to encompass millions of electronic records, by invoking a statute enacted 40 years after the CRA, further highlights the unreasonableness of DOJ's reading of the statute. *Weber*, 2026 WL 118807 at *9 (because Title III preceded passage of NVRA and HAVA by several decades, DOJ's stated purpose for demanding electronic statewide voter registration list is beyond scope of Title III). Moreover, HAVA does not reference Title III, and lacks its own inspection provision. *Infra* at 11.

In addition to the overall text, structure, and purpose of the CRA, the statutory history further undermines DOJ's interpretation of the CRA. *See* State Memo. at 12-14; *NYLAG v. Bd. of Immigration Appeals*, 987 F.3d 207, 221 n.23 (2d Cir. 2021) ("Courts routinely give substantial weight to statutory history of amendment when interpreting the text of a statute."); *U.S. v. Hansen*, 599 U.S. 762, 775 (2023) (statutory history plays an important role in understanding the context of statutory terms). The Civil Rights Act of 1957, which was enacted to remedy denials of the right to vote, had been thwarted by states' failure to produce or retain rejected voter applications and other registration records. State Memo. at 13. *Nat'l Coal. on Black Civic Participation v. Wohl*, 498 F.Supp.3d 457, 475 (S.D.N.Y. 2020) ("*NCBCP*") (CRA of 1960 was among the statutes enacted "to address defects litigants encountered in trying to vindicate the rights [the Civil Rights Act of 1957 was] meant to protect"). Title III was thus intended to ensure that states would preserve and retain all registration and voting records so they could be inspected. State Memo. at 13.

The CRA was itself superseded by the Voting Rights Act ("VRA") of 1965. *NCBCP*, 498 F.Supp.3d at 476 (noting that "the enforcement of the voting-rights laws remained challenging and slow" even after enactment of Civil Rights Acts of 1960 and 1964, and that VRA was passed in 1965 "to adopt more effective measures than existed at the time") (cleaned up). And the CRA

appears to have largely fallen into desuetude after 1965.[3] Thus, DOJ's nationwide attempt to disinter Title III after more than 60 years, by invoking two statutes enacted several decades after the CRA, is both unusual and alarming.

In sum, Congress does not place "elephants in mouseholes" when enacting a statute. *Gallina v. Wilkinson*, 988 F.3d 137, 146 (2d Cir. 2021). And in this case, the text, structure, purpose, and history of the CRA—along with basic common sense—eviscerate DOJ's assertion that Congress conferred upon DOJ the authority to obtain millions of electronic voting records that are wholly unrelated to investigations of voting rights violations. Indeed, DOJ's overly expansive construction of the CRA's inspection provisions prevents the reasonable weighing of the respective interests between the federal government and the states with respect to state voting records.

### 2. DOJ is Not Entitled to the Unredacted NYS Voter List Under Title III

DOJ's request for "all fields" in the NYS Voter List also fails even on its own terms. DOJ's August 14, 2025 letter to the SBOE claimed that DOJ supposedly needed the List "to ascertain New York's compliance with the list maintenance requirements of the NVRA and HAVA." Rubinstein Decl. Ex. B, at 2. But DOJ did not identify any basis for reasonably believing that New York has failed to comply with the list maintenance provisions of HAVA and NVRA. State Memo. at 14. And DOJ also failed to articulate why a snapshot from the unredacted NYS Voter List is needed to assess New York's compliance with these statutory provisions. *Id.*; *Weber*, 2026 WL 118807 at *9 (DOJ failed to explain "why unredacted voter files for millions of" registered voters, which was "an unprecedented request, was necessary for the DOJ's investigation").

---

[3] DOJ cites to a 2006 lawsuit that it filed against Georgia that invoked Title III to purportedly assess Georgia's compliance with HAVA and NVRA. ECF No. 81-2, Neff Decl., Ex. 8. Yet Georgia elected to settle with DOJ less than three weeks after the Complaint was filed. Neff Decl., Ex. 9. The legal sufficiency of DOJ's request was never presented to the Court, much less resolved.

