**IN THE UNITED STATES DISTRICT COURT FOR THE
NORTHERN DISTRICT OF NEW YORK**

UNITED STATES OF AMERICA,

*Plaintiff*,

v.

BOARD OF ELECTIONS OF THE STATE OF
NEW YORK, et al.,

*Defendants*.

Case No. 1:25-cv-01338-MAD-PJE

**PROPOSED INTERVENOR-DEFENDANT LEAGUE OF WOMEN VOTERS OF NEW
YORK STATE'S REPLY IN SUPPORT OF PROPOSED MOTION TO DISMISS
AND RESPONSE TO PLAINTIFF'S MOTION TO COMPEL**

## TABLE OF CONTENTS

INTRODUCTION ........................................................................................................................1

ARGUMENT ...............................................................................................................................2

    I.     The Federal Rules of Civil Procedure apply, and the Court should use a normal, fulsome process in assessing Plaintiff's claims .................................................2

    II.    The Court should dismiss the Complaint.................................................................7

        A.  Plaintiff failed to state a claim under the CRA ...........................................7

        B.  Plaintiff failed to state a claim under the NVRA ......................................11

        C.  Plaintiff failed to state a claim under HAVA............................................12

        D.  State and federal privacy laws are important legal considerations in this litigation ........................................................................................13

    III.   Plaintiff's Motion should be denied......................................................................14

        A.  The Motion is not a proper cross-motion...................................................15

        B.  The Motion is not a proper motion to compel ...........................................16

        C.  The Motion is not a proper motion for summary judgment or for injunctive relief ........................................................................................17

CONCLUSION............................................................................................................................18

# TABLE OF AUTHORITIES

**Cases**                                                             **Pages**

*Arizona v. Inter Tribal Council of Arizona, Inc.*, 570 U.S. 1 (2013) ............................................13

*Azzarmi v. Key Food Stores Co-Operative Inc.*, No. 20-CV-6835 (GBD) (BCM), 2021 WL 1734922 (S.D.N.Y. May 3, 2021) .........................................................17

*Bank of Nova Scotia v. United States*, 487 U.S. 250 (1988) ..................................................15

*Becker v. United States*, 451 U.S. 1306 (1981) .................................................................4

*Bellito v. Snipes*, 935 F.3d 1192 (11th Cir. 2019) ...............................................................12

*Canister Company v. Leahy*, 182 F.2d 510 (3d Cir. 1950) ...............................................2

*CFPB v. Accrediting Council for Independent Colleges and Schools*, 854 F.3d 683 (D.C. Cir. 2017) .........................................................................8

*Coalition for Open Democracy v. Scanlan*, No. 24-CV-312-SE, 2025 WL 1503937 (D.N.H. May 27, 2025) .................................................................................10

*Coleman v. Kennedy*, 313 F.2d 867 (5th Cir. 1963) (per curiam) ....................................5

*Dalton v. Little Rock Family Planning Services*, 516 U.S. 474 (1996) ..........................13

*Funches v. Fischer*, No. 1:11-CV-0869 (GTS/CFH), 2014 WL 1312048 (N.D.N.Y. Mar. 31, 2014) ..............................................................................15

*In re Coleman*, 208 F. Supp. 199 (S.D. Miss. 1962) .......................................................5

*In re Gordon*, 218 F. Supp. 826 (S.D. Miss. 1963) ........................................................8

*In re Tax Liabilities of John Does*, 688 F.2d 144 (2d Cir. 1982)......................................6

*Jackson v. City of New York*, No. 10 CIV. 7889(RMB), 2013 WL 541510 (S.D.N.Y. Feb. 14, 2013) .........................................................................12

*Kennedy v. Lynd*, 306 F.2d 222 (5th Cir. 1962)................................................4, 5, 6, 8

*Lazaro v. Liberty Car Services, Inc.*, No. 19 CV 7314 (LDH)(LB), 2021 WL 5508071 (E.D.N.Y. Mar. 23, 2021) ...............................................................10

*Meaney v. CHS Acquisition Corporation*, 103 F. Supp. 2d 104 (N.D.N.Y. 2000).......................15

*Project Vote, Inc. v. Kemp*, 208 F. Supp. 3d 1320 (N.D. Ga. 2016)..............................11

*Project Vote/Voting for America, Inc. v. Long*, 682 F.3d 331 (4th Cir. 2012) ..............14

*Public Interest Legal Foundation, Inc. v. Bellows*, 92 F.4th 36 (1st Cir. 2024).....................11, 14

*Solomon v. Human Services Coalition of Tompkins County Inc.*, No. 5:11-CV-226 (GTS/ATB), 2012 WL 3996875 (N.D.N.Y. Sep. 11, 2012) .......................................................15

*State of Alabama ex rel. Gallion v. Rogers*, 187 F. Supp. 848 (M.D. Ala. 1960) .......................... 8

*Sugarloaf Funding, LLC v. U.S. Department of the Treasury*, 584 F.3d 340 (1st Cir. 2009) ......... 6

*Town of Huntington v. Marsh*, 884 F.2d 648 (2d Cir. 1989) .......................................................... 17

*True the Vote v. Hosemann*, 43 F. Supp. 3d 693 (S.D. Miss. 2014) ............................................... 14

*United Mine Workers v. Gibbs*, 383 U.S. 715 (1966) ...................................................................... 2

*United States v. Bisceglia*, 420 U.S. 141 (1975) ............................................................................. 6

*United States v. Markwood*, 48 F.3d 969 (6th Cir. 1995) ............................................................ 3, 4

*United States v. Morton Salt Company*, 338 U.S. 632 (1950) ......................................................... 6

*United States v. Powell*, 379 U.S. 48 (1964) ................................................................................ 3, 4

