**IN THE UNITED STATES DISTRICT COURT FOR THE
NORTHERN DISTRICT OF NEW YORK**

| | |
|---|---|
| UNITED STATES OF AMERICA, | |
| *Plaintiff*, | |
|    *v.* | Case No. 1:25-cv-01338-MAD-PJE |
| BOARD OF ELECTIONS OF THE STATE OF NEW YORK, et al., | |
| *Defendants*. | |

**PROPOSED INTERVENORS NAACP'S AND THE NAACP NEW YORK STATE
CONFERENCE'S COMBINED PROPOSED RESPONSE IN OPPOSITION TO
PLAINTIFF'S MOTION TO COMPEL AND REPLY IN SUPPORT OF THEIR
PROPOSED MOTION TO DISMISS**

# TABLE OF CONTENTS

Table of Authorities ................................................................................................. ii

Introduction ......................................................................................................... 1

Argument .............................................................................................................. 3

    I.      The Federal Rules govern DOJ's claims. ........................................................3

          A.     DOJ's claims are not exempted from the Federal Rules, which require careful judicial scrutiny of DOJ's complaint. .............................................3

          B.     The pending motions to dismiss are the proper vehicles for either resolving this case or proceeding to any necessary discovery. ...............................8

    II.     DOJ has failed to plead a cognizable request for documents under Title III..................9

          A.     DOJ failed to satisfy Title III's threshold requirements for stating a valid "basis" and "purpose" of its demand. ...................................9

               1.   DOJ did not provide any statement of the "basis" for its demand. ................ 10

               2.   DOJ did not provide a proper "purpose" for its demand. ...........................12

          B.     Title III does not prohibit redaction of sensitive voter information......................15

    III.    DOJ has failed to state a claim for relief under the NVRA or HAVA. .........................19

    IV.    DOJ's motion to compel must further be denied given its failure to comply with the Privacy Act, which serves as another basis for dismissal here. ...............................21

Conclusion ........................................................................................................ 25

# TABLE OF AUTHORITIES

**Cases**                                                                                                          **Page(s)**

*Alabama ex rel. Gallion v. Rogers*,
  187 F. Supp. 848 (M.D. Ala. 1960) ....................................................................................... 12

*Autotech Techs. Ltd. P'ship v. Automationdirect.com, Inc.*,
  235 F.R.D. 435 (N.D. Ill. 2006) ........................................................................................... 21

*Carr v. Marietta Corp.*,
  211 F.3d 724 (2d Cir. 2000) ................................................................................................. 11

*CFPB v. Accrediting Council for Indep. Colls. & Schs.*,
  854 F.3d 683 (D.C. Cir. 2017) ......................................................................................... 7, 9–10

*CFPB v. Source for Pub. Data, L.P.*,
  903 F.3d 456 (5th Cir. 2018) ............................................................................................. 7, 9, 12

*Chan v. U.S. Dep't of Transp.*,
  782 F. Supp. 3d 39 (S.D.N.Y. 2025) ...................................................................................... 15

*Coleman v. Kennedy*,
  313 F.2d 867 (5th Cir. 1963) ............................................................................................... 13

*Common Cause/New York v. Brehm*,
  344 F. Supp. 3d 542 (S.D.N.Y. 2018) ..................................................................................... 4

*Crum v. Dodrill*,
  562 F. Supp. 2d 366 (N.D.N.Y. 2008) .................................................................................... 21

*Fifth Third Bancorp v. Dudenhoeffer*,
  573 U.S. 409 (2014) ............................................................................................................ 8

*Home Depot U.S.A., Inc. v. Jackson*,
  587 U.S. 435 (2019) ........................................................................................................... 13

*In re Admin. Subpoena, No. 25-1431-019*,
  800 F. Supp. 3d 229 (D. Mass. 2025) ............................................................................... 14–15

*In re Coleman*,
  208 F. Supp. 199 (S.D. Miss. 1962) ...................................................................................... 11

*In re Subpoena No. 25-1431-014*,
  No. 2:25-MC-00039-MAK, 2025 WL 3252648 (E.D. Pa. Nov. 21, 2025) ....................... 14–15

*Kalin v. Xanboo, Inc*,
   526 F. Supp. 2d 392 (S.D.N.Y. 2007) ............................................................... 9

*Kennedy v. Bruce*,
   298 F.2d 860 (5th Cir. 1962) ............................................................... 11–12

*Kennedy v. Lynd*,
   306 F.2d 222 (5th Cir. 1962) ............................................................... passim

*League of Women Voters v. U.S. Dep't of Homeland Sec.*,
   No. 1:25-cv-03501-SLS, 2025 WL 3198970 (D.D.C. Nov. 17, 2025) ............................ 22–24

*Loeber v. Spargo*,
   No. 1:04-CV-1193 LEK-RFT, 2008 WL 111172 (N.D.N.Y. Jan. 8, 2008) ......................... 4

*Meyer v. Seidel*,
   89 F.4th 117 (2d Cir. 2023) ............................................................... 8

*Off. Comm. of Unsecured Creditors of Color Tile, Inc. v. Coopers & Lybrand, LLP*,
   322 F.3d 147 (2d Cir. 2003) ............................................................... 25

*Pippinger v. Rubin*,
   129 F.3d 519 (10th Cir. 1997) ............................................................... 24

*Pub. Int. Legal Found., Inc. v. Bellows*,
   92 F.4th 36 (1st Cir. 2024) ............................................................... 16, 18

*Rosendale v. Lejeune*,
   420 F. Supp. 2d 315 (S.D.N.Y. 2006) ............................................................... 21

*Smith v. City of Jackson*,
   544 U.S. 228 (2005) ............................................................... 17

*Spencer-Smith v. Ehrlich*,
   347 F.R.D. 606 (S.D.N.Y. 2024) ............................................................... 21

*Steel Inst. of N.Y. v. City of New York*,
   716 F.3d 31 (2d Cir. 2013) ............................................................... 16

*U.S. Smokeless Tobacco Mfg. Co., LLC v. City of New York*,
   703 F. Supp. 2d 329 (S.D.N.Y. 2010) ............................................................... 16

*United States v. Edwards*,
   172 F. App'x 844 (10th Cir. 2006) ............................................................... 7

*United States v. New York*,
   700 F. Supp. 2d 186 (N.D.N.Y. 2010) ............................................................... 4

*United States v. Palomar-Santiago,*
  593 U.S. 321 (2021) ........................................................................... 11

*United States v. Powell,*
  379 U.S. 48 (1964). ........................................................................ 5–7

*United States v. Weber,*
  No. 2:25-CV-09149-DOC-ADS, 2026 WL 118807 (C.D. Cal. Jan. 15, 2026) ................ passim

*Util. Air Regul. Grp. v. EPA,*
  573 U.S. 302, 321 (2014) ................................................................... 13

*Voter Reference Found., LLC v. Torrez,*
  160 F.4th 1068 (10th Cir. 2025) ...................................................... 17–18

*Watson Lab'ys, Inc. v. Forest Lab'ys Inc.,*
  101 F.4th 223 (2d Cir. 2024) ................................................................. 3

**Federal Statutes**

5 U.S.C. § 552a ................................................................... 17, 22, 25

18 U.S.C. § 2721 ......................................................................... 17

26 U.S.C. § 7604 .......................................................................... 6

29 U.S.C. § 161 ........................................................................... 4

52 U.S.C. § 20507 ............................................................ 14, 17–20

52 U.S.C. § 20510 .......................................................................... 4

52 U.S.C. § 20703 ................................................................... passim

52 U.S.C. § 20705 ...................................................................... 5–6

52 U.S.C. § 21083 ........................................................................ 19

52 U.S.C. § 21085 ........................................................................ 14

52 U.S.C. § 21111 ......................................................................... 4

**State Statutes**

N.M. Stat. § 1-6C-4 ........................................................................................... 17