DOJ's opposition asserts that it need not demonstrate an "extant violation" of federal law to justify its demand under Title III. DOJ Opp. at 17. But DOJ fails to identify even a *potential* violation of NVRA or HAVA. Indeed, DOJ's opposition does not point to any deficiencies in the SBOE's August 29, 2025 letter to DOJ, which described in detail New York's compliance with the list maintenance provisions of HAVA. Rubinstein Decl., Ex. C; *Weber*, 2026 WL 118807 at *16 (DOJ did not identify any deficiencies in California's list maintenance standards).

Moreover, DOJ's assertion that it requires the driver's license numbers and full Social Security numbers for millions of registered voters to purportedly assess New York's compliance with § 21083(a)(5)(A)(i) of HAVA is baseless. DOJ Opp. at 21. This subsection of HAVA has nothing to do with list maintenance procedures, which are instead covered by § 21083(a)(2) of the statute. Section 21083(a)(5)(A) merely states in general terms that states "may not" accept voter registration applications that do not contain driver's license numbers or last four digits of a Social Security numbers, and that states should assign a number to applicants lacking this information. In addition, DOJ conspicuously overlooks § 21083(a)(5)(A)(iii), which notes that "[t]he State shall determine whether the information provided by an individual is sufficient to meet the requirements" of the section. And DOJ's purported concern about duplicate registrations is not a sufficient basis either. *Weber*, 2026 WL 118807 at *16. Thus, individual-identifying data from millions of registered voters is hardly germane to assessing New York's compliance with HAVA.

DOJ also fails to cite any authority supporting its position. DOJ instead cites *Coleman, supra*. DOJ Opp. at 17.[4] But *Coleman* further undermines DOJ's argument: the letters issued to

---

[4] In addition, DOJ argues that the State is barred from challenging the sufficiency of DOJ's stated justification for the unredacted NYSVoter List through the Federal Rules of Civil Procedure, whether in a motion to dismiss or through discovery. DOJ Opp. at 17-18. DOJ's attempt to sidestep the Federal Rules is baseless, and is addressed in detail in Point II below.

county registrars stated that the demand was "based *upon information in the possession of the Attorney General tending to show* that discriminations on the basis of race and color have been made with respect to registration and voting within your jurisdiction." 208 F.Supp. at 199 (emphasis added). The Fifth Circuit, in affirming the district court, cited the CRA's legislative history in noting that the Attorney General must "identify in a general way the reasons for his demand." 313 F.2d at 868 (cleaned up).

But *Coleman* in no way suggests that a bare statement under Section 303 enables DOJ to embark upon a fishing expedition even absent any "information" that "tend[s] to show" a federal statute has been violated. *Weber*, 2026 WL 118807 at *9 (DOJ failed to proffer "specific, articulable facts pointing to the violation of federal law"). Once again, by DOJ's argument, the clearly envisioned role of the federal courts in resolving voting record access disputes would be eliminated where DOJ simply makes a conclusory assertion. *Id.* (DOJ's obligation to sufficiently state "basis and purpose" is not "perfunctory," but is a "critical safeguard that ensures the request is legitimately related to the purpose of the statute").

## B. DOJ's Truncated Arguments Under HAVA and NVRA Further Demonstrate That its Request for the Unredacted NYSVoter List is Baseless

DOJ's original June 30, 2025 letter to the SBOE cited only to Section 303 of HAVA as the purported basis for demanding production of the unredacted NYSVoter List. Rubinstein Decl., Ex. A. In its September 25, 2025 Complaint, DOJ chose to assert stand-alone claims under HAVA and NVRA. *See* ECF No. 1, Compl., ¶¶ 58-70. Yet DOJ's opposition relegates its discussion of HAVA and NVRA to just a few pages. DOJ Opp. at 29-31. Even more astonishing is DOJ's assertion that its claim for relief under the CRA "obviate[s]" the need for additional relief under HAVA and NVRA, and that DOJ is now willing to "stipulate[]" to the dismissal without prejudice of these claims, which would be "mooted" by the CRA. DOJ Opp. at 29. Needless to say, DOJ's ever-

shifting litigation strategy is highly unusual, and calls into further question the legitimacy of its demand for the unredacted NYSVoter List. And to the extent the Court entertains DOJ's truncated arguments under HAVA and NVRA, they are baseless.