*United States v. Westinghouse Electric Corporation*, 788 F.2d 164 (3d Cir. 1986) ..................... 6

*United States v. Will*, 671 F.2d 963 (6th Cir. 1982)....................................................................... 4

**Statues, Codes, and Rules**

28 U.S.C. § 2072(b) ......................................................................................................................... 2

52 U.S.C. § 20703 ......................................................................................................................... 7, 8

52 U.S.C. § 20704 ......................................................................................................................... 11

52 U.S.C. § 20705 ........................................................................................................................... 3

52 U.S.C. § 21083(a) ..................................................................................................................... 12

52 U.S.C. § 21111 ......................................................................................................................... 12

Fed. R. Civ. P. 1 ........................................................................................................................... 1, 6

Fed. R. Civ. P. 12(b)(6) ............................................................................................................... 7, 14

Fed. R. Civ. P. 12(d) ..................................................................................................................... 18

Fed. R. Civ. P. 26(d)(1) ............................................................................................................... 16, 17

Fed. R. Civ. P. 34(a)(1)(A) ........................................................................................................... 17

Fed. R. Civ. P. 37(a) ..................................................................................................................... 17

Fed. R. Civ. P. 37(a)(1) ................................................................................................................. 17

Fed. R. Civ. P. 56(c)(1) ................................................................................................................. 17

Fed. R. Civ. P. 81 ........................................................................................................................... 2

L.R. 7.1(c) ................................................................................................................................... 15, 16

L.R. 56(d) ..................................................................................................................................... 18

L.R. 56.1(a) ................................................................................................................................... 18

L.R. 56.1(d)...............................................................................................................................18

**Other Authorities**

Brief of Amici Curiae Former Employees of the U.S. Department of Justice, *United States v. Weber*, No. 2:25-cv-09149-DOC-ADS, 21-23 (C.D. Cal Dec. 22, 2025) .............................11

Daniel M. Berman, *A Bill Becomes a Law: Congress Enacts Civil Rights Legislation* (2d ed. 1966) ...............................................................................................................................4

ERIC Overview, ERIC, https://perma.cc/V3YF-9R78 (last visited Jan. 20, 2026).........................9

Order Granting Defendant's Motion to Dismiss and Intervenors' Motions to Dismiss, *United States v. Weber*, No. 2:25-cv-09149-DOC-ADS
(C.D. Cal. Jan. 15, 2026) .......................................................1, 3, 4, 7, 8, 9, 10, 11, 12, 13, 14

Proposed "Confidential Memorandum of Understanding" sent to Colorado, https://www.documentcloud.org/documents/26330926-vrldata-sharing-agreement-doj-co/ ...................................................................................................................................1, 11

Protective Order, *Coalition for Open Democracy v. Scanlan*, No. 24-CV-312-SE (D.N.H. June 18, 2025) .........................................................................10

Report of U.S. Commission on Civil Rights 1963........................................................................4

S.B. S1356A, 2025-2026 Reg. Sess. (N.Y. 2025) ...........................................................................9

Technology & Security Overview, ERIC, https://perma.cc/7W8Q-LDJR (last visited Jan. 20, 2026) ...............................................................................................................................9

Transcript of Hearing Re: Motion to Dismiss & Plaintiff's Request for Order to Produce Records, *United States v. Weber*, No. 2:25-cv-09149-DOC-ADS (Dec. 4, 2025) .................16

## INTRODUCTION

The United States sued the state of New York for its unredacted voter file. It has likewise sued a total of 23 other states and the District of Columbia. These suits are largely identical, and none are justified by the Attorney General's power to enforce federal voting laws. Instead, they are an unprecedented effort to collect voters' sensitive data from almost every state in the country. According to various sources of information, including a proposed Memorandum of Understanding (MOU) the Justice Department asked Colorado and other states to sign, the United States intends to use this data for purposes that have nothing to do with the enforcement of the laws under which it has filed suit. *See* ECF No. 73-2 at 9-11[1]. This runs contrary to the constitutional and the statutory frameworks for elections, which entrust the states with the authority to maintain their voter rolls.

The one district court to issue a substantive ruling in these cases, the United States Court for the Central District of California, dismissed functionally the same Complaint, stating:

> The Department of Justice seeks to use civil rights legislation which was enacted for an entirely different purpose to amass and retain an unprecedented amount of confidential voter data. This effort goes far beyond what Congress intended when it passed the underlying legislation. The centralization of this information by the federal government would have a chilling effect on voter registration which would inevitably lead to decreasing voter turnout as voters fear that their information is being used for some inappropriate or unlawful purpose. This risk threatens the right to vote which is the cornerstone of American democracy.

Ex. A, Order Granting Defendant's Motion to Dismiss and Intervenors' Motions to Dismiss, at 32, *United States v. Weber*, No. 2:25-cv-09149-DOC-ADS (C.D. Cal. Jan. 15, 2026) (dismissing, without leave to amend, a similar complaint based on the same three statutes) (hereinafter *Weber*

---

[1] Citations to documents filed on the docket are to the ECF page number.

Order). Because Plaintiff's demands for data in this case likewise fail to state a claim, the Complaint should be dismissed.

Plaintiff has also filed a "Cross-Motion to Compel Production of Federal Election Records" (Motion), *see* ECF No. 81, based on the same faulty legal premise as its Civil Rights Act (CRA) claim, Count I. For the same reasons that claim should be dismissed, so too must the Motion be denied. In addition, the Motion has a number of procedural infirmities, each of which also counsel in favor of denial.

## ARGUMENT

**I.    The Federal Rules of Civil Procedure apply, and the Court should use a normal, fulsome process in assessing Plaintiff's claims.**

As is true in almost every civil case in federal court, the Federal Rules of Civil Procedure apply in this case and govern both the motions to dismiss and Plaintiff's Motion and permit the parties to challenge and the Court to assess Plaintiff's allegations.