N.M. Stat. § 1-4-5.5 .......................................................................................... 17

N.Y. Elec. Law § 3-220 ............................................................................ 6, 16, 18

**Federal Rules**

Fed. R. Civ. P. 1 ................................................................................................ 3

Fed. R. Civ. P. 81 .............................................................................................. 3

**Federal Regulations**

68 Fed. Reg. 47610 (Aug. 11, 2003) ............................................................... 23

70 Fed. Reg. 43904 (July 20, 2005) ................................................................ 24

82 Fed. Reg. 24147 (May 25, 2017) ............................................................... 24

**Other Authorities**

Antonin Scalia & Brian A. Garner, *Reading Law* (2012)............................ 16–17

*Basis*, *Black's Law Dictionary* (4th ed. 1968) ........................................... 10

H.R. Rep. No. 86-956 (1959)...................................................................... 12–13

Jaime Adame, *In 'tentative' ruling, judge denies federal access to Oregon voter data*, LookOut Eugene-Springfield (Jan. 14, 2026), https://lookouteugene-springfield.com/story/justice/2026/01/14/in-tentative-ruling-judge-denies-federal-access-to-oregon-voter-data/ [https://perma.cc/P2T7-4DC8] .................................................... 1

*Purpose*, *Black's Law Dictionary* (4th ed. 1968) ..................................... 10

## INTRODUCTION

DOJ's meandering brief, styled as a combined response to the motions to dismiss and a "cross-motion to compel production," confirms that it fails to state a claim under any of the statutes it relies upon in this case, be it Title III of the Civil Rights Act of 1960, the National Voter Registration Act ("NVRA"), or the Help America Vote Act ("HAVA").[1] Indeed, just last week, a federal court dismissed DOJ's equivalent suit in California, holding for reasons similar to those stated in the motions to dismiss that DOJ failed to state a claim under each of the same statutes under the same theories that it alleges in this action. *See United States v. Weber*, No. 2:25-CV-09149-DOC-ADS, 2026 WL 118807 (C.D. Cal. Jan. 15, 2026). This Court should do the same.[2]

First, a Title III demand requires an explicit "statement of the basis and the purpose therefor," 52 U.S.C. § 20703—in other words, it must articulate a basis to believe that state officials have violated some federal law and identify DOJ's purpose in demanding the information in question. At no point—even now—has DOJ provided *any* basis for its demand. And while it has since asserted a purpose (in its complaint and subsequent legal filings), it was required to assert it in its pre-litigation demand to New York. Nevertheless, even if the Court could consider DOJ's *post hoc* purpose, DOJ fails to justify its demand. DOJ's primary counterargument—that it need

---

[1] The NAACP and NAACP New York State Conference ("NAACP Intervenors") have moved to intervene in this matter, and no party presently opposes that request. *See* Dkt. Nos. 7, 66. Accordingly, because they have not yet been granted intervention, the NAACP Intervenors submitted a proposed motion to dismiss on the same deadline the Court set for the named Defendants. *See* Dkt. No. 77. The NAACP Intervenors respectfully ask that the Court docket that motion and this reply—*nunc pro tunc* to the date it was filed—if their intervention is granted.

[2] Similarly, a federal judge hearing DOJ's parallel lawsuit in Oregon advised the parties from the bench last week that he tentatively plans to grant the motions to dismiss filed in that case, in which the DOJ again advanced the same three claims that it presents here. *See* Jaime Adame, *In 'tentative' ruling, judge denies federal access to Oregon voter data*, LookOut Eugene-Springfield (Jan. 14, 2026), https://lookouteugene-springfield.com/story/justice/2026/01/14/in-tentative-ruling-judge-denies-federal-access-to-oregon-voter-data/ [https://perma.cc/P2T7-4DC8].

not provide a basis and that *any* purpose suffices—is divorced from Title III's plain text and its statutory context and fails as a matter of law. Likewise, DOJ's insistence that courts cannot scrutinize the basis and purpose for its sweeping demand *at all* relies on an out-of-circuit (and decades-old) decision that is contrary to intervening Supreme Court precedent. For good reason. Among other things, it would grant the federal government unprecedented and unfettered power to invade a traditional domain of states on nothing more than a whim and use the federal judiciary to abuse its authority. This is plainly not what Congress authorized.

Second, DOJ's NVRA and HAVA claims also fail. In an implicit concession of the weakness of these claims, DOJ has ceased even alleging them in the most recent 17 of the otherwise effectively identical suits that it has filed against other states—and it barely defends them here. It is plain that the NVRA's public inspection provision does not reach as far as DOJ seeks to stretch it, and HAVA contains no disclosure obligations for states of any kind (as DOJ now admits). DOJ's suggestion that it can allege a HAVA claim and then use the discovery process to obtain the documents it seeks puts the cart before the horse—it must allege a plausible claim *before* it may be entitled to discovery. It has not done so here as to *any* of its claims.

Third, a host of other laws also ultimately require dismissal. None of the federal laws that DOJ invokes preempt New York's own privacy laws, which the state has appropriately invoked here to prevent disclosure. The Privacy Act also prohibits unfettered governmental acquisition of individuals' personal information and requires the agency to implement procedural safeguards before doing so. Because DOJ has not complied with these requirements, it has no right to the sensitive voter data it seeks.

Rather than address the defects in its complaint, DOJ insists that Rule 12(b) does not even apply and effectively asks the Court to award it final relief by granting its motion to compel. But

the Federal Rules of Civil Procedure are clear that they "govern the procedure in *all* civil actions," Fed. R. Civ. P. 1, including this one, absent express exemption by Congress. And *nothing* in the text of Title III supports ignoring the Federal Rules or grants DOJ a special shortcut to litigating this civil action. Here, again, too, the DOJ's sole support for its decision is an out-of-circuit opinion that not only arose in a completely different context, but has since been displaced by intervening Supreme Court authority.

Thus, this Court must first resolve the pending Rule 12(b) motions, which serve to ensure that "the facts alleged [are] sufficient to state a claim to relief that is plausible on its face." *Watson Lab'ys, Inc. v. Forest Lab'ys Inc.*, 101 F.4th 223, 235 (2d Cir. 2024) (quotation omitted). The Court should grant those motions, dismiss the complaint with prejudice, and deny the cross-motion to compel. But even if DOJ's complaint could survive the motions to dismiss—and it cannot—the case should then proceed to discovery, summary judgment, and trial if necessary.

## ARGUMENT

### I.    The Federal Rules govern DOJ's claims.

#### A.    DOJ's claims are not exempted from the Federal Rules, which require careful judicial scrutiny of DOJ's complaint.

DOJ focuses much of its response on its misguided argument that Title III of the Civil Rights Act of 1960 exempts this case from the ordinary Federal Rules. *See* Dkt. No. 81-1 ("DOJ Mem.") at 8–10, 17–18. But the Rules "govern the procedure in *all civil actions and proceedings* in the United States district courts, except as stated in Rule 81." Fed. R. Civ. P. 1 (emphasis added). This case is just such an action. Although Rule 81 sets out a narrow set of prescribed cases that are exempt from the ordinary rules—such as certain admiralty or bankruptcy actions—none involve Title III. *See* Fed. R. Civ. P. 81(a). Indeed, Rule 81(a)(5) affirms that the Federal Rules generally apply to actions involving a subpoena, "except as otherwise provided by statute, by local rule, or

by court order in the proceedings"—a limited exception that does not apply here because the statutes underlying DOJ's claims do not authorize it to issue subpoenas for compliance. Congress knows how to create subpoena power and special proceedings to enforce those subpoenas, *see, e.g.*, 29 U.S.C. § 161(1)–(2) (authorizing National Labor Relations Board to issue subpoenas and seek "court aid" in compelling compliance under threat of contempt), but it did not do so for the NVRA, HAVA, or Title III. Accordingly, this action is governed by the Federal Rules of Civil Procedure, just like all other civil actions that lack special carveouts in statutes or the Federal Rules. *See Weber*, 2026 WL 118807, at *8 (denying DOJ's motion to compel in parallel case).