First, DOJ concedes that HAVA lacks any document inspection provision, but infers that this omission is due to the fact that HAVA, unlike NVRA, lacks a private cause of action. DOJ Opp. at 29. However, DOJ fails to cite any authority, and this speculative argument is further undermined by DOJ's reliance upon the CRA: Section 303 of the CRA makes clear that Congress knew how to draft an inspection provision specifically applicable to the Attorney General. Congress, however, did not include any such provision when enacting HAVA in 2002. *Weber*, 2026 WL 118807 at *15 (contrasting CRA's inspection provision with its absence in HAVA).

The general enforcement provision in HAVA, which merely confers upon the Attorney General the authority to bring a civil action "to carry out the uniform and nondiscriminatory election technology and administration requirements," in no way serves as a sufficient predicate for DOJ's demand either. 52 U.S.C. § 21111. Absent an express statutory basis in HAVA, there is no external source of residual authority for the federal government to cite in overriding important state interests in protecting state voter registration records. In short, no such authority exists for DOJ's overreach here.

DOJ's fallback argument is that its demand for records under HAVA "falls into the conventional realm of discovery" under Rule 34. DOJ Opp. at 30. It is startling for DOJ to invoke Rule 34 given DOJ's simultaneous assertion that the Federal Rules do *not* govern its purported "special statutory proceeding" under the CRA. *Infra* at 15-18.[5] DOJ's attempt to skip ahead to

---

[5] Given that DOJ is requesting the ultimate relief in this case—production of the unredacted NYSVoter List—DOJ's reference to the "realm of discovery" is misleading.

discovery is baseless in any event, as DOJ's HAVA claim fails to withstand a Rule 12(b)(6) motion precisely because HAVA lacks any document inspection provision in the first place.

DOJ's passing discussion of its NVRA claim fares no better. Numerous courts have held that NVRA does not preclude states from redacting sensitive voter information, a position that DOJ itself previously adopted. State Memo. at 17-18. DOJ's sole argument is that these decisions are distinguishable because they were brought by "private organizations." DOJ Opp. at 30-31. But NVRA itself draws no such distinction between private parties and the government, and DOJ fails to cite any authority establishing that the federal government alone is entitled to unredacted records under § 20507(i); *Weber*, 2026 WL 118807 at *13 (deeming DOJ's distinction "meaningless" under NVRA). And as discussed below, DOJ's reassurance that the unredacted NYSVoter List will be subject to "federal privacy protections" (DOJ Opp. at 20) hardly suffices.

C.     **DOJ's Opposition Fails to Establish the Agency's Compliance With Federal Privacy Statutes**

DOJ's sweeping demand for the unredacted NYSVoter List not only lacks any legal justification, but also intrudes upon the privacy of millions of New York voters. And DOJ has not come close to establishing its compliance with federal privacy laws. Although the Privacy Act of 1974 requires federal agencies to first publish a System of Records Notice ("SORN") in the Federal Register before they seek to "establish[ ] or revis[e]" a "system of records" under  5 U.S.C. § 552a(e)(4), DOJ has failed to even propose a SORN specifically applicable to its attempt to vacuum up entire statewide electronic voter registration databases. State Memo. at 10-11. *Weber*, 2026 WL 118807 at *18 (three SORNs DOJ identified in Complaint failed to place the public on notice that "their voter registration data is going to be collected").

DOJ's opposition only magnifies the State's privacy concerns. DOJ points to the Civil Rights Division's online Privacy Act Statement, which cites to NVRA, HAVA, and the CRA. DOJ Opp. at

23 (citing to Civil Rights Division Privacy Act Statement, https://civilrights.justice.gov/privacy-policy#privacy-act-statement). But a statement drafted by DOJ, and posted on its website, is by no means a sufficient substitute for the Privacy Act's specific requirements under § 552a(e)(4). DOJ also points to a "secure file-sharing system" called Justice Enterprise File Sharing, which purportedly "implements strict access controls." DOJ Opp. at 24. Once again, this internal file-sharing system does not satisfy DOJ's obligations under the Privacy Act either.[6]

Moreover, DOJ claims the Privacy Act does not bar disclosure to the federal government. DOJ Opp. at 24-25. But as a threshold matter, DOJ failed to even satisfy the prerequisites under the Privacy Act prior to demanding production of the NYSVoter List. State Memo at 10-11. DOJ's opposition further serves to demonstrate that it has failed to satisfy its legal obligations under the Act.