The Federal Rules "govern the procedure in all civil actions and proceedings in the United States district courts" with limited exceptions not applicable here. Fed. R. Civ. P. 1, 81; *see also* 28 U.S.C. § 2072(b) (authorizing the Federal Rules of Civil Procedure and providing that "[a]ll laws in conflict with such rules shall be of no further force or effect after such rules have taken effect"); *Canister Co. v. Leahy*, 182 F.2d 510, 514 (3d Cir. 1950) ("The Rules are rules of procedure. They must be adhered to."). The Rules were promulgated to "secure the just, speedy, and inexpensive determination of every action," Fed. R. Civ. P. 1, "consistent with fairness to the parties." *United Mine Workers v. Gibbs*, 383 U.S. 715, 724 (1966).

Plaintiff's arguments as to why this Court should nonetheless abandon the normal Rules, *see* Plaintiff's Memorandum of Law, ECF No. 81-1 (Pl. Br.) at 13-14, are unpersuasive for at least three reasons: (1) the CRA does not authorize this process, (2) current Rules of Civil Procedure

and relevant precedent dictate that this Court conduct substantive review of Plaintiff's request before granting the ultimate relief sought in the Complaint, and (3) Plaintiff's cherry-picked quotations from one 1962 case do not justify this extraordinary process.

*First*, the CRA does not authorize a rushed proceeding outside the bounds of the Federal Rules of Civil Procedure. The CRA provides only that a district court "shall have jurisdiction *by appropriate process* to compel the production of such record or paper." 52 U.S.C. § 20705 (emphasis added). Nothing in the statute suggests that this Court should not apply the normal standard to a motion to dismiss, or that Plaintiff may file a motion to compel based exclusively on Plaintiff's representations and without the opportunity to inquire into the nature of its request. Plaintiff's argument would make this Court's review a mere "rubber stamp." *See* Pl. Br. at 22-23; *but see Weber* Order at 13 ("[n]othing in the text of Title III requires a special statutory proceeding or any abbreviated procedures"); *see also United States v. Markwood*, 48 F.3d 969, 979 (6th Cir. 1995) ("[A] district court is not a 'rubber stamp' for agency demands for the production of information."). The plain text of the CRA does not provide Plaintiff with *carte blanche* to ignore the rules but, instead, requires "appropriate process." 52 U.S.C. § 20705.

*Second*, courts have held that "appropriate process" requires meaningful judicial review, including through compliance with the procedural requirements of the Federal Rules. *See Weber* Order at 13 (holding that "appropriate process" requires application of the Federal Rules, which allows a court to determine whether the plaintiff has met the CRA's statutory requirements). Only four years after Congress enacted the CRA, including its reference to "appropriate process," but after many of the decisions on which Plaintiff relies, the Supreme Court held that a statute also using the phrase "appropriate process" required application of the procedures mandated by the Federal Rules. *United States v. Powell*, 379 U.S. 48, 58 n.18 (1964) ("Because [§] 7604(a) contains

no provision specifying the procedure to be followed in invoking the court's jurisdiction, the Federal Rules of Civil Procedure apply."). Courts have subsequently applied *Powell* to other federal agency demands for records. *See Markwood*, 48 F.3d 969. Thus, at a minimum, Plaintiff's demand under the CRA must satisfy the basic requirements set forth in that statute to obtain records. *See, e.g.*, *id*. at 975-76 (analyzing enforceability of "civil investigative demand" under federal False Claims Act). Here, Plaintiff has not met the statutory prerequisites under the CRA by failing to provide a statement of basis and purpose for its demand, *see* Section II, *infra*, and should not be allowed to abuse a procedural device to circumvent judicial analysis of that failure.

*Third*, a single line from *Kennedy v. Lynd*, a Fifth Circuit 1962 case on which Plaintiff relies extensively, *see* Pl. Br. at 7-9, 11, 13-16, 19-20, 23-25, 27, 36, does not permit this Court to ignore the plain language of the CRA or the Federal Rules of Civil Procedure. *Lynd* contains a single line suggesting that the CRA authorizes a special statutory proceeding "*comparable to* the form of a traditional order to show cause, or to produce in aid of an order of an administrative agency." 306 F.2d 222, 225 (5th Cir. 1962) (emphasis added). But *Lynd* does not suggest that even such a "comparable" proceeding is warranted in all CRA cases, including where there is no administrative order. *See id.* And *Lynd* was the product of a different era, shortly after the enactment of the CRA, during which "some southern officials, in order to hamper investigations by the Department of Justice and the Civil Rights Commission, had been destroying or impounding voting and registration records." Daniel M. Berman, *A Bill Becomes a Law: Congress Enacts Civil Rights Legislation* 9 (2d ed. 1966); *see also* Report of U.S. Comm'n on Civil Rights 1963, at 16; *see also Weber* Order at 3. In the intervening 60 years, the Supreme Court has clarified that normal procedure attaches when a federal agency seeks to compel the production of records. *See Becker v. United States*, 451 U.S. 1306, 1308 (1981); *Powell*, 379 U.S. at 57-58; *see also, e.g.*, *United*

*States v. Will*, 671 F.2d 963, 966 (6th Cir. 1982) (allowing summons recipient opportunity to rebut government's prima facie case).[2]

Plaintiff's discussion of *Lynd* is also tellingly selective. For example, Plaintiff never addresses the Fifth Circuit's statement that "Title III provides 'an effective means whereby preliminary investigations of registration practices can be made *in order to determine whether or not such practices conform to constitutional principles*.'" *Lynd*, 306 F.2d at 225 (emphasis added) (citation omitted). But Plaintiff does not argue that it is attempting to use *Lynd*'s process to effectuate the Constitution's guarantee of voting rights; rather, Plaintiff claims that it needs the data to engage in list maintenance that is required by *statute*, and which is entrusted to the states. *Lynd* also directs that "if the respondent-custodian opposes the grant of such relief," the Court should set a "suitable hearing" on the matter, which Plaintiff ignores here. *Id.* at 226. Plaintiff's selective reading of *Lynd* does not displace the text of the CRA or the Federal Rules in determining the appropriate process in this litigation. Therefore, the Court should apply the Federal Rules in addressing the sufficiency of the Complaint.