Nothing in the statutes DOJ relies upon supports departing from the Federal Rules. The NVRA, for example, authorizes the Attorney General to "bring a *civil action* in an appropriate district court for such declaratory or injunctive relief as is necessary to carry out this chapter," 52 U.S.C. § 20510(a) (emphasis added), but it nowhere exempts those actions from the Federal Rules. The same goes for HAVA. *See* 52 U.S.C. § 21111 (authorizing Attorney General to "bring a *civil action* against any State or jurisdiction in an appropriate United States District Court" for declaratory or injunctive relief under certain sections of HAVA (emphasis added)). Indeed, district courts regularly hear NVRA and HAVA civil actions under the Federal Rules. *See, e.g.*, *Common Cause/New York v. Brehm*, 344 F. Supp. 3d 542, 549 (S.D.N.Y. 2018); *United States v. New York*, 700 F. Supp. 2d 186, 206 (N.D.N.Y. 2010); *Loeber v. Spargo*, No. 1:04-CV-1193 LEK-RFT, 2008 WL 111172, at *1 (N.D.N.Y. Jan. 8, 2008), *aff'd*, 391 F. App'x 55 (2d Cir. 2010). Despite the large volume of such cases in federal district courts, DOJ does not identify *any* that have been resolved outside of the Federal Rules. NAACP Intervenors are not aware of any either.[3]

---

[3] DOJ suggests that the NVRA and HAVA must be read in conjunction with the Civil Rights Act of 1960 as a suite of laws providing DOJ access to statewide voter registration lists. *See* DOJ Mem.

DOJ pins its request chiefly on Title III of the Civil Rights Act of 1960, claiming that the jurisdictional portion of that statute creates a "special statutory proceeding" and implicitly renders the Federal Rules "inapplicable." DOJ Mem. at 10. But Title III does no such thing. The statute merely assigns jurisdiction to hear Title III disputes to "[t]he United States district court for the district in which a demand is made," and provides that such courts may "by appropriate process" compel the production of covered records. 52 U.S.C. § 20705. Nothing in that language suggests that the "appropriate process" should be anything other than that which federal courts ordinarily apply to resolve contested cases. And as the Supreme Court has held, where a statute like this one "contains no provision specifying the procedure to be followed in invoking the court's jurisdiction, *the Federal Rules of Civil Procedure apply*." *United States v. Powell*, 379 U.S. 48, 58 n.18 (1964) (emphasis added).

DOJ relies exclusively on a Fifth Circuit opinion from 1962 that describes an action to enforce Title III of the Civil Rights Act of 1960 as a "special statutory proceeding" with minimal judicial involvement. DOJ Mem. at 10 (quoting *Kennedy v. Lynd*, 306 F.2d 222, 225 (5th Cir. 1962)). But *Lynd*'s conclusion on that score finds no support in the statutory text and is fundamentally out of step with modern jurisprudence—both as to the applicability of the Federal Rules and the need for searching judicial review. Just two years after *Lynd*, the Supreme Court squarely rejected the Fifth Circuit's reasoning in *United States v. Powell*, which concerned a government request for a district court to enforce a tax subpoena under a statute materially similar to Title III. *See* 379 U.S. at 57–58. DOJ even cites *Powell* in passing in a footnote, *see* DOJ Mem. at 9 n.8, but ignores that *Powell*'s holding obliterates DOJ's entire theory of the case here. Namely,

_____

at 29–30. But, as explained, every NVRA and HAVA case that the NAACP Intervenors are aware of has applied the Federal Rules. Thus, DOJ's own argument regarding the interplay of these laws cuts against its position that the Federal Rules do not apply.

the Supreme Court in *Powell* held that to invoke the powers of a federal court to enforce the subpoena, the government must show its investigation "will be conducted pursuant to a legitimate purpose" and that "the inquiry may be relevant to the purpose," notwithstanding broad statutory language underlying the subpoena in that case. *See* 379 U.S. at 57–58. As *Powell* explained, "[i]t is the court's process which is invoked to enforce the administrative summons and a court may not permit its process to be abused." *Id.* (noting "an abuse would take place if the summons had been issued for an improper purpose"). *Lynd*'s refusal to engage in meaningful judicial review of government document requests is thus simply not the law.[4]

For the same reasons, *Powell* also rebuffed the government's attempt to depart from the Federal Rules, holding that because the statute at issue did not specify the "procedure to be followed in invoking the court's jurisdiction, *the Federal Rules of Civil Procedure apply*." 379 U.S. at 58 n.18 (emphasis added). The jurisdictional provision in the subpoena statute interpreted in *Powell* is *virtually identical* to that in Title III. *Compare* 26 U.S.C. § 7604(a) ("[T]he United States district court for the district in which such person resides or is found *shall have jurisdiction by appropriate process* to compel such attendance, testimony, or production of books, papers, records, or other data[.]" (emphasis added)), *with* 52 U.S.C. § 20705 ("The United States district

---

[4] The procedure and facts in *Lynd* also differ starkly from those here. To start, that appeal consolidated five separate cases from two different states and two judicial districts. *Lynd*, 306 F.2d at 225. The precise procedures—whether pursuant to the Federal Rules or not—are not detailed for each case, nor did the Fifth Circuit question them. There is nothing in *Lynd* that supports the procedural maneuver DOJ tries here. The *Lynd* court also had no reason to doubt that DOJ invoked Title III for a valid purpose. As the court explained, Title III's "clearest purpose" is to permit investigations "concerning infringement or denial of . . . voting rights." 306 F.2d at 228. In *Lynd*, DOJ was doing just that: demanding voter records from counties in Mississippi and parishes in Louisiana "based upon information in the possession of the Attorney General tending to show that distinctions on the basis of race or color have been made with respect to registration and voting within your jurisdiction." *Id.* at 229 n.6. And *Lynd* emphasized that the DOJ in the case before it did *not* seek "confidential, private" records, *id.* at 231, whereas DOJ here demands sensitive voter information protected from disclosure under New York law, *see* N.Y. Elec. Law § 3-220(1).

court for the district in which a demand is made . . . or in which a record or paper so demanded is located, *shall have jurisdiction by appropriate process* to compel the production of such record or paper." (emphasis added)). In other words, the Supreme Court made clear that claimants cannot evade the Federal Rules under such a jurisdictional provision merely due to an offhand reference to "appropriate process." *See Weber*, 2026 WL 118807, at *8 & n.15 (recognizing that *Powell* "found that courts should apply standard civil procedures in ensuring [statutory] prerequisites are satisfied under a similarly worded statute"). The reasoning of *Powell*—which, unlike *Lynd*, binds this Court—forecloses any notion that Title III's simple jurisdictional grant and reference to "appropriate process" requires departing from the Federal Rules for some non-existent summary or special proceeding of DOJ's own creation.

Since *Powell*, courts—including the circuit court that issued *Lynd*—have regularly engaged in meaningful judicial review of government document requests in civil actions governed by the Federal Rules. *See, e.g.*, *CFPB v. Source for Pub. Data, L.P.*, 903 F.3d 456, 458–60 (5th Cir. 2018) (reversing order to enforce civil investigative demand after inquiry into sufficiency of purpose and basis of demand); *CFPB v. Accrediting Council for Indep. Colls. & Schs.*, 854 F.3d 683, 690 (D.C. Cir. 2017) ("*ACICS*") (rejecting "perfunctory" statement of purpose in issuing civil investigative demand, reasoning agencies are "not afforded unfettered authority to cast about for potential wrongdoing") (citation modified); *United States v. Edwards*, 172 F. App'x 844, 846 (10th Cir. 2006) (observing that summons recipient may rebut government's prima facie case) (discussing *Powell*). Since nothing in its text exempts Title III enforcement actions from judicial review or the Federal Rules, there is no reason why Title III should be treated any differently. This Court should reject DOJ's suggestion that Title III displaces the Federal Rules of Civil Procedure, and apply those Federal Rules as it does in nearly every other civil action.