Nor has DOJ established its compliance with the E-Government Act of 2002. State Memo. at 11-12. DOJ argues the Act is not applicable to the federal government, and that DOJ need not conduct a Privacy Impact Assessment under § 208 because DOJ is not contacting individuals for information. DOJ Opp. at 25-26. But DOJ's cramped reading of the Act is contrary to *EPIC v. Presidential Advisory Comm'n on Election Integrity*, 266 F.Supp.3d 297, 304 (D.D.C. 2017), a case in which the Commission requested that each state furnish voter roll information. The district court in *EPIC* held that a PIA was required "*before* the agency initiates a new collection of information." *Id.* at 311 (emphasis added). DOJ attempts to distinguish *EPIC* by noting the private plaintiffs were ultimately denied relief on standing grounds. DOJ Opp. at 27. But *EPIC*'s

---

[6] DOJ briefly references its 2006 consent judgment with Georgia, as well as a 2008 Memorandum of Understanding with Texas, to argue that DOJ's "Department-wide SORNs" permit the collection of the NYSVoter List. DOJ Opp at 23, n.17. But neither document cites to any SORN at all. *See* Neff Decl., Exs. 7 and 9. DOJ's agreements with these states do not establish any legal precedent regarding DOJ's compliance with the Privacy Act in any case. *Supra* at 8 n.3.

interpretation of § 208 remains highly persuasive, and DOJ fails to cite any authority to the contrary. *Weber*, 2026 WL 118807 at \*19 (DOJ request violates E-Government Act).

Finally, DOJ has failed to establish its compliance with the Driver's Privacy Protection Act ("DPPA"). DOJ does not dispute that its demand for millions of driver's license numbers contained in the NYSVoter List falls within the definition of "personal information" that is prohibited from disclosure under the DPPA. 18 U.S.C. § 2725(3). DOJ instead invokes the DPPA's narrow exception in § 2721(b)(1), which permits the disclosure of personal information "[f]or use by any government agency, including any court or law enforcement agency, in carrying out its functions[.]" DOJ Opp. at 27-28. But the bare assertion that DOJ intends to "use" the driver's license numbers contained in the NYSVoter List to "carry[ ] out its functions" is by no means sufficient to invoke this exception.

Indeed, it is yet another example of DOJ's arguments in this case turning exceptions into rules and essentially exempting its efforts at wholesale collection of voter registration data from any objection by states or review by courts. *Weber*, 2026 WL 118807 at \*19 (DOJ failed to establish applicability of § 2721(b)(1)). As noted above, there is no justification for DOJ to sift through millions of driver's license numbers to assess whether New York complies with HAVA. *Supra* at 9. *See also Senne v. Vill. of Palatine*, 695 F.3d 597, 606 (7th Cir. 2012) (*en banc*) ("When a particular piece of disclosed information is not *used* to effectuate [the government agency's] purpose in any way, the exception [in § 2721(b)(1)] provides no protection for the disclosing party.") (emphasis in original); *Maracich v. Spears*, 570 U.S. 48, 60-61 (2013) (cautioning that the exceptions enumerated in § 2721(b) should not be construed in a way that "would undermine in a substantial way the DPPA's purpose of protecting an individual's right to privacy in his or her motor vehicle records").

**D.     DOJ Does Not Dispute That the State Cannot Provide the Relief Sought**

In addition to being deficient as a matter of law, DOJ's demand for the unredacted NYSVoter List is subject to dismissal because the State cannot provide DOJ the effective relief. Under New York election law, the List is in the "custody" of the SBOE, and it is "administered and maintained" by that separate agency. N.Y. Elec. Law § 5-614(1). State Memo. at 19-20. DOJ does not argue otherwise, but instead asserts that the provisions of the CRA, NVRA, and HAVA apply to the State. DOJ Opp. at 31.