Plaintiff's reliance on other cases from the same era are similarly misleading. For example, Plaintiff's repeated citations to another Fifth Circuit case, *Coleman v. Kennedy*, 313 F.2d 867, 868 (5th Cir. 1963) (per curiam) (*Coleman II*), Pl. Br. at 14, 17, 22, 26, are not to a holding of the court but to legislative history quoted in that per curiam opinion. Similarly, Plaintiff's citations to the district court opinion in that case are not to a holding, but to the court's discussion of what was undisputed. *Compare* Pl. Br. at 17, 22 *with In re Coleman*, 208 F. Supp. 199, 200 (S.D. Miss. 1962) (*Coleman I*) ("It was not denied that the Attorney General wanted to examine such records

---

[2] As Plaintiff concedes, "[c]aselaw addressing the CRA in any depth is confined to courts within the Fifth Circuit in the early years following the CRA's enactment." Pl. Br. at 7 n.2. As a result, these more current cases, regarding analogous procedures in which federal agencies seek to compel the production of records, are all the more pertinent and more accurately reflect the current state of the law.

in the Federal field to see if any Federal laws were violated."). In the absence of anything more instructive than cherry-picked quotations from out-of-circuit cases from over 60 years ago, and based on fundamentally different facts and with no controlling effect in this Circuit, the Court should not wholly dispense with the process otherwise applicable under the Federal Rules. *See* Fed. R. Civ. P. 1.

Even if this Court accedes to Plaintiff's extraordinary procedural demand, it should exercise its judicial authority to ensure the request is proper and legally supported. Even *Lynd* recognized that under the CRA, a court "exercises judicial judgment. It does not confer or withhold a favor." 306 F.2d at 225 (quoting *Tutun v. United States*, 270 U.S. 568, 578 (1926)). That type of judgment includes an analysis of whether the agency made the request for an improper purpose or in bad faith. *See In re Tax Liabilities of John Does*, 688 F.2d 144, 147-48 (2d Cir. 1982) (In the IRS summons context, the government must establish "legitimate purpose," "relevan[ce] to that purpose," and that the government followed the requisite process) (citations omitted); *see also Sugarloaf Funding, LLC v. U.S. Dep't of the Treasury*, 584 F.3d 340, 345 (1st Cir. 2009) (a court's role is to ensure the government is using its authority "in good faith and in compliance with the law") (citation omitted); *United States v. Westinghouse Elec. Corp.*, 788 F.2d 164, 166-67 (3d Cir. 1986) ("[I]f a subpoena is issued for an improper purpose [], its enforcement constitutes an abuse of the court's process.").

Plaintiff acknowledges in a footnote that these types of cases are instructive for how this Court should handle its Complaint, *see* Pl. Br. at 14 & n.8, but they all require much more judicial scrutiny than Plaintiff suggests is appropriate here. *See United States v. Bisceglia*, 420 U.S. 141, 146 (1975) ("Once a summons is challenged it must be scrutinized by a court to determine whether it seeks information relevant to a legitimate investigative purpose."); *United States v. Morton Salt*

*Co.*, 338 U.S. 632, 640-41 (1950) ("To protect against mistaken or arbitrary orders, judicial review is provided. Its function is dispassionate and disinterested adjudication, unmixed with any concern as to the success of either prosecution or defense."); *see also* Pl. Br. at 14 & n.8 ("That approach makes sense."). Given the extraordinary nature and breadth of Plaintiff's demand in this case and parallel litigation playing out across the country, the Court should exercise its judgment and apply the "appropriate process" to ensure that Plaintiff is complying with the law and that its requests are made in good faith.

## II.    The Court should dismiss the Complaint.

For the reasons stated in the League of Women Voters of New York State's (LWVNYS) initial motion to dismiss and memorandum in support, ECF Nos. 73, 73-2, the Complaint fails to state a claim upon which relief can be granted. Fed. R. Civ. P. 12(b)(6); *see generally Weber* Order. Plaintiff's arguments to the contrary are unavailing. Plaintiff failed to provide a sufficient statement of basis and purpose, which is fatal to its CRA claim. And Plaintiff largely abandons its National Voter Registration Act (NVRA) and Help America Vote Act (HAVA) claims, failing to respond to several of LWVNYS's arguments. As such, the Complaint should be dismissed.

### A.  Plaintiff failed to state a claim under the CRA.

The Court should dismiss Count I of the Complaint, because Plaintiff has failed to meet its obligation under the CRA to state the basis and purpose for its demand. *See Weber* Order at 14 (finding Plaintiff had failed to meet CRA's requirements). As Plaintiff concedes, to obtain records under the CRA, the Attorney General must provide "a statement of the basis and the purpose therefor." 52 U.S.C. § 20703; Pl. Br. at 21. This is not a mere formality, but an important safeguard to ensure such demands are made lawfully, in good faith, and not in furtherance of a fishing expedition. *See Weber* Order at 16 ("The requirement that the Attorney General state their purpose

and basis is not merely perfunctory—it is a critical safeguard that ensures the request is legitimately related to the purpose of the statute."); *State of Ala. ex rel. Gallion v. Rogers*, 187 F. Supp. 848, 853 (M.D. Ala. 1960); *see also In re Gordon*, 218 F. Supp. 826, 827 (S.D. Miss. 1963).