**B.     The pending motions to dismiss are the proper vehicles for either resolving this case or proceeding to any necessary discovery.**

For the reasons above, the Court should resolve this case via the pending motions to dismiss and not a "motion to compel production of federal election records" that is not sanctioned by the Federal Rules or any other law. The Federal Rules provide for motions to dismiss for a simple and sound reason: to test the sufficiency of the complaint. *See Meyer v. Seidel*, 89 F.4th 117, 139 (2d Cir. 2023) (discussing *Ashcroft v. Iqbal*, 556 U.S. 662 (2009)). As the Supreme Court has put it, motions to dismiss serve as an "important mechanism for weeding out meritless claims." *Fifth Third Bancorp v. Dudenhoeffer*, 573 U.S. 409, 425 (2014).

Nearly all Defendants and both sets of proposed Intervenor-Defendants have filed timely motions to dismiss the complaint. As detailed in those motions, DOJ has *no* statutory basis for its unprecedented demands for unredacted voter lists containing sensitive, private information about all of New York's over 12 million registered voters—or for its nearly-identical demands of two dozen other states. *See* Dkt. 77-1 ("NAACP Mem.") at 14–21; *see also infra* Section II.A. Given the fatal deficiencies in the complaint, resolving DOJ's motion to compel first would get things backwards, depriving Defendants of their opportunity to test the legal sufficiency of DOJ's claims at the outset, as the Federal Rules envision. That is particularly so since DOJ's motion to compel effectively demands the ultimate relief DOJ seeks in this case—production of New York's unredacted statewide voter registration list ("SVRL"). *See* DOJ Mem. at 3 (asking the Court for "an order compelling production of New York's SVRL"); Dkt. 1 ("Compl.") at 17–18 (similar). Rather than DOJ's request for final judgment masquerading as a discovery motion, the motions to dismiss are the proper vehicle for resolving DOJ's claims.

Even if the Court denies the motions to dismiss in whole or in part, granting DOJ's cross-motion to compel would still be improper. Under the Federal Rules, the next step would be to

permit discovery on DOJ's claims, including its assertions regarding its intended uses of the data it seeks—which are contradicted by public reporting, *see* NAACP Mem. at 4–7 & nn.1–4—and its allegation that it would abide by federal privacy laws—which there is also substantial reason to doubt. Granting DOJ the final relief it seeks before such discovery occurs would be premature. *See Kalin v. Xanboo, Inc*, 526 F. Supp. 2d 392, 399 (S.D.N.Y. 2007) ("There is therefore no need to convert this Rule 12(b)(6) motion into a motion for summary judgment. Summary judgment normally is inappropriate before parties have had an opportunity for discovery.").

## II.    DOJ has failed to plead a cognizable request for documents under Title III.

DOJ's Title III claim also fails on the merits as a matter of law. Most notably, DOJ has failed to satisfy the core statutory requirement to include a statement of basis and purpose. While it attempts to construct a belated purpose in the complaint—rather than the request itself—that *post hoc* rationale comes too late and is, in any event, not sufficient under the law. Finally, nothing in Title III prohibits the redaction of sensitive, non-public voter information.

### A.    DOJ failed to satisfy Title III's threshold requirements for stating a valid "basis" and "purpose" of its demand.

DOJ does not possess "unfettered authority to cast about for potential wrongdoing," *ACICS*, 854 F.3d at 689 (quotation omitted). Its authority to demand documents and information "is a creature of statute," *Source for Pub. Data*, 903 F.3d at 458, and its demand for information accordingly "must comply with statutory requirements," *id.* at 460. Title III contains two key requirements that DOJ failed to satisfy here: it mandates that any request made under it "shall contain a statement of the basis *and* the purpose therefor." 52 U.S.C. § 20703 (emphasis added). DOJ attempts to exempt itself from these textual requirements, *see* DOJ Mem. at 16–18, but it is obliged to follow these statutory prerequisites for issuing a Title III demand. Because it failed to do so, it has no basis for the relief it seeks. *See, e.g.*, *ACICS*, 854 F.3d at 690 (declining to enforce

civil investigative demand where agency failed to comply with statutory requirements); *Weber*, 2026 WL 118807, at \*8–10 (holding that "DOJ has not complied with Title III of the CRA and has provided an inadequate statement of basis and purpose" and dismissing claim as a result).

Title III's "basis and purpose" requirement is both procedural (*i.e.*, requiring DOJ to include such a statement with the demand) and substantive (*i.e.*, requiring that the statement provide sufficient basis and purpose for the demand). The "basis" requirement ensures that the federal government will not unduly interfere in the states' traditional oversight of elections unless DOJ articulates a concrete reason to believe that a state has denied the right to vote or otherwise violated federal voting rights law. *See Basis*, *Black's Law Dictionary* (4th ed. 1968) (including definitions for "basis" such as the "groundwork," "support," or "foundation" of something). The "purpose" requirement, in turn, ensures that the government's intentions for the information sought are proper and just. *See Purpose*, *Black's Law Dictionary* (4th ed. 1968) (defining "purpose" to include "an end, intention, or aim, object, plan, project"). Because DOJ's demand here is deficient as to both requirements, its Title III claim must be dismissed.

## 1. DOJ did not provide any statement of the "basis" for its demand.

DOJ's written demand to New York did not provide *any* basis for its request for voter records. And the complaint contains zero allegations that DOJ conveyed the requisite statement of basis and purpose *in the demand* that was sent to Defendants. *See, e.g.*, Compl. ¶¶ 53–57. That omission is critical: Title III instructs that the basis of DOJ's request must be contained in the demand itself—this requirement cannot be satisfied by *post hoc* rationales advanced in litigation. *See* 52 U.S.C. § 20703 ("*This demand* shall contain a statement of the basis and the purpose therefor." (emphasis added)).

Indeed, DOJ does not even meaningfully dispute its failure to provide a proper "basis" for its demand, apparently based on the mistaken belief there is no standalone requirement to do so.

Compl. at 16–18. But that is wrong—"[b]ecause the statute speaks of the requirements in the conjunctive, [DOJ] must satisfy both requirements." *Carr v. Marietta Corp.*, 211 F.3d 724, 732 (2d Cir. 2000); *accord United States v. Palomar-Santiago*, 593 U.S. 321, 326 (2021) (similar); *see also Weber*, 2026 WL 118807, at *8–9 (applying both requirements). In fact, the *Lynd* case—which is the principal authority that DOJ cites in its complaint and in its brief—confirms that DOJ has traditionally viewed "basis" as a distinct requirement. There, DOJ provided an explicit statement of *both* the "basis" *and* "purpose" of its demand, as required by Title III:

> This demand *is based upon* information in the possession of the Attorney General tending to show that distinctions on the basis of race or color have been made with respect to registration and voting within your jurisdiction. The *purpose* of this demand is to examine the aforesaid records in order to ascertain whether or not violations of Federal law in regard to registration and voting have occurred.

306 F.2d at 229 n.6 (emphasis added) (internal quotation marks omitted). The demands in other Title III cases from that period likewise contained an explicit statement of both a "basis" *and* "purpose"—as they are expressly required to under Title III. *See Kennedy v. Bruce*, 298 F.2d 860, 861 (5th Cir. 1962); *In re Coleman*, 208 F. Supp. 199, 199–200 (S.D. Miss. 1962), *aff'd sub nom. Coleman v. Kennedy*, 313 F.2d 867 (5th Cir. 1963).