But DOJ's argument misses the mark: regardless of whether a given state is a suable party under these statutes, in light of New York's election administration laws, the bottom line is that the "State" itself cannot provide the substantive relief sought by DOJ. It is a specific state agency, the SBOE, that maintains "custody" and administers the NYSVoter List.

## II.     DOJ'S PURPORTED MOTION TO COMPEL IS BASELESS

In addition to opposing the State's motion to dismiss, DOJ has interposed a purported "Cross-Motion to Compel Production of Federal Election Records," invoking Section 301 of the CRA. ECF No. 81. DOJ's motion seeks the ultimate relief demanded in the Complaint, and is effectively a motion for summary judgment. Yet DOJ maintains that its September 25, 2025 Complaint is a "special statutory proceeding" under Title III of the CRA, which supposedly "differs from ordinary civil actions" because Title III's purpose is to "facilitate pre-suit investigation." DOJ Opp. at 10. Even more remarkably, DOJ now maintains that the Federal Rules of Civil Procedure are inapplicable, and the State is thus "prohibited" from proceeding with a motion to dismiss under Rule 12(b)(6). *Id.* at 11, 17-18.

DOJ's attempt to transform its September 25, 2025 "Complaint" into a Title III "application" is procedurally improper and utterly baseless. The Complaint briefly cites to Section

305 of the CRA, which is the purported basis for DOJ's "special statutory proceeding." Compl. ¶¶ 8, 10. But the pleading does not state, nor even suggest, that DOJ is merely filing an "application" under Title III that is exempt from the Federal Rules. For example, DOJ did not bring this case as a miscellaneous proceeding. *See* N.D.N.Y. Miscellaneous Case Opening Guide, *available at* https://www.nynd.uscourts.gov/sites/nynd/files/Miscellaneous%20Case%20Opening%20Guide_ External%20User_091225_0.pdf. To the contrary, the very first numbered paragraph states that "[t]he United States brings this *action* to enforce provisions of Title III of the Civil Rights Act of 1960" as well as HAVA and NVRA. Compl., ¶ 1 (emphasis added).

Moreover, DOJ's September 25, 2025 pleading is indistinguishable from any other plenary action: the Complaint cited to statutes to invoke federal jurisdiction over civil actions, as well as the Declaratory Judgment Act ("DJA"). Compl., ¶ 8 (citing 28 U.S.C. §§ 1331, 1345, and 2201(a)). The Prayer for Relief not only requests an "order" for defendants to produce the unredacted NYSVoter List, but also requests a declaratory judgment under each statute. Rule 57, of course, makes clear that the Federal Rules "govern the procedure for obtaining a declaratory judgment under 28 U.S.C. §2201." And DOJ served the State (through the Office of Attorney General) with a standard summons form under Rule 4. ECF No. 6-1. The form provides that the State must answer or file a Rule 12 motion. *Id.*

The Court must firmly reject DOJ's wholly improper procedural gambit. DOJ's assertion that it is simply bringing an "application for an order under Title III" (DOJ Opp. at 10) cannot be squared with DOJ's actual pleading and prior litigation choices. It is evident that DOJ is belatedly attempting to amend its September 25, 2025 plenary "action," as DOJ itself referred to the pleading, in an effort to avoid a motion to dismiss and the Court's consideration of the sufficiency of its stated bases for requesting New York's sensitive voter data. But "[i]t is axiomatic that a

complaint cannot be amended by the briefs in opposition to a motion to dismiss." *Clean Coal Technologies, Inc. v. Leidos, Inc.*, 377 F.Supp.3d 303, 321 (S.D.N.Y. 2019) (cleaned up). And through its shapeshifting litigation conduct, DOJ has waived any argument that it is simply instituting a "special statutory proceeding" under Title III that is exempt from the Federal Rules. *See, e.g., Walker v. U.S.*, 134 F.4th 437, 447 (6th Cir. 2025) (federal government waived statute of limitations defense through its litigation conduct). DOJ's purported "cross-motion to compel" must be denied on these threshold grounds.