Rather than attempt to allege the "basis" or "purpose" sufficient for such a demand under the CRA, Plaintiff instead argues that neither the Court nor any party may challenge (or even inquire into the nature of) its demand. Pl. Br. at 21-23. As discussed in Section I, *supra*, and in LWVNYS's opening brief, this is plainly wrong—courts have an important role in scrutinizing such requests, particularly in light of USDOJ's identical efforts to collect data from over 40 states, including by suing 24 of those states. *Lynd*, 306 F.2d at 225 (quoting *Tutun*, 270 U.S. at 578) (a court "exercises judicial judgment. It does not confer or withhold a favor."); *see also CFPB v. Accrediting Council for Indep. Colls. and Schs.*, 854 F.3d 683, 690 (D.C. Cir. 2017) (federal agency must comply with statutory criteria when seeking to enforce demand for records); ECF No. 73-2 at 22-23. Nowhere in its brief (or in the Complaint) does Plaintiff identify any basis for its demand, and its only stated purpose is its conclusory and illogical reference to the NVRA and HAVA. Pl. Br. at 22. Plaintiff's failure to provide the basis for its request becomes clearer within the broader context; it has no individualized reason to believe New York, or any of the 24 states it has sued, is violating any federal voting law. See *Weber* Order at 19 ("If the DOJ wants to instead use these statutes for more than their stated purpose, circumventing the authority granted to them by Congress, it cannot do so under the guise of a pretextual investigative purpose.").

The failure to identify a basis, alone, means the Complaint cannot state a CRA claim, 52 U.S.C. § 20703, and Plaintiff's argument that it need not demonstrate an "*extant* violation of federal law" is a strawman. Pl. Br. at 22. LWVNYS made no such argument. *Cf.* ECF No. 73-2 at 20. But the Attorney General must provide some factual predicate for a CRA demand, and she did

not. Given Plaintiff's complete omission of any such basis, the Court need not decide what level of factual support is required. *See also Weber* Order at 14 ("In the past, the DOJ has routinely stated both a purpose and basis related to alleged civil rights violations and how their requested records would specifically assist in their investigation.").

Plaintiff has also failed to identify a sufficient purpose for its request. It does not explain how the relevant data would achieve the goal of assessing list maintenance. Rather, Plaintiff is attempting to use this data to usurp the State's statutory role in list maintenance, which cannot be a purpose under the CRA. *See* ECF No. 73-2 at 30-33 (explaining how requested data is not necessary for list-maintenance analysis). Rather, Plaintiff's push to insert itself into election administration threatens the separation of powers. *See Weber* Order at 16-19 (discussing Plaintiff's "true motive").

Plaintiff's attempts to minimize the significance of these improper requests are without merit. *First*, it argues that states—although not New York[3]—already provide this data to the Electronic Registration Information Center (ERIC), so New York should turn the same data over to Plaintiff. Pl. Br. at 26. ERIC is a tool used by states to assist with their statutorily required list-maintenance responsibilities.[4] Just because some states give certain information to ERIC does not support Plaintiff's claim that it is also entitled to private individuals' data. To the contrary, Plaintiff's conflation of its own activities with the State's list-maintenance responsibilities

---

[3] Although New York is not currently an ERIC member, recently-enacted legislation will require the state to join ERIC no later than July 31, 2026. S.B. S1356A, 2025-2026 Reg. Sess. (N.Y. 2025).

[4] *See* ERIC Overview, ERIC, https://perma.cc/V3YF-9R78 (last visited Jan. 20, 2026) ("In compliance with federal and state laws, [member states] use these reports to contact voters for the purposes of updating their record or to remove ineligible and deceased voters from the rolls."). Moreover, ERIC members are required to "hash" (or randomize) sensitive data like social security numbers, driver's license numbers, or dates of birth *before* transmitting them. Technology & Security Overview, ERIC, https://perma.cc/7W8Q-LDJR (last visited Jan. 20, 2026).

demonstrates that Plaintiff is attempting to take over the State's statutorily mandated role.  *See Weber* Order at 21-23.

*Second*, Plaintiff incorrectly describes the data received by private litigants in *Coalition for Open Democracy v. Scanlan*, No. 24-CV-312-SE, 2025 WL 1503937 (D.N.H. May 27, 2025). Pl. Br. at 26. Plaintiff's description is incorrect in two crucial ways: (1) the private litigants in that case did not receive identification numbers as a result of discovery request, and, importantly, (2) the private litigants obtained the state voter roll as part of discovery in litigation of constitutional claims, and with the protection of a strict protective order. 2025 WL 1503937 at *5; Protective Order, *Coal. for Open Democracy v. Scanlan*, No. 24-CV-312-SE (D.N.H. June 18, 2025), ECF Nos. 87, 87-1.

*Third*, Plaintiff's reference to 20-year-old settlements in Georgia and Texas similarly does not help its case. Pl. Br. at 20. Most importantly, neither case resulted in any sort of decision by a court, so neither is helpful in determining the scope of the Attorney General's authority under the CRA, nor whether USDOJ followed proper procedure under the law. *See Lazaro v. Liberty Car Serv., Inc.*, No. 19 CV 7314 (LDH)(LB), 2021 WL 5508071, at *4 n.3 (E.D.N.Y. Mar. 23, 2021), *report and recommendation adopted*, No. 19-CV-7314 (LDH)(LB), 2021 WL 4487874 (E.D.N.Y. Sep. 30, 2021) ("Counsel's own motion seeking settlement approval in another matter is far from persuasive authority."). Moreover, both settlement agreements provide much more protection for the data than USDOJ has indicated would occur here. For example, in its Memorandum of Understanding with Texas, USDOJ agreed to give the state notice before disclosing any of the information received outside of USDOJ, and that it would destroy the information after its use. ECF No. 81-2 at 32-33. Similarly, in the Georgia consent decree, the court limited USDOJ's use of the data received and similarly prohibited its redisclosure except to Congress, a court, or grand