DOJ suggests its demand *did* include a purported "basis" in its August 14, 2025 letter to Defendants. *See* DOJ Mem. at 16–18 (citing Dkt. No. 81-2 at 15). But that letter included only a statement of DOJ's purported *purpose* for demanding New York voters' private data; it contained no mention of the Attorney General's *basis* for initiating its investigation:

> Pursuant to the foregoing authorities, including the [Civil Rights Act], the Attorney General is demanding an electronic copy of New York's complete and current VRL. The purpose of the request is to ascertain New York's compliance with the list maintenance requirements of the NVRA and HAVA.

Dkt. No. 81-2 at 15; *see also* Compl. ¶ 7 (similar). The Court should reject DOJ's improper effort to conflate the distinct requirements and to insist that they can be satisfied with mere boilerplate.

Indeed, DOJ's failure to provide *any* statement regarding the "basis" of its demand when it sought New York's SVRL is sufficient on its own to dismiss the complaint. *See, e.g.*, *Source for Pub. Data*, 903 F.3d at 460 (declining to enforce civil investigative demand because "[an agency] must comply with statutory requirements, and here it did not"); *Weber*, 2026 WL 118807, at *9 (finding that DOJ failed to "establish[] the basis for its request" because it failed to explain why it believed California violated NVRA or why the voter registration list was necessary for its investigation).

### 2.    DOJ did not provide a proper "purpose" for its demand.

DOJ's failure to also articulate a proper purpose for its demand is another reason why its Title III claim should be dismissed. Congress enacted the record retention provisions of Title III "to secure a more effective protection of the right to vote." *Alabama ex rel. Gallion v. Rogers*, 187 F. Supp. 848, 853 (M.D. Ala. 1960), *aff'd sub nom. Dinkens v. Att'y Gen. of U.S.*, 285 F.2d 430 (5th Cir. 1961); *see also* H.R. Rep. No. 86-956, at 7 (1959) (explaining Congress enacted Title III to aid DOJ "during any investigation it may conduct on complaints of a denial to vote"). But DOJ is not seeking New York's SVRL because it suspects any specific violations of federal law or infringement of the right to vote; rather, DOJ seeks merely to "assess its compliance with federal law"—namely, the NVRA and HAVA. Compl. ¶ 2; *see also id.* ¶ 49 ("The public version of the SVRL does not include information that is necessary for the Attorney General to carry out its duties of NVRA and HAVA enforcement and *determine **if*** New York is conducting effective list maintenance." (emphases added)); Dkt. No. 81-2 at 15 ("The purpose of the request is to *ascertain* New York's compliance with the list maintenance requirements of the NVRA and HAVA." (emphasis added)). As NAACP Intervenors have explained, this is insufficient to satisfy Title III, which is not some broad auditing provision that DOJ may invoke at leisure, nor does its scope reach the sort of list maintenance issues identified by DOJ. *See* NAACP Mem. at 18–20; *Bruce*,

298 F.2d at 863 n.2 (noting that jurisdiction's "failure[] to purge voters who have moved away or have died . . . does not bear any particular importance" to Title III inquiry).

DOJ's sole response is to insist that its August 14, 2025 letter satisfies the Title III purpose requirement and that the sufficiency of its purpose may not be challenged in any event. *See* DOJ Mem. at 16–18. But, as explained, there is no Title III exception to the judicial review prescribed by the Federal Rules. *See supra* Section I.A. And, even according to the very cases DOJ relies upon, a bare purpose of "*ascertain[ing]* New York's compliance with . . . the NVRA and HAVA," Dkt. No. 81-2 at 15 (emphasis added), cannot suffice. A satisfactory purpose is one that makes clear the "possible *violations* of a Federal statute" that DOJ seeks to investigate, *Coleman v. Kennedy*, 313 F.2d 867, 868 (5th Cir. 1963) (emphasis added)—a standard that the fishing expedition DOJ has embarked upon falls far short of meeting.

In construing the "purpose" requirement, the Court should "account for both 'the specific context in which . . . language is used' and 'the broader context of the statute as a whole.'" *Util. Air Regul. Grp. v. EPA*, 573 U.S. 302, 321 (2014) (alteration in original) (quoting *Robinson v. Shell Oil Co.*, 519 U.S. 337, 341 (1997)); *see also Home Depot U.S.A., Inc. v. Jackson*, 587 U.S. 435, 441 (2019) ("It is a fundamental canon of statutory construction that the words of a statute must be read in their context and with a view to their place in the overall statutory scheme.") (quoting *Davis v. Mich. Dep't of Treasury*, 489 U.S. 803, 809 (1989)). The term "purpose" must be read in the specific context of the Civil Rights Act of 1960—a law designed to buttress DOJ's enforcement and protection of *civil rights*. *See* H.R. Rep. No. 86-956, at 3 (finding that, while "some progress" has been made since the Civil Rights Act of 1957, there was a "need for additional legislation to implement the enforcement of civil rights"). Indeed, throughout its pre-suit correspondence, complaint, and cross-motion to compel, DOJ has yet to cite a single instance in

13

the 65 years of Title III's existence in which a court read Title III to require the production of records in response to a demand to assess state compliance with the NVRA or HAVA.

Consistent with these principles of statutory interpretation, multiple district courts have in just the past few months quashed records demands when DOJ sought to assert statutory authority for investigations "far removed from those claimed purposes granted by Congress." *In re Subpoena No. 25-1431-014*, No. 2:25-MC-00039-MAK, 2025 WL 3252648, at *12, 17 (E.D. Pa. Nov. 21, 2025) (striking DOJ subpoena that "invoke[d] sweeping needs" for the information, which had "no relevance to the investigation Congress permitted or to the investigation the Department of Justice tells the world it is pursuing"); *see also In re Admin. Subpoena No. 25-1431-019*, 800 F. Supp. 3d 229, 237 (D. Mass. 2025) (quashing subpoena when DOJ "failed to show proper purpose" under the statutory scheme, rejecting the notion that "the Government's self-proclaimed say-so" is sufficient to "preclude any form of judicial review"). And the federal court adjudicating DOJ's parallel suit in California likewise held that assessing NVRA compliance was an improper purpose for DOJ's Title III demand. *See Weber*, 2026 WL 118807, at *9.[5]

Finally, even if determining compliance with the NVRA and HAVA were permissible grounds for making a Title III demand, collecting uniquely sensitive information of every registered New York voter is unnecessary for that purpose. A state's list-maintenance efforts under the NVRA must only be "reasonable," 52 U.S.C. § 20507(a)(4), and HAVA explicitly commits "specific choices . . . to the discretion of the State," 52 U.S.C. § 21085; *see also* NAACP Mem. at

---

[5] While some of the 1960s-era cases that interpreted Title III included language indicating broad deference to the Attorney General's statement of a "basis and . . . purpose" for requesting records, *see Lynd*, 306 F.2d at 226, those cases involved circumstances where Title III was clearly being used for its intended purpose—investigations into the potential denial of voting rights—and are fundamentally different than the circumstances here, where DOJ has offered no justifiable basis to support the need for records to evaluate compliance with two *other* statutes.

18–20. DOJ insists that it needs information such as driver's license numbers and social security numbers to help it identify duplicate registration records and registrants who have moved, died, or are no longer eligible to vote. *See* DOJ Mem. at 21. But the unredacted voter file cannot tell DOJ anything about the *list maintenance procedures* that New York undertook within its discretion under the NVRA and HAVA. If DOJ were to obtain the unredacted voter file, the data would be outdated almost immediately, and even if DOJ were able to use the data to identify voters who have moved or died since that single snapshot in time, it would not mean that New York did not make a "reasonable" list maintenance effort under the NVRA or HAVA. This, too, reinforces that DOJ has failed to identify any reasonable basis or purpose to justify a fishing expedition into New York's compliance with the NVRA and HAVA, requiring dismissal of its action. *See In re Subpoena No. 25-1431-014*, 2025 WL 3252648, at *17; *In re Admin. Subpoena No. 25-1431-019*, 800 F. Supp. 3d at 237; *see also Weber*, 2026 WL 118807, at *9–10 (concluding DOJ could not embark on unwarranted "fishing expedition of voter records in any state looking for concerns, without identifying a single issue with the state's policies beforehand").