DOJ's purported cross-motion is baseless in any case. The Federal Rules of Civil Procedure "govern the procedure in all civil actions and proceedings in the United States district courts, except as stated in Rule 81." Fed. R. Civ. P. 1. *See Glen 6 Assocs., Inc. v. Dedaj*, 770 F.Supp. 225, 227 (S.D.N.Y.1991) ("The Federal Rules of Civil Procedure provide the normal course for beginning, conducting and determining controversies."). Moreover, summary proceedings "were practically unknown to the English common law," and "have had little acceptance in this country." *N.H. Fire Ins. Co. v. Scanlon*, 362 U.S. 404, 407 (1960). Thus, federal courts have been "extremely reluctant" to permit summary proceedings absent "express statutory authorization." *Id*.; *Califano v. Yamasaki*, 442 U.S. 682, 700 (1979) (there must be a "clear expression of congressional intent to exempt actions…from the operation of the Federal Rules of Civil Procedure").

The text of Title III fails to support DOJ's novel argument. Section 305 merely states that a district court "shall have jurisdiction by appropriate process to compel the production of [a] record or paper." 52 U.S.C. § 20705. Title III was enacted several decades after the Federal Rules were promulgated. Yet there is no reference to a "special statutory proceeding" in Section 305 nor even a hint, let alone a "clear expression," that the Federal Rules are inapplicable. *Weber*, 2026

WL 118807 at *8 ("Nothing in the text of Title III requires a special statutory proceeding or any abbreviated procedures.").

DOJ's assertion that Title III constitutes a "special statutory proceeding" that entirely displaces the Federal Rules once again relies solely upon decisions issued in the early 1960s from the Fifth Circuit. DOJ Opp. at 8-10. For example, DOJ cites to *Kennedy v. Lynd*, 306 F.2d 222, 225-26 (5th Cir. 1962), which declared that Title III is not an "ordinary civil action." DOJ at 10. *Lynd* was decided in the midst of dogged efforts by county registrars to thwart voting rights investigations, *supra* at 5-8, and the decision is not binding upon this Court. *Weber*, 2026 WL 118807 at *8-9 (*Lynd* does not support DOJ's request for statewide voter registration list).

Indeed, just two years after *Lynd* was decided, the Supreme Court construed a similarly worded tax statute, 26 U.S.C. § 7604(a), which provides that the "United States district court for the district in which such person resides or is found shall have jurisdiction *by appropriate process* to compel such attendance, testimony, or production of books, papers, records, or other data." *See U.S. v. Powell*, 379 U.S. 48 (1964) (emphasis added). The Court held that, because this provision "contains no provision specifying the procedure to be followed in invoking the court's jurisdiction, the Federal Rules of Civil Procedure apply." *Id.* at 58 n.18; *see also Becker v. U.S.*, 451 U.S. 1306, 1307–08 (1981). It is particularly strange that DOJ cites *Powell* in support, DOJ Opp. at 9, n.8, as *Powell* completely undermines DOJ's argument. In sum, DOJ's self-styled "Complaint" is ripe for dismissal under Rule 12(b)(6), and the purported cross-motion to compel must be denied as well.

## <u>CONCLUSION</u>

For the reasons set forth above and in its opening memorandum, the State respectfully requests that the Court grant the State's motion, dismiss the Complaint with prejudice, and deny Plaintiff's cross-motion to compel, together with such other and further relief as the Court deems

just and proper.

Dated: New York, New York
       January 20, 2026

                                    Respectfully submitted,
                                    LETITIA JAMES
                                    Attorney General
                                    State of New York
                                    *Attorney for Defendant State of New York*
                                    By:
                                    _____/s/_____
                                    Yuval Rubinstein
                                    Special Litigation Counsel
                                    28 Liberty Street
                                    New York, New York 10005
                                    (212) 416-8673
                                    yuval.rubinstein@ag.ny.gov

**CERTIFICATION**

In accordance with Rule 7.1(c) of the Local Rules of Practice of the U.S. District Court for the Northern District of New York, I hereby certify that this consolidated Reply Brief in Further Support of the State's Motion to Dismiss the Complaint and in opposition to DOJ's Cross-Motion to Compel Production of Federal Election Records complies with the 25-page limit.


_____/s/_____
Yuval Rubinstein