jury, and required USDOJ to eventually destroy the records. ECF No. 81-2 at 43-44. Plaintiff provides no such assurances here, and its proposed Memorandum of Understanding with other states currently indicates that it will not abide by such limitations.[5] And importantly, the Texas and Georgia examples are the only ones from the last 60 years that Plaintiff has mentioned, demonstrating that Plaintiff's broad use of the CRA to sweep up sensitive data from across the country is far outside normal bounds. *See* Brief of Amici Curiae Former Employees of the U.S. Department of Justice, *United States v. Weber*, No. 2:25-cv-09149-DOC-ADS, 21-23 (C.D. Cal Dec. 22, 2025), ECF No. 121.

**B. Plaintiff failed to state a claim under the NVRA.**

Plaintiff barely opposes the motions to dismiss its NVRA claim, including a mere paragraph that does not address all of LWVNYS's arguments. Caselaw interpreting the NVRA plainly demonstrates that sensitive personal data does not fall under Section 8(i)'s disclosure provision. *Pub. Int. Legal Found., Inc. v. Bellows*, 92 F.4th 36, 44 (1st Cir. 2024); s*ee also Project Vote, Inc. v. Kemp*, 208 F. Supp. 3d 1320, 1325 (N.D. Ga. 2016) (citing 52 U.S.C. § 20507(a)(3)-(4)); *id*. at 1345 (personal information like social security numbers and birth dates "is not relevant . . . to determine whether the State improperly removed or did not add individuals to the voter roll"); *id*. at 1344; *Weber* Order at 20. And Plaintiff does nothing to explain why it needs access to driver's license numbers, other DMV identifiers, and social security numbers to evaluate

---

[5] For example, the Colorado MOU provides that USDOJ will "archive and store electronic data containing confidential information offline in a secure location" and that USDOJ may use such data "for certain routine, or pre-litigation or litigation purposes including: present VRL/Data to a court, magistrate, or administrative tribunal; a contractor with the Department of Justice who needs access to the VRL/Data information in order to perform duties related to the Department's list maintenance verification procedures." *See* Proposed "Confidential Memorandum of Understanding" sent to Colorado, https://www.documentcloud.org/documents/26330926-vrldata-sharing-agreement-doj-co/ at 6-7. This is contrary to USDOJ's assertion that it will "strictly abide by [the] statutory limitations" of 52 U.S.C. § 20704; *cf.* Pl. Br. at 25 n.12.

New York's general list-maintenance program—its charge under the NVRA's list-maintenance provisions. *See Weber* Order at 15. To the contrary, Plaintiff's response addresses the "voter registration list" more generally which, of course, it already has. Compl. ¶ 1. And Plaintiff simply does not respond to LWVNYS's remaining arguments, such as its explanation of why state law is not preempted. *See Jackson v. City of New York*, No. 10 CIV. 7889(RMB), 2013 WL 541510, at *6 (S.D.N.Y. Feb. 14, 2013) (quoting *Hooks v. Forman Holt Eliades & Ravin LLC*, No. 11 Civ. 2767(LAP), 2012 WL 3322637, at *7 (S.D.N.Y. Aug. 13, 2012)) ("[T]o the extent Plaintiffs have failed to respond to the arguments raised by Defendants in their briefing . . . Plaintiffs have effectively waived this claim.") (modifications in original).

### C. Plaintiff failed to state a claim under HAVA.

Plaintiff similarly seems to concede that Count III, its HAVA claim, should be dismissed. Unlike the NVRA, HAVA does not contain a provision through which the Attorney General or the public may request records. *Weber* Order at 24-25. The NVRA was already in place when Congress passed HAVA, and its repeated invocation of the NVRA elsewhere demonstrates that "Congress knew how to reference the NVRA." *Bellito v. Snipes*, 935 F.3d 1192, 1202 (11th Cir. 2019). But Congress chose not to incorporate a disclosure provision or to craft one specific to HAVA. As a result, nothing in HAVA authorizes the Attorney General's demand for detailed voter information from New York.

Plaintiff argues that HAVA's lack of a private right of action means this Court should read in a public disclosure provision. Pl. Br. at 34. That argument is unpersuasive. HAVA gives the Attorney General authority to enforce certain sections of HAVA, including the list-maintenance requirements detailed in 52 U.S.C. § 21083(a). 52 U.S.C. § 21111. But Plaintiff did not file a civil action to enforce the provisions of HAVA, nor is it engaged in discovery in such litigation. Again,

Plaintiff says it may use the CRA as a vehicle to get any information that it could possibly access under a HAVA enforcement action, but these are separate statutes with separate requirements. *See* Pl. Br. at 34-35. Plaintiff alleged no HAVA violation and cannot benefit from the discovery that may be available in that type of case. *See Weber* Order at 25 ("Even the federal government is not permitted to sue first, obtain discovery, and finalize its allegations later.").

Finally, the argument that the power to enforce HAVA implies an ability to compel New York to produce the unredacted voter list is unpersuasive. A static, unredacted copy of the voter registration list is not necessary—or even useful—to determine whether New York is complying with HAVA's list-maintenance requirements, *see* ECF No. 73-2 at 32-33, but, in any case, Plaintiff makes no effort to explain how the Attorney General's enforcement authority implies a disclosure provision where Congress has chosen not to enact one. As such, Plaintiff failed to allege a cognizable claim that New York has violated HAVA by failing to comply with USDOJ's demand for the unredacted voter list.