### B.    Title III does not prohibit redaction of sensitive voter information.

Finally, even if DOJ had asserted a sufficient basis and purpose, its claim still must be dismissed because the plain text of Title III does not prohibit redaction of sensitive information. *See* NAACP Mem. at 20–21. Here, again, the chief case that DOJ relies upon cannot be reconciled with its sweeping demand here: as that court found, Title III was intended to reach only "*public* records which ought ordinarily to be open to legitimate reasonable inspection," *not* "confidential, private papers and effects." *Lynd*, 306 F.2d at 231 (emphasis added). There is no dispute that the information DOJ seeks here is not typically open to legitimate reasonable inspection and DOJ declines to engage with this argument at all, effectively conceding it. *See* DOJ Mem. at 18–22; *see also Chan v. U.S. Dep't of Transp.*, 782 F. Supp. 3d 39, 65 (S.D.N.Y. 2025) ("It is well-settled

that the failure to oppose an argument raised in a motion to dismiss is deemed a concession of the argument and abandonment of the claims." (citation omitted)).

For similar reasons, Title III also does not override New York's state privacy laws, which protect much of the information DOJ seeks. N.Y. Elec. Law § 3-220. DOJ argues that "Congress has overridden any state laws that conflict with the CRA," DOJ Mem. at 20—but merely saying it is so does not make it the case. DOJ must show that Title III preempts those state laws. It does not. Indeed, because Title III contains no *express* preemption provision, *see* 52 U.S.C. § 20703, DOJ's argument must rest on the idea that New York's privacy protections *impliedly* conflict with Title III. *See Steel Inst. of N.Y. v. City of New York*, 716 F.3d 31, 36 (2d Cir. 2013) (discussing express versus implied preemption). Both the Second Circuit and the Supreme Court have recognized "a strong presumption against" implied conflict preemption. *Id.* (quoting *Medtronic, Inc. v. Lohr*, 518 U.S. 470, 475 (1996)); *see also* Antonin Scalia & Brian A. Garner, *Reading Law* 290 (2012) ("It is a reliable canon of interpretation . . . to presume that a federal statute does not preempt state law.").[6] Only through a showing of a "clear and manifest" congressional purpose to preempt state laws can this presumption be overcome. *See U.S. Smokeless Tobacco Mfg. Co., LLC v. City of New York*, 703 F. Supp. 2d 329, 336 (S.D.N.Y. 2010) ("[I]n all preemption cases . . . courts must 'start with the assumption that the historic police powers of the States [are] not to be superseded by the Federal Act unless that was the clear and manifest purpose of Congress.'" (third alteration in original) (quoting *Lohr*, 518 U.S. at 485)). Title III does not evince anything like a "clear and

---

[6] Although the presumption against preemption "does not hold when Congress acts under the Elections Clause, which empowers Congress to 'make or alter' state elections regulations," *Pub. Int. Legal Found., Inc. v. Bellows*, 92 F.4th 36, 51–52 (1st Cir. 2024) (citation modified), or when Congress otherwise regulates the mechanics of the voting process, Title III addresses only the retention, maintenance, and disclosure of records. It does not address or alter any state election regulations or practices, nor does it implicate any voting requirements.

manifest purpose" that Congress intended to preempt state privacy laws that protect highly sensitive information. Again, as the Fifth Circuit explained in *Lynd*, it does the opposite: Title III was intended to reach "public records which ought ordinarily to be open to legitimate reasonable inspection," but *not* "confidential, private papers and effects." 306 F.2d at 231. Here, DOJ seeks sensitive information that enjoys strong privacy protection under both federal *and* state law. *See, e.g.*, 5 U.S.C. § 552a; 18 U.S.C. § 2721; N.M. Stat. §§ 1-4-5.5(B), 1-6C-4; *see also infra* Part IV. Title III thus does not preempt New York's privacy laws.

This conclusion is reinforced by the judicial consensus that a similar statute—the NVRA—does *not* preempt state laws protecting the same highly sensitive categories of information that DOJ seeks here. Because Title III and the NVRA both touch upon closely related subjects and because Congress used markedly similar language in crafting those enactments, the two statutory provisions should be interpreted similarly. *See, e.g.*, *Smith v. City of Jackson*, 544 U.S. 228, 233 (2005) (plurality opinion) ("[W]hen Congress uses the same language in two statutes having similar purposes . . . it is appropriate to presume that Congress intended that text to have the same meaning in both statutes."); Scalia & Garner, *supra*, at 252 ("[L]aws dealing with the same subject . . . should if possible be interpreted harmoniously.").[7] A straightforward application of that principle dooms DOJ's claim. Multiple courts have held that the NVRA does *not* prohibit states from redacting precisely the information that DOJ demands here. *See, e.g.*, *Voter Reference Found., LLC v. Torrez*, 160 F.4th 1068, 1083 n.14 (10th Cir. 2025) ("To the extent the State wishes to redact appropriate personal information before providing the voter data, the NVRA does not

---

[7] Both Title III and the NVRA require disclosure of certain records relating to voter registration, and they employ similar language to do so. *Compare* 52 U.S.C. § 20703 (Title III: covered voting records held by a state election official "shall, upon demand in writing by the Attorney General . . . be made available for inspection"), *with* 52 U.S.C. § 20507(i)(1) (NVRA: requiring that states "shall make [covered voting records] available for public inspection").

prohibit that limitation.");[8] *Pub. Int. Legal Found.*, 92 F.4th at 56 ("[N]othing in the text of the NVRA prohibits the appropriate redaction of uniquely or highly sensitive personal information in the Voter File."); NAACP Mem. at 10–11 (collecting cases reaching same conclusion). The court considering DOJ's parallel California suit likewise concluded that "states are entitled to redact sensitive voter information, like social security numbers and birthdates, under the NVRA"—and it noted that DOJ itself had conceded this in amicus briefs as recently as 2023. *Weber*, 2026 WL 118807, at *12. Because the NVRA and Title III should be interpreted similarly with respect to demands for the information at issue, Title III cannot be read to preempt state privacy laws such as N.Y. Elec. Law § 3-220(1) that prohibit the disclosure of highly sensitive voter information.

If there were any doubt remaining that Congress did not preempt state privacy laws in Title III, the choices Congress made when it enacted the NVRA and HAVA erase it. DOJ's stated purpose for its demand here is to evaluate New York's compliance with its list maintenance obligations under those statutes. *See* Dkt. No. 81-2 at 15; Compl. ¶¶ 2, 49. If Congress had thought it necessary or desirable for DOJ to have access to highly sensitive information about every voter in a state to ensure that the state was complying with its obligations under the NVRA and HAVA, it would have done so in *those statutes themselves*. But it did not. In fact, Congress created a *different* mechanism meant to ascertain states' compliance with list maintenance obligations: the NVRA inspection provision. *See* 52 U.S.C. § 20507(i). Congress "envisioned" this provision to allow for "critical scrutiny and public audits of voter data," but nonetheless permitted redaction of sensitive voter data. *Voter Reference Found.*, 160 F.4th at 1082–83 & n.14. Indeed, Congress specified that records subject to inspection must include the "names and addresses" of certain

---

[8] Indeed, the Tenth Circuit specifically cited a state-law provision substantially similar to N.Y. Elec. Law § 3-220(1) as an example of a state statute *not* preempted by the NVRA. *Voter Reference Found.,* 160 F.4th at 1082–83 & n.14 (citing N.M. Stat. § 1-4-5.5(B)).