### D.  State and federal privacy laws are important legal considerations in this litigation.

In analyzing the motions to dismiss and Plaintiff's Complaint, the Court should not cast aside state and federal privacy protections. Courts do not override state law under the preemption doctrine unless it is necessary to enforce the federal law at issue. *See Dalton v. Little Rock Family Plan. Servs.*, 516 U.S. 474, 476-78 (1996) (state law should be "displaced only to the extent that it actually conflicts with federal law"); *Arizona v. Inter Tribal Council of Arizona, Inc.*, 570 U.S. 1, 9 (2013) (federal law preempts state law only "so far as the conflict extends"). Plaintiff claims that it requested New York's unredacted voter file to assess whether the state has complied with its statutory list-maintenance obligations under the NVRA and HAVA, but as explained previously, ECF No. 73-2 at 30-33, the unredacted voter file will shed no light on whether New

York has complied with these requirements. Unsurprisingly, then, courts have regularly found that laws like the NVRA do not require production of the sensitive voter information that Plaintiff has requested and New York law protects. *PILF*, 92 F.4th at 56; *Project Vote/Voting for America, Inc. v. Long*, 682 F.3d 331, 339-40 (4th Cir. 2012); *True the Vote v. Hosemann*, 43 F. Supp. 3d 693, 736 (S.D. Miss. 2014). Given Plaintiff's lack of need for this sensitive information, preempting New York law would be an improper breach of New York's sovereignty and principles of federalism. *See Weber* Order at 22-24.

Plaintiff's response to the concerns regarding *federal* privacy law are similarly unpersuasive and largely repeat allegations from the Complaint. Pl. Br. at 27-32; *but see Weber* Order at 27 (finding Plaintiff is violating federal privacy laws). Congress enacted the Privacy Act, E-Government Act, and Driver's Privacy Protection Act to secure the data of its residents against federal intrusion. Given the unprecedented nature of Plaintiff's approach, and the questions surrounding its planned use for this data, these laws indicate the Court should hold Plaintiff to a high standard and closely examine whether the procedures surrounding its likely use comply with those statutes.

### III.    Plaintiff's Motion should be denied.

For the reasons stated in Section II, *supra*, Plaintiff has failed to state a claim upon which relief may be granted under the CRA, NVRA, and HAVA, and this case should be dismissed without further proceedings. Fed. R. Civ. P. 12(b)(6). Plaintiff relies on many of those same arguments in support of its Motion, *see* ECF No. 81; Pl. Br. at 11, 13, and the Motion should therefore be denied for the same reasons. Plaintiff's Motion should also be denied because it fails to comply with either this Court's local rules or the Federal Rules of Civil Procedure applicable to this proceeding. *See* Section I, *supra*. These are not formalities but are the basic requirements for

parties and the Court alike. *See Bank of Nova Scotia v. United States*, 487 U.S. 250, 255 (1988) ("[F]ederal courts have no more discretion to disregard [a] Rule's mandate than they do to disregard constitutional or statutory provisions."); *see also Meaney v. CHS Acquisition Corp.*, 103 F. Supp. 2d 104, 108 (N.D.N.Y. 2000) ("Our District's requirements are not empty formalities."). The Court should reject Plaintiff's invitation to sidestep the various rules that provide for the efficient and just adjudication of civil matters; the procedural defects in Plaintiff's Motion independently require denial.

### A.   The Motion is not a proper cross-motion.

As an initial matter, although it is captioned as a "Notice of Cross-Motion," Plaintiff's Motion fails to comply with the local rules for motions practice. Local Rule 7.1(c) defines a cross-motion as a "request for relief that competes with the relief requested by another party against the cross-moving party." L.R. 7.1(c). Rule 7.1(c) is thus appropriate where, for example, a party files a cross-motion for summary judgment under Rule 56. *See Funches v. Fischer*, No. 1:11-CV-0869 (GTS/CFH), 2014 WL 1312048, at *10 (N.D.N.Y. Mar. 31, 2014), *aff'd*, 588 F. App'x 50 (2d Cir. 2014). A cross-motion in response to a motion to dismiss may also be appropriate where a Plaintiff seeks to amend its complaint. *See Solomon v. Hum. Servs. Coal. of Tompkins Cnty. Inc.*, No. 5:11-CV-226 (GTS/ATB), 2012 WL 3996875, at *12 n.20 (N.D.N.Y. Sep. 11, 2012) (listing cases). Here, however, Plaintiff's Motion, though titled as a "cross-motion," does not compete with the various pending motions to dismiss but rather seeks something totally different—an order that would functionally provide Plaintiff with the total relief it seeks in this case at the outset of the litigation. *Compare* ECF No. 1 at 17 (requesting that this Court "Order Defendants to provide to the United States the current electronic copy of New York's statewide voter registration list, with all fields . . . ") *with* ECF No. 81 at 2 (same). And unlike the motions to dismiss, Plaintiff's Motion

is accompanied by a declaration, even though no party has yet been afforded the opportunity to take discovery. *See* Fed. R. Civ. P. 26(d)(1). Nor did Plaintiff follow the conferral requirements of Local Rule 7.1(a)(2).

In the parallel litigation pending before the U.S. District Court for the Central District of California, that court admonished Plaintiff for a similar disregard for local rules and procedure, stating:

> The plaintiff is seeking to reach the ultimate question in this case regarding the production of records and thousands of voters' lives will be impacted by this case. And the Court will not be setting the matter on any legal—I don't want to say gamesmanship, but therefore, the motion for order to produce records pursuant to 52 U.S.C. [§] 20701 is denied.
>
> Now, you can once again follow the process and procedure in terms of due process. We'll have time potentially, but this doesn't supply the due process needed.