voters, 52 U.S.C. § 20507(i)(2), but stopped short of requiring states to go beyond that and disclose sensitive voter information. That supplies strong evidence that Congress did not intend for Title III to be used as a circuitous method for investigating NVRA compliance; why bother then with prescribing a *narrower* disclosure provision in the NVRA itself? As for HAVA, it contains no disclosure provision at all, and instead explicitly confirms that voter registration lists must be "maintained" and "administered at the State level"—not by the federal government. 52 U.S.C. § 21083(a)(1)(A). In short, there is simply no reason to conclude that Congress intended Title III to preempt state laws protecting highly sensitive information so as to allow the federal government to investigate compliance with separate laws that themselves have no such preemptive effect.[9]

## III.    DOJ has failed to state a claim for relief under the NVRA or HAVA.

DOJ's cursory response with respect to its NVRA and HAVA claims, *see* DOJ Mem. at 28–31, makes apparent why it has omitted these claims from its subsequent otherwise nearly-identical lawsuits against several states, and confirms that those claims should be dismissed.[10]

---

[9] Nor, finally, is there any merit to DOJ's contention that it should be handed the sensitive information it seeks because "private parties have been granted access to even more detailed voter data than what the United States has requested." DOJ Mem. at 21. To the contrary, in the case DOJ cites, *Coalition for Open Democracy v. Scanlan*, No. 1:24-CV-00312-SE-TSM, 2025 WL 1503937 (D.N.H. May 27, 2025), the court *excluded* social security numbers and other confidential information, and entered a protective order strictly limiting who can view the limited information that was produced, how they can view it, and for what purposes. *See* Protective Order & Schedule A, *Coal. for Open Democracy v. Formella*, No. 1:24-CV-00312-SE-TSM (D.N.H. June 18, 2025), Dkt. Nos. 87 & 87-1. Despite having been told this in several other cases already, including as early as two whole months before DOJ filed its combined brief here, *see, e.g.*, Reply Br. Supp. Mot. Intervene, *United States v. Weber*, No. 2:25-CV-09149-DOC-ADS (C.D. Cal. Nov. 3, 2025), Dkt. No. 31; Reply Br. Supp. Mot. Intervene, *United States v. Scanlan*, No. 1:25-CV-00371-AJ (D.N.H. Dec. 16, 2025), Dkt. No. 22, DOJ persists in repeating this false claim.

[10] As noted in NAACP Intervenors' proposed motion to dismiss, DOJ filed complaints against 13 states and the District of Columbia, alleging only a Title III claim. *See* NAACP Mem. at 6–7 & n.7. Since then, DOJ has done the same against Arizona, Connecticut, and Virginia. *See* Compl., *United States v. Fontes*, No. 2:26-CV-0066-SMB (D. Ariz. Jan. 6, 2026); Compl., *United States v. Thomas*, No. 3:26-CV-00021 (D. Conn. Jan. 6, 2026); Compl., *United States v. Beals*, No. 3:26-CV-0042-RCY (E.D. Va. Jan. 16, 2026).

First, the NVRA contains only a single disclosure provision that requires states to "make available for public inspection" certain records related to voter registration. 52 U.S.C. § 20507(i)(1). There is no special carve-out for the federal government: under the NVRA's plain text, whatever inspection rights anyone has—including DOJ—are limited to what that provision allows for. *See* NAACP Mem. at 8–9. Nor is there any other source of authority in any other part of the NVRA that would require states to disclose any of the information demanded here, and DOJ does not point to any. *See* DOJ Mem. at 30 (quoting 52 U.S.C. § 20507(i)(1)). Second, nothing in the NVRA prohibits states from redacting private information when making material available under its public disclosure provision. *See* NAACP Mem. at 9–12; *see also supra* Section II.B. In short, as the California court held, "DOJ seeks to surpass the scope of the NVRA and wield it to collect information beyond the scope and purpose of what Congress envisioned" but "the NVRA ultimately does not allow for the unjustified, wholesale disclosure of voters' sensitive information." *Weber*, 2026 WL 118807, at *12. Moreover, DOJ does not seek relief for any substantive NVRA violation by Defendants. Quite the opposite: its complaint asserts that New York failed to provide information that is "*necessary* for the Attorney General *to determine **if*** New York is conducting" sufficient list maintenance. Compl. ¶ 60 (emphases added).

DOJ's HAVA claim fares no better. In fact, DOJ concedes that it "is true" that HAVA contains no inspection or disclosure provision. DOJ Mem. at 29. Yet it insists that HAVA grants it the ability to request New York's unredacted SVRL "through the ordinary discovery process necessary to prosecute" a claim for noncompliance with HAVA. DOJ Mem. at 29–30. But as with its NVRA claim, DOJ never alleges any substantive violations of HAVA. *See* Compl. ¶¶ 67–68 (alleging New York's refusal to produce unredacted SVRL "prevents the Attorney General from *evaluating* New York's compliance with HAVA" (emphasis added)). DOJ misunderstands basic

civil procedure. It concedes that "[i]t seeks records necessary *to establish* a claim under HAVA, following its investigation into *whether* Defendants are violating [their] list maintenance requirements." DOJ Mem. at 30 (emphases added). But to survive a motion to dismiss and proceed to discovery, DOJ must *first* "allege[] sufficient facts to give rise to a plausible claim." *Spencer-Smith v. Ehrlich*, 347 F.R.D. 606, 622 (S.D.N.Y. 2024). "[I]n other words, enough fact to raise a reasonable expectation that discovery will reveal evidence of actionable conduct." *Crum v. Dodrill*, 562 F. Supp. 2d 366, 373 (N.D.N.Y. 2008) (citation modified).

As the district court held in dismissing DOJ's identical claim in the case against California, "[e]ven the federal government is not permitted to sue first, obtain discovery, and finalize its allegations later. This appears to be a telltale 'fishing expedition.'" *Weber*, 2026 WL 118807, at *15; *see also Rosendale v. Lejeune*, 420 F. Supp. 2d 315, 325 (S.D.N.Y. 2006) (holding the "federal rules do not allow a litigant to file a case in order to get discovery to find out if he has a case; such fishing expeditions are not countenanced") (citing *Paddington Partners v. Bouchard*, 34 F.3d 1132, 1138 (2d Cir. 1994)). Put another way, "[d]iscovery is not intended to be used to acquire indirectly the very relief that is supposed to await the determination of the action on the merits." *Autotech Techs. Ltd. P'ship v. Automationdirect.com, Inc.*, 235 F.R.D. 435, 446 (N.D. Ill. 2006). DOJ's failure to plead a plausible HAVA claim thus requires dismissal.

## IV.    DOJ's motion to compel must further be denied given its failure to comply with the Privacy Act, which serves as another basis for dismissal here.

The State of New York and several Board of Elections Defendants have moved to dismiss the complaint on federal Privacy Act grounds. *See* Dkt. No. 74-1 at 9–12; Dkt. No. 76-6 at 21–24. The NAACP Intervenors share those underlying privacy concerns, *see* Dkt. No. 7-1 at 19–20 (noting NAACP Intervenors sought intervention to "defend important personal privacy interests"), and noted in their proposed motion to dismiss that "state *and* federal privacy laws" prohibit

"releasing sensitive voter data," NAACP Mem. at 8; *see also id.* at 20–21. In its rush to sweep up the sensitive information of every registered voter in New York, DOJ overlooked the Privacy Act's basic procedural requirements. Because the Privacy Act prohibits DOJ from obtaining New York's unredacted SVRL, the Court should dismiss DOJ's complaint based on its failure to comply with that Act. But even if the Court believes there are unresolved factual questions underlying DOJ's compliance with the Privacy Act, those questions at minimum require denying DOJ's motion to compel. Resolving DOJ's cross-motion to compel before such possible factual disputes are resolved would get things backwards and contravene the Federal Rules. *See supra* Part I.