Transcript at 7:3-12, *United States v. Weber*, No. 2:25-cv-09149-DOC-ADS (Dec. 4, 2025).[6] This Court should take the same approach. The Court's decision on the pending motions to dismiss will either dispose of this case entirely or, at a minimum, narrow and clarify the legal issues involved. In the meantime, this Court should not permit Plaintiff's end-run around the normal procedures required, and the Motion should be denied.[7]

### B.  The Motion is not a proper motion to compel.

Plaintiff's Motion similarly does not meet the requirements of a motion to compel. Motions to compel disclosure or discovery are governed by Rule 37(a), which states in relevant part:

> On notice to other parties and all affected persons, a party may move for an order compelling disclosure or discovery. The motion must include a certification that the movant has in good faith conferred or attempted to confer with the person or party failing to make disclosure or discovery in an effort to obtain it without court action.

---

[6] Previously filed on the docket in this case as ECF No. 78-3.
[7] Although the Motion is not a proper cross-motion under Local Rule 7.1(c), for the avoidance of doubt, LWVNYS is nonetheless responding on the schedule previously set for replies in support of the motions to dismiss.

Fed. R. Civ. P. 37(a)(1). But, of course, there has been no discovery, nor is discovery yet permitted. Fed. R. Civ. P. 26(d)(1). Plaintiff has not issued any sort of enforceable instrument like a subpoena. Furthermore, Plaintiff has complied with none of the separate conferral obligations required for such a motion. *See* Fed. R. Civ. P. 37(a); L.R. 37.1. Failure to comply with these procedures, alone, is reason to deny a motion to compel. *See Azzarmi v. Key Food Stores Co-Operative Inc.*, No. 20-CV-6835 (GBD) (BCM), 2021 WL 1734922, at *3 (S.D.N.Y. May 3, 2021). Although it does not cite Rule 37, Plaintiff has opted to style its Motion as a motion to compel, and it does seek an order compelling certain parties to produce "electronically stored information." Fed. R. Civ. P. 34(a)(1)(A). Given that Plaintiff has not complied with any of the requirements for such a motion, Plaintiff's Motion should be denied.

### C. The Motion is not a proper motion for summary judgment or for injunctive relief.

Finally, given that Plaintiff's Motion seeks the entirety of the relief requested in the Complaint, and specific relief in the form of an order requiring certain parties to disclose the unredacted state voter list, it could be construed as either a motion for summary judgment under Rule 56 or a motion for injunctive relief under Rule 65. Either way, the Motion fails to comply with the applicable rule. For example, although Plaintiff apparently seeks injunctive relief in advance of the pleadings being closed, it makes no attempt to establish either irreparable harm or that there are no legal remedies available, which is fatal to such a motion. *Town of Huntington v. Marsh*, 884 F.2d 648, 651 (2d Cir. 1989) ("The Supreme Court has repeatedly held that the basis for injunctive relief is irreparable injury and the inadequacy of legal remedies."). Similarly, the Motion lacks any argument that Plaintiff's factual positions cannot be generally disputed. *See* Fed. R. Civ. P. 56(c)(1). Nor did Plaintiff submit the statement of material facts required by the local

rules. L.R. 56.1(a). Should the Court determine, following a decision on the pending motions to dismiss, that proceeding under Rule 56 is appropriate, it should do so only after a period of discovery so the parties may test Plaintiff's allegations and determine what facts are at issue. *See e.g.*, Rule 56(d). In the alternative, if the Court accepts that the Motion is a proper cross-motion, the parties should have an opportunity to properly develop the record. *See* Fed. R. Civ. P. 12(d) ("All parties must be given a reasonable opportunity to present all the material that is pertinent to the motion."). Plaintiff's current Motion, however, is plainly insufficient to warrant the requested relief.

## CONCLUSION

For the reasons stated herein and in the League of Women Voters of New York State's Motion to Dismiss and supporting papers, Plaintiff's Complaint should be dismissed and Plaintiff's Cross-Motion to Compel Production of Federal Election Records should be denied.

Dated: January 20, 2026                    Respectfully submitted,

/s/ *Daniel S. Lenz*
Daniel S. Lenz*
Robert Brent Ferguson (N.Y. Bar No. 4890620)*
Sejal Jhaveri (N.Y. Bar No. 5396304)*
Renata O'Donnell (N.Y. Bar No. 5767561)*
Heather Szilagyi*
Alexis Grady*
Kate Hamilton*
Campaign Legal Center
1101 14th St. NW, Suite 400
Washington, D.C. 20005
Tel: (202) 736-2200
Fax: (202) 736-2222
bferguson@campaignlegalcenter.org
dlenz@campaignlegalcenter.org
sjhaveri@campaignlegalcenter.org
rodonnell@campaignlegalcenter.org
hszilagyi@campaignlegalcenter.org

agrady@campaignlegalcenter.org
khamilton@campaignlegalcenter.org

Maura Eileen O'Connor (N.Y. Bar No. 4312302)*
Brennan Center for Justice
at NYU School of Law
777 6th St. NW, Suite 1100
Washington, DC 20001
Tel: (202) 249-7190
oconnore@brennan.law.nyu.edu

Patrick Berry (N.Y. Bar No. 5723135)
Brennan Center for Justice
at NYU School of Law
120 Broadway, Suite 1750
New York, NY 10271
Tel: (646) 292-8310
Fax: (212) 463-7308
berryp@brennan.law.nyu.edu

*Admitted pro hac vice

Counsel for Proposed Intervenor-Defendant
League of Women Voters of New York State

## <u>CERTIFICATE OF SERVICE</u>

I certify that on this 20th day of January 2026, I caused to be served a copy of the above document on all counsel of record and parties via the ECF system.

*<u>/s/ Daniel S. Lenz</u>*
Daniel S. Lenz