The Privacy Act "offers substantial protections regarding governmental use and retention of identifiable personal information." *League of Women Voters v. U.S. Dep't of Homeland Sec.*, No. 1:25-cv-03501-SLS, 2025 WL 3198970, at *1 (D.D.C. Nov. 17, 2025). It does so in part by "adopt[ing] procedural safeguards when the records maintained by a federal agency, *i.e.*, a 'system of records,' are changed or used in a new way." *Id.* at *2 (quoting 5 U.S.C. § 552a(a)(5), (e)). And the Privacy Act imposes certain obligations on any agency that "maintains" a "system of records." *See* 5 U.S.C. § 552a(e). Both of those terms are given specific definitions by the statute.[11] New York's SVRL, which contains the names of all registered voters in New York as well as their voter registration identifiers and other identifying information, plainly qualifies as a "system of records" under the Privacy Act. Accordingly, if DOJ were to "collect," "use," or "maintain" New York's SVRL, the obligations imposed by subsection (e) are triggered. *See id.* § 552a(e)(4). Moreover,

---

[11] A "system of records" is defined as "a group of any records under the control of any agency from which information is retrieved by the name of the individual or by some identifying number, symbol, or other identifying particular assigned to the individual." 5 U.S.C. § 552a(a)(5); *see also id.* § 552a(a)(4) (defining "record" to include "any item, collection or grouping of information about an individual that is maintained by an agency . . . that contains his name, or the identifying number . . . or other identifying particular assigned to the individual"). The term "maintain" is defined to include "maintain, collect, use, or disseminate." *Id.* § 552a(a)(3).

and most relevant here, "when an agency 'establish[es] or revis[es]' any 'system of records,' it must 'publish in the Federal Register . . . a notice of the existence and character of the system of records,' *i.e.*, a System of Records Notice (SORN)." *League of Women Voters*, 2025 WL 3198970, at *2 (alterations in original) (quoting 5 U.S.C. § 552a(e)(4)). A SORN must include, among other things, the name and location of the system, the categories of records maintained in the system, the categories of individuals on whom records are maintained, and all routine uses to which the system can be put as well as the "categories of [uses] and the purpose of such use." *Id.*

DOJ does not appear to dispute that the Privacy Act is applicable here, nor that DOJ must publish a SORN that would apply to New York's SVRL. *See* DOJ Mem. at 22–25. In fact, the complaint specifies the SORN that DOJ apparently believes provides it authority to collect New York's unredacted SVRL, identifying it as "JUSTICE/CRT – 001," the "Central Civil Rights Division Index File and Associated Records." Compl. ¶ 52. That SORN, however, does not extend to a record such as a statewide voter registration list. It notifies the public that the categories of individuals covered by the system may include "[s]ubjects of investigations, victims, [and] potential witnesses," in addition to other categories not relevant here. *Privacy Act of 1974; Systems of Records*, 68 Fed. Reg. 47610, 47611 (Aug. 11, 2003). It simply is not plausible to understand that language to permit the collection of personally identifying information of *every* registered voter in New York (and, if DOJ gets its way, every registered voter in the country). Similarly, the SORN describes the categories of records in this system to "consist of case files, matters, memoranda, correspondence, studies, and reports relating to enforcement of civil rights laws and other various duties of the Civil Rights Division." *Id.* While this language would seemingly cover run-of-the-mill files maintained for specific Civil Rights Division investigations and litigation matters, it would be a startling construction of these terms to find that they extend to a statewide

(or nationwide) voter registration list that has never before been compiled by the federal government, as DOJ presses here. As the California court correctly concluded, "[t]his SORN does nothing to put a member of the American public on notice that specifically, their voter registration data is going to be collected on an unprecedented level and used for a plethora of government activity—some identified to this Court and others not." *Weber*, 2026 WL 118807, at *18.[12]

    In short, DOJ has failed to publish an adequate SORN that would apply to New York's SVRL, and this failure to comply with the Privacy Act independently requires denying DOJ's cross-motion to compel. For the Court to hold as a matter of law that the SORN DOJ has cited is sufficient under the Privacy Act to allow DOJ to collate sensitive information about every registered voter in New York (and the country) would be to nullify the statute's "procedural safeguards" that "Congress enacted . . . to permit an individual to determine what records pertaining to him are collected, maintained, used, or disseminated by federal agencies" and to "ensure adequate safeguards are provided to prevent misuses of such information." *League of Women Voters*, 2025 WL 3198970, at *2 (citation modified). If DOJ were to take the radical step of compiling a federal database of the registered voters in the United States, the Privacy Act requires (at a minimum) that DOJ give the public adequate notice about its intention to do so, by publishing a SORN that accurately discloses the system of records it intends to create and the uses to which it will put that information. *See Pippinger v. Rubin*, 129 F.3d 519, 527 (10th Cir. 1997) (noting that Privacy Act "requir[es] publication of the establishment and existence of a government-maintained 'system of records'" and that agencies "publish in the Federal Register

---

[12] DOJ cites two other SORNs, but they are likewise irrelevant. *See Weber*, 2026 WL 118807, at *18. One simply adds an additional, allowable "routine use" to the SORN that is not applicable here. *See* 70 Fed. Reg. 43904 (July 20, 2005). The other adds a blanket routine use to all DOJ SORNs that is relevant in the event of a data breach of DOJ systems. *See* 82 Fed. Reg. 24147 (May 25, 2017).

notice of revisions in the *character* of existing systems of records" (citation omitted)); *see also* 5 U.S.C. § 552a(e)(4), (e)(11) (requiring a 30-day notice period "of any new use or intended use of the information in the system," to "provide an opportunity for interested persons to submit written data, views, or arguments to the agency").

Nor is there any impediment to the Court dismissing the complaint based on DOJ's failure to comply with the Privacy Act. Even if the Court construes this argument as an affirmative defense, the Court may still consider it "if the defense appears on the face of the complaint." *Off. Comm. of Unsecured Creditors of Color Tile, Inc. v. Coopers & Lybrand, LLP*, 322 F.3d 147, 158 (2d Cir. 2003) (quotation omitted). Here, the complaint explicitly references the SORN that DOJ intends to rely on. *See* Compl. ¶ 52. For the reasons stated above, that SORN cannot justify DOJ's collection and maintenance of New York's SVRL. Because the SORN that DOJ identifies does not cover the system of records it intends to maintain, DOJ's failure to comply with the Privacy Act is apparent on the face of the complaint and warrants dismissal here.

## CONCLUSION

The Court should dismiss the complaint with prejudice under Rule 12(b)(6) for failure to state a claim. Consequently, the Court should also deny the cross-motion to compel.

Dated: January 20, 2026

Respectfully submitted,
*/s/ Aria C. Branch*

Andrew G. Celli, Jr. (Bar No. 105255)
Katherine Rosenfeld (Bar No. 511795)
Daniel M. Eisenberg (Bar No. 706811)
Claire Abbadi (Bar. No. 706961)
**EMERY CELLI BRINCKERHOFF ABADY WARD & MAAZEL LLP**
One Rockefeller Plaza, 8th Floor
New York, NY 10020
T: (212) 763-5000
F: (212) 763-5001
acelli@ecbawm.com
krosenfeld@ecbawm.com
deisenberg@ecbawm.com
cabbadi@ecbawm.com

Aria C. Branch*
Christopher D. Dodge*
Tina Meng Morrison*
Omeed Alerasool*
**ELIAS LAW GROUP LLP**
250 Massachusetts Ave. NW, Suite 400
Washington, DC 20001
T: (202) 968-4490
F: (202) 968-4498
abranch@elias.law
cdodge@elias.law
tmengmorrison@elias.law
oalerasool@elias.law

* Application *pro hac vice* and Motion for Limited Admission granted

*Counsel for Proposed Intervenor-Defendants National Association for the Advancement of Colored People and the NAACP New York State Conference